UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| AF HOLDINGS, LLC, | ) | Civil Action No. 1:12-cv-12105-JLT |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| v. | ) | |
| | ) | |
| SANDIPAN CHOWDHURY, | ) | |
| | ) | |
| Defendant/Counterplaintiff. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
REQUIRING PLAINTIFF TO POST BOND FOR COSTS**

The Defendant/Counterplaintiff Sandipan Chowdhury ("Chowdhury") will incur costs in defending this litigation and is uncertain, if not unlikely, whether he will be able to recover these costs as Plaintiff/Counterdefendant AF Holdings, LLC's ("AFH")[1] has presented objectively weak evidence, is incorporated outside of the country, and has demonstrated no U. S. contacts. Chowdhury has already taken on significant expenses in defending himself against AFH's claims in the underlying action filed in D.C., and now finds the same demands being made of him once again. *AF Holdings v. Does 1-1,140*, No. 11-cv-01274-RBW (D.D.C. June 13, 2011).

AFH is not being asked to pay in order to prove its claims—it is only being asked to demonstrate that it will be financially responsible for its decision to proceed in the manner that it has chosen. If AFH were correct and Chowdhury were found liable, they would owe nothing and would be assured to reap substantial financial rewards, plus costs and attorney fees. AFH would like responsibility for one's actions to be a one-way street, imposed upon individual Internet subscribers but not applicable to the offshore, and perhaps non-existent, litigation machine that brings suit. The only way to make AFH honestly evaluate its claims prior to naming a defendant is to make it financially responsible for its behavior when it misses the mark.

---

[1] As explained further herein, AF Holdings, LLC may in fact be an alias of its counsel, Prenda Law (a/k/a Steel Hansmeier PLCC a/k/a Anti-Piracy Law Group, LLC) ("Prenda").

1

# I. LEGAL STANDARD

Many federal courts have enacted local rules authorizing the imposition of security for costs and fees.[2] Even in the absence of a local rule, courts have imposed security. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47-48 (1991); *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir. 1976) ("Even in the absence of a standing local rule, a federal district court has the inherent power to require security for costs when warranted by the circumstances of the case.").

Where bonds for costs have been granted, there generally have been circumstances that gave the court cause to mistrust the party at issue, including a weak case on the merits, *see, e.g., Beverly Hills Design Studio Inc. v. Morris,* 126 F.R.D. 33, 39 (S.D.N.Y. 1989)*,* a demonstrated failure to properly participate in the litigation, *see, e.g., Herbstein v. Bruetman,* 141 F.R.D. 246, 247 (S.D.N.Y. 1992), facts tending to show an inability to pay, *see, e.g., Selletti v. Carey*, 173 F.R.D. 96, 101 (S.D.N.Y. 1997); *Beverly Hills Design Studio* at 39, extraordinary discovery costs, *see, e.g., Oilex A.G. v. Mitsui & Co. Inc.,* 669 F. Supp. 85, 88 (S.D.N.Y. 1987), or the party's residence not merely in a different United States jurisdiction, but in a foreign country. *See, e.g., id.; Cresswell v. Prudential-Bache Secur., Inc.*, No. 83-cv-2099, 1987 U.S. Dist. LEXIS 3298 (S.D.N.Y. Apr. 24, 1987)*.* This list is by no means exhaustive, nor is each factor considered in every case. However, most, if not all, of the aforementioned circumstances are present in the matter before this Court.

Courts imposing such security have made lengthy determinations regarding the likelihood that the plaintiff will fail on the merits of the underlying claim and that, consequently, an adverse judgment of costs or fees will arise.[3] While bonds as low as a few hundred dollars have been required, the amount can rise dramatically when the party seeking the bond may be entitled to attorney fees as provided by statute.[4] *See*, 17 U.S.C. § 505. In a copyright case such as this, courts

---

[2] *See, e.g.,* local rules of the District Courts comprising the First Circuit: D. ME. CIV. R. 54.1 (providing that a defendant may request security for costs from a non-resident plaintiff); D.N.H. L.R. 67.1(a) ("[T]he court, either on its own initiative or on the motion of a party, may order any party except the United States to file an original bond for costs or additional security for costs."); D.P.R. L.R. E(7); ("[A] party may move upon notice to all parties for an order to compel an adverse party to post security for costs."); and D.R.I. R. 65(a) ("The Court may require any party to furnish security for costs.").

[3] *See, Anderson v. Steers, Sullivan, McNamara & Rogers,* 998 F.2d 495, 496 (7th Cir. 1993) (noting the apparent "frivolous character" of plaintiffs claims); *Beverly Hills Design Studio* at 39 (1989) (noting that "plaintiffs' federal claims seem to be of dubious merit").

[4] *Beverly Hills Design Studio* at 37 ("When a defendant is statutorily entitled to attorneys' fees, it is consistent that security may be required to cover them."); *Amjon Publishers, Inc. v. Home Box Office, Inc.*, No. 82-cv-4968 (S.D.N.Y. Dec. 20, 1982) (granting HBO's motion for a bond "because of the likelihood that HBO will prevail … which under 17 U.S.C. § 505 may include reasonable attorneys' fees").

have required plaintiffs to post substantial bonds, including attorney fees. *AF Holdings LLC v. Trinh*, No. 12-cv-02393-CRB, 2012 U.S. Dist. LEXIS 161394 (N.D. Cal. Nov. 9, 2012) (ordering AFH to post an undertaking of $48,000 or face dismissal of the action); *id.*, ECF No. 35 (Jan. 10, 2013) (AFH has refused to post bond in this case because they disagree with the court's order imposing it).[5]

## A. Factors Considered by the First Circuit.

The First Circuit has adopted a three factor balancing test when determining whether a non-resident should post bond.

> The first factor to consider is "the plaintiff's probability of success on the merits, and the background and purpose of the suit." *Murphy v. Ginorio*, 989 F.2d 566, 569 (1st Cir. 1993). The second is "the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective." *Id.* The final factor is "the reasonable extent of the security to be posted, if any, viewed from the non-domiciliary plaintiff's perspective." *Id.*

*Pasquali v. Hyatt Hotels of P.R.*, 680 F. Supp. 2d 386, 387 (D.P.R. 2010).[6]

## II. ARGUMENT

## A. AFH's Likelihood of Success on the Merits.

While the First Circuit considers a plaintiff's likelihood of success on the merits with respect to a motion for security, it has not set formal thresholds of proof in such circumstances. Nonetheless, a plaintiff alleging copyright infringement has the burden of proving two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*, 560 F.3d 53, 58 (1st Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 360 (1991)).

To establish an actionable claim for the purposes of copyright infringement, the second element of the *Feist* test requires AFH to prove both: "(a) *that the defendant actually copied the work*

---

[5] *See also, Selletti* at 111 (holding that the requirement of a security bond in the amount of $50,000 in an action brought in violation of the Copyright Act, was "well within the district court's discretion"); *Beverly Hills Design Studio* at 39 (requiring security for costs and attorney fees in the amount of $20,000 in an action to recover damages for copyright and trademark infringement); *Anderson* at 496 (7th Cir. 1993) (affirming a $10,000 bond requirement in an action brought to recover damages for trademark infringement).

[6] *See also, Hawes* at 144 (1st Cir. 1976) (discussing the relevant factors to be considered in deciding whether to require security). Two cases decided by the United States Court of Appeals for the Second Circuit, declare that cost bonds are required in instances where prior litigation involving the same party suggests that an award of costs is likely. *See, Leighton v. Paramount Pictures Corp.*, 340 F.2d 859, 861 (2d Cir. 1965) (noting that because the plaintiff "was an habitual *pro se* litigant whose claims were often conclusory and lacking in legal merit" it was reasonable to require plaintiff to post a modest amount of security); *Miller v. Town of Suffield*, 249 F.2d 16, 16-17 (2d Cir. 1957) (justifying security for costs on the grounds that the plaintiffs "vague charges…, have always lacked substance and substantiation").

*as a factual matter*," and "(b) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" *Situation Mgmt*. at 58 (quoting, *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 108 (1st Cir. 2006) (emphasis added) (internal quotation marks omitted). In other words, "if the defendant did not copy as a factual matter, … then infringement liability must be denied." *Airframe Sys. v. L-3 Communs. Corp.*, 658 F.3d 100, 105 (1st Cir. 2011). At all times, Chowdhury has maintained his innocence and conveyed as much to AFH and its counsel.

1. **An IP Address Cannot Identify an Infringer.**

The premise of AFH's case, as set forth by its counsel, Prenda, can be stated as follows: Chowdhury was the subscriber of the account associated with IP address 24.34.93.15, and therefore Chowdhury must have been the individual that infringed AFH's copyright via that IP address. This premise does not hold up to even limited scrutiny, and multiple courts throughout the United States, including this District, have recognized the fallacy involved.[7]

> "While it is possible, indeed likely, that some, perhaps many, of the subscribers are infringers and as such will become defendants in this case, they would become defendants on the basis of their allegedly infringing activity, not due to their status as subscribers of the IP address utilized. *See*, *Digital Sin*, 279 F.R.D. at 242 (discussing the distinction between subscribers and infringers); *Next Phase Distribution, Inc. v. John Does 1-27*, 2012 WL 3117182 (S.D.N.Y. July 31, 2012) ("the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time")."

*Discount Video Center v. Does 1-29*, No. 12-cv-10805-NMG, ECF No. 31, p. 9 n.7 (D. Mass. Aug. 8, 2012). *See also, SBO Pictures, Inc v. Does 1-3036*, No. 11-cv-4220, 2011 U.S. Dist. LEXIS 137361, *9 (N.D. Cal. Nov. 30, 2011) ("the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the internet connection for illicit purposes")

> "Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed."

---

[7] An MSNBC article tells of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/.

*Third Degree Films v. Does 1-47*, No. 12-cv-10761-WGY, 2012 U.S. Dist. LEXIS 142079, *25 (D. Mass. Oct. 2, 2012) (quoting *BMG Music v. Does 1-203*, No. 04-cv-650, 2004 U.S. Dist. LEXIS 8457, *1 (E.D. Pa. Apr. 2, 2004)).[8]

This concern has been made clear to the AFH as well:

> "[I]t is dubious whether Plaintiff will be able to identify the actual infringer even if Plaintiff is given the subscriber information for the IP address—in other words, the actual infringer may not be the subscriber, but rather someone else. And third, possession of nothing other than an IP address alone suggests the lack of a good faith basis to bring a copyright infringement lawsuit."

*AF Holdings v. Doe*, No. 12-cv-06637-ODW-JC, ECF No. 21 (C.D. Cal. Jan. 25, 2013)**.**

> "AF Holdings accuses the Doe Defendant of illegally copying a pornographic video. But the only information AF Holdings has is the IP address of the Doe Defendant. An IP address alone may yield subscriber information, but that may only lead to the person paying for the internet service and not necessarily the actual infringer, who may be a family member, roommate, employee, customer, guest, or even a complete stranger. *Malibu Media LLC v. John Does 1-10*, No. 2:12-cv-01642-RGK-SSx, slip op. at 4 (C.D. Cal. Oct. 10, 2012) [Prenda for the plaintiff].
>
> [T]he Court is reluctant to allow any fishing-expedition discovery when all a plaintiff has is an IP address—the burden is on the plaintiff to find other ways to more precisely identify the accused infringer without causing collateral damage."

*AF Holdings LLC v. Guo*, No. 12-cv-5709-ODW, 2012 U.S. Dist. LEXIS 151730, *1-2 (C.D. Cal. Oct. 19, 2012). See also, *AF Holdings LLC v. Nguyen*, No. 12-cv-06659, ECF No. 16 (C.D. Cal. Jan. 25, 2013); *AF Holdings LLC v. Ibarra,* No. 12-cv-06636, ECF No. 21 (C.D. Cal. Jan. 25, 2013).

As illustrated above, identifying the ISP subscriber associated with a particular IP address is not sufficient to identify the individual that actually infringed a plaintiff's copyright via that IP address. As shown below, AFH and its counsel have been forced to repeatedly admit this fact. AFH has, nonetheless, chosen to sue Chowdhury in the instant case based solely on his identity as the subscriber.

2. **AFH and Prenda Have Repeatedly Admitted to the Insufficiency of an IP Address.**

AFH and its counsel have been litigating BitTorrent claims, in some form or another, against tens of thousands of "John Does" nationwide. In attempting to justify its general failure to serve

---

[8] Nor is this District alone in finding that an IP address, without more, cannot identify an infringer. *VPR Internationale v. Does 1-1017,* No. 11-cv-02068, ECF No. 15 p. 2 (C.D. Ill. Apr. 29, 2011) (Prenda for the plaintiff); *Pacific Century International, Ltd., v. Does 1-101,* No. 11-cv-02533, 2011 U.S. Dist. LEXIS 124518, *5-6 (N.D. Cal. Oct. 27, 2011) (Prenda for the plaintiff).

many of the thousands of defendants in its mass cases, AFH's counsel has frequently been forced to admit that an IP address is insufficient to identify the actual infringer of its copyright.

> "To the court's surprise, in its filing and oral argument to the court, Boy Racer admitted that, its previous representations notwithstanding, the subpoenas were not sufficient to "fully identify" "each P2P network user suspected of violating the plaintiff's copyright." Instead, it revealed for the first time that still more discovery was required. Boy Racer would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and the computers of those sharing his network."

*Boy Racer, Inc. v. Does 1-52,* No. 11-cv-2329-PSG, 2011 U.S. Dist. LEXIS 103550, *6-8 (N.D. Cal. Sept. 13, 2011) (Prenda for the plaintiff).

> "As some courts in this District have noted, 'the relationship between accused activity linked to an IP address and subscriber information associated with that IP address is imperfect at best." *Diabolic Video Productions, Inc.*, No. 5:10-cv-05865-PSG, at 5 (quoting *VPR Internationale v. Does 1-1017*, No. 2:11-cv-02068-HAB-DGB, at 2 (C.D. Ill. Apr. 29, 2011), (ECF No. 15). Accordingly, Plaintiff must conduct additional limited ex parte discovery to determine who should be named as the defendant in this case. Without this discovery from Mr. Abrahams, Plaintiff cannot be certain if Mr. Abrams is the defendant who should be named and served with process, or merely the sole material witness..."

*Hard Drive Productions v. Doe,* No. 11-cv-05634-PJH, ECF No. 9, pp. 9-10 (N.D. Cal. Jan. 6, 2012) (Prenda for the plaintiff).

AFH's counsel, Prenda, has repeated this formulation in a number of cases throughout federal and state courts. In each, AFH's counsel states that instead of "blindly naming" the subscriber, additional discovery should be allowed in order to identify the "true infringer."

> "Plaintiff's motion includes an argument that it is more reasonable to take Wang's deposition than simply to name her as a defendant. Given plaintiffs' admission that it lacks knowledge as to whether Wang is responsible for the alleged infringement, naming her as a defendant at this juncture would present a serious Rule 11 issue. As such, the argument has the appearance of an improper threat."

*Hard Drive Productions, Inc. v. John Doe*, No. 11-cv-05630-YGR, ECF No. 10, pg. 2 (N.D. Cal. Jan. 18, 2012) (Prenda for the plaintiff). See also, *Hard Drive Productions,* No. 11-cv-05634-PJH, at 9) ("However, instead of blindly naming Mr. Abrahams as a defendant based solely on the fact that he is the IP address account holder, Plaintiff seeks discovery to gather evidentiary support for its contentions…").

In *AF Holdings v. Does 1-135,* AFH was initially allowed to conduct early discovery and was able to identify many of the 135 ISP subscribers sought in the suit. After several months of inactivity, AFH's counsel was ordered to provide a declaration that included, inter alia, "A list of the BitTorrent

copyright infringement cases involving multiple joined John Doe Defendants filed by Plaintiff's counsel's law firm or predecessor firm in federal court. Identify the case by name, case number, court, and filing date. For each case, indicate how many Doe Defendants were actually served." *AF Holdings v. Does 1-135,* No. 11-cv-0336-LHK, ECF No. 42 (N.D. Cal. Feb. 23, 2012). In response, AFH's counsel was forced to admit that over the past year and a half Prenda had filed 118 multiple defendant cases against 15,878 Doe defendants, but had served exactly zero (0) John Does in any of these cases. *Id.* at ECF No. 43-1 pp. 4-6 (Feb. 24, 2012). The reason for the reluctance to serve anyone is simple—an IP address is not sufficient to identify the infringer of a particular copyrighted work.

Most recently, AFH and its counsel were forced to admit the insufficiency of an IP address in a series of cases seeking to impose liability on the subscriber via a "negligence" theory—exactly like that alleged against Chowdhury. Each suit involved defendants that were originally accused only of negligence, based on their alleged failure to secure their internet connections. See, *AF Holdings v. Botson*, No. 12-cv-02048-EJD (N.D. Cal. Apr. 24, 2012); *AF Holdings v. Hatfield*, No. 12-cv-02049 (N.D. Cal. Apr. 24, 2012). After the negligence claims were thrown out, AFH then attempted to sue each as the actual infringer, despite its prior admission that "*at this stage of the litigation Plaintiff does not know if Defendant Doe is the same individual as [the subscriber]*." *Hatfield,* at ECF Nos. 1 & 14 n.1 (Apr. 24, 2012 & June 14, 2012, respectively); *Botson*, at ECF No. 1 n.1 (N.D. Cal. Apr. 24, 2012).

In *Botson,* AFH's request to amend the complaint was denied based on the fact that "the proposed SAC contains little, if any, new allegations," and specifically noted that "the court is concerned that the proposed amendments are *sought in bad faith*. The timing of this request…as well as the generality of the motion and SAC are suggestive of *an attempt to simply keep the only identified defendant 'on the hook'*." *AF Holdings v. Botson,* No. 12-cv-02048-EJD, 2012 U.S. Dist. LEXIS 159259,*4 (N.D. Cal. November 6, 2012).

Likewise, in *Hatfield,* AFH accused the subscriber of negligence and, when this cause was thrown out, decided that Mr. Hatfield was the actual infringer, based on an "investigation." At a hearing on AFH's proposed amendment, the court advised counsel for AFH that it "would have to persuade the court that he had discovered additional evidence, based on the same identification of a defendant that he had known about for more than a year." *AF Holdings v. Hatfield,* No. 4:12-

cv-02049, 2013 U.S. Dist. LEXIS 2222, *7 (N.D. Cal. January 7, 2013); ECF No. 45 p. 4 (N.D. Cal. January 7, 2013). In response, AFH submitted a proposed amended complaint adding details that, in its mind, made Mr. Hatfield the infringer. The *Hatfield* court examined the allegations in detail, and determined that "the new allegations in the revised proposed SAC are vague and speculative, and do not demonstrate diligence or add any substance to the claims." *Id.* at *19. In addition, the court noted that AFH's conduct was "*at least suggestive of bad faith.*" *Id.* at *17.

In each of the above actions AFH received the same ISP subscriber information that it received in the instant matter. Notwithstanding the foregoing, AFH has instead "blindly named" Chowdhury as the infringer in this action.

**3. AFH's Assignment Does Not Grant the Rights to Accrued Claims.**

A copyright owner is entitled to bring infringement claims that occur during its ownership of the copyright. "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the [registration] requirements of section 411, to institute an action for any infringement of that particular right committed *while he or she is the owner of it.*" 17 U.S.C. § 501(b) (emphasis added). See also, 3-12 Nimmer on Copyright § 12.02[B].

This rule applies to all copyright owners, including assignees, as AF Holdings claims to be. "[I]t is the assignor, not the assignee, who has standing to sue for infringing acts which occurred prior to the assignment of copyright." *Skor-Mor Prods., Inc. v. Sears Roebuck & Co.*, No. 81 Civ 1286, 1982 U.S. Dist. LEXIS 12655, *7-8 (S.D.N.Y. May 14, 1982) (citing Nimmer, supra). A copyright assignee may only bring infringement claims only for acts of infringement that occur after the assignment, unless the assignor expressly granted the right to sue on accrued claims. "An assignment of copyright does not convey existing causes of action for infringement unless expressly included." *Id.* at *8. See, e.g., *Sabroso Publ'g Inc. v. Caiman Records Am., Inc.*, 141 F. Supp. 2d 224, 227-228 (D.P.R. 2001) (finding standing for the assignee because the assignor expressly assigned "all of its copyrights … including, without limitation, *all past, present and future actions for copyright infringement* that have accrued to this date, or may accrue in the future") (emphasis added). "[A] copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991). Accord *Kriger v. Macfadden Publs.*, 43 F. Supp. 170, 172 (S.D.N.Y. 1941) (same rule under pre-1976 Copyright Act). "[T]he case law clearly

states that a transfer of interest for accrued damages must be stated in no uncertain terms. It follows that the transfer of interest to past infringements did not pass from [assignor] to [plaintiff assignee] in the first assignment despite the alleged intent to transfer any and all accrued damages." *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614, 620 (N.D. Ga. 1993) (citing *Prather v. Neva Paperbacks*, 410 F.2d 698 (5th Cir. 1969)). "If Plaintiff [assignee] did not have the right to sue for accrued infringements at the time she filed this action, she lacks standing to maintain this action." *Lorentz v. Sunshine Health Prods.*, No. 09-61529, 2010 U.S. Dist. LEXIS 101019, *25 (S.D. Fla. Aug. 27, 2010). AFH's assignment states in relevant part:

> 1. <u>Assignment</u>. Assignor hereby irrevocably assign, conveys and otherwise transfers to Assignee, and its respective successors, licensees. and assigns all rights, title and interest worldwide, in and to that certain work titled "Sexual Obsession" and associated with copyright registration number PA0001725120 (collectively the "Work") and all proprietary rights therein, including, without limitation, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights, *and all claims and causes of action of respect to any of the foregoing, whether now known or hereafter to become known.* In the event, Assignor has any right in the Work which cannot be assigned, Assignor agrees to waive enforcement worldwide of such right against Assignee, its distributors, and customers or, if necessary, exclusively license such right worldwide to Assignee. These rights may be assigned by Assignee.

ECF No. 1-2 (emphasis added). Nowhere does the assignment *expressly* grant accrued causes of action to AFH.

In an effort to circumvent an adverse ruling as to its purported assignment of accrued claims, AFH states "this is a simply a snapshot observation of when the IP address was *observed* in the BitTorrent swarm; the conduct itself took place before and after this date and time." *Id.* Such an 'observation' is without hindsight. *Any infringement* based on a file downloaded from any prior downloader, as described by AFH, is part of a continuing chain of infringement. Therefore, any acts of infringement that occurred after the effective date of the assignment "commenced" with the first act of infringement.[9]

---

[9] See, *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 331 (4th Cir. 2007) ("Because a statutory damages award covers 'all infringements involved in the action … for which' infringers are liable … it is appropriate to treat the earliest date of infringement by any participant in a line of related copyright violations as the date of commencement.") (quoting 17 U.S.C. § 504(c)(1); first ellipsis in original); *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998) ("Every court to consider this question has come to the same conclusion; namely, that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.") (citing cases).

Similarly, Chowdhury has made an 'observation' of his own. AFH's assignment became valid on June 12, 2011. ECF Nos. 1, ¶ 19; 1-2. Chowdhury's alleged act of infringement occurred on May 26, 2011, seventeen days before AFH's assignment. ECF No. 1, ¶ 23. As to why AFH was monitoring infringements of a film it had no rights in at the time, begs whether the assignment is merely a license to sue. *Righthaven LLC v. Eiser,* No. 10-cv-3075, 2012 U.S. Dist. LEXIS 19471 (D.S.C. Jan. 13, 2012); *Righthaven, LLC v. Hoehn*, No. 11-cv-00050, 792 F. Supp. 2d 1138 (D. Nev. June 20, 2011).

**B. The Conduct and Purpose of the Litigation.**

The instant case is the latest effort by AFH and its counsel, Prenda, to pressure a settlement from an ISP subscriber—whether by law or sheer litigation cost—for infringements, regardless of guilt.

> Steele's software logs BitTorrent activity along with what is known as the computer's IP address. That address is then included in a federal lawsuit that asks Internet service providers to turn over the name of the customer using that IP address.
>
> Those customers then get a letter from Steele informing them that if they don't want to be named in federal court as having shared, for example, an "Amateur Allure" film, they can settle the case by paying a fine. Steele said it typically ranges from $1,900 to $3,000.
>
> "He was more than willing to say, 'I don't want my name in a federal lawsuit for, in this case, downloading transsexual porn,'" Steele said. "We worked out a very reasonable, minor fine."
>
> "If we resolve the matter prior to actually naming them … then no one knows who those people ever were. I don't like the idea of trying to pressure somebody into settling in exchange for keeping their name secret. *I think that what we're doing is pressuring people into not being revealed for stealing.*"
>
> "People always ask me that—are you trying to extort things? I guess there's something to be said about people being more embarrassed about this than (illegally downloading) a regular movie like 'Titanic.'"

Steve Schmadeke, *Chicago lawyer leads fight against porn piracy*, Chicago Tribune (November 15, 2010) (emphasis added).[10]

---

[10] Available at: http://articles.chicagotribune.com/2010-11-15/news/ct-met-porn-attorney-20101115_1_face-lawsuit-anti-piracy-campaign-copyright-violators.

1. **Diversionary Tactics and Coercive Acts of AFH and its Counsel.**

    a. **Placing Knowing Financial and Logistical Burdens on Chowdhury.**

On June 13, 2011, AFH filed suit against 1,140 Does, including Chowdhury, in the District Court for the District of Columbia, wherein it falsely claimed jurisdiction was proper because,

> "each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District."

*AF Holdings v. Does 1-1,140*, No. 11-cv-01274-RBW, ECF No. 1 ¶ 5 (D.D.C. June 13, 2011).[11] At the time it filed its original complaint in D.C., AFH knew the court there did not have jurisdiction over Chowdhury. In fact, AFH has repeatedly demonstrated its able to determine the proper jurisdiction based solely on the IP addresses it collects.

> "Plaintiff used geo-location technology to trace the IP address of John Doe to a point of origin within the State of []. Geo-location is a method for ascertaining the likely geographic region associated with a given IP address at a given date and time."

*AF Holdings v. Davis*, No. 12-cv-22149-JEM, ECF No. 11 ¶ 6 (S.D. Fla. Oct. 29, 2012).[12]

Rather than file suit here in Massachusetts though, AFH chose to confront Chowdhury with the financial and logistical burdens of defending himself in a remote foreign jurisdiction friendly to this type of litigation, threats of liability for as much as $150,000 plus attorney's fees, and a warning that settling would be cheaper than retaining an attorney to fight.

    b. **AFH Drafts a Scarlet Letter to Further Settlements.**

Where courts have allowed AFH to utilize its subpoena power to obtain subscriber information from ISPs, the result has been a stream of unrelenting, debt collector style harassment, designed to pressure ISP subscribers to quickly settle their cases. AFH sends out misleading demand letters. A true and correct copy of such a letter sent to Chowdhury, as well as the notice he received from his ISP are attached hereto as Exhibit A. The letter sent to Chowdhury repeatedly, and conveniently, conflates his status as the subscriber with the actual infringer, something this Court has previously expressed strong misgivings about. *Discount Video Center v. Does 1-29*, No. 12-cv-10805-NMG, ECF No. 31 pp. 4-10 (D. Mass. Aug. 8, 2012). Another misrepresentation is the

---

[11] Once pressed by the D.C. court to file a status report to include those Doe Defendants it had jurisdiction over, Plaintiff chose instead to dismiss the action in its entirety. Among AFH's actions against 68 named individuals, none are residents of D.C.

[12] See also, *AF Holdings v. Jacobs*, No. 12-cv-04240, ECF No. 14 ¶ 6 (N.D. Ill. Nov. 12, 2012); *AF Holdings v. Hatfield*, No. 12-cv-02049-PJH, ECF No. 14 ¶ 10 (N.D. Cal. June 14, 2012).

repeated references to astronomical statutory damages, without explaining the calculation of such or the facts under which they were awarded. *Id.* p. 2.

Prenda rightly recognized that in order to have any credibility with both the courts and the people it was threatening with suit, it was going to have to start naming people. Once it did, Prenda used the opportunity to create a section on its website[13] where it could publicly shame the defendants it went after individually, and as a warning to the many John Does its "settlement negotiators" were still actively pursuing. Prenda, has recognized that an Internet subscriber need not be the person who infringes through his account. But as of January 25, 2013, it has recklessly posted more than 141 defendants' names and complaints, without sufficient factual basis to say which if any of them are actual infringers. Moreover, this list which Chowdhury tops, indicates that he is not only a pornography pirate, but stands accused of "various civil **and criminal acts** against our client[]" and that it was he who "***wish[ed] to go to trial over the matter***." *See*, Exhibit B. These statements, made outside the litigation, are defamatory and knowingly false.

3. **The Many Faces of Prenda Law.**

AFH's counsel, Prenda, has been an active player in this arena and has filed numerous lawsuits, in multiple forms, under multiple aliases[14] in an attempt to leverage embarrassing accusations into "settlements." As described further herein these lawsuits have taken several forms, but the fundamental element has remained the same: pay a "settlement" to make the accusations go away, or face the embarrassment and expense required to prove your innocence.

a. **Steele Hansmeier, PLLC: September 2010 to January 2012.**

Steele Hansmeier PLLC ("Steele") is a law firm whose attorneys (John Steele and Paul Hansmeier) developed a lucrative practice monetizing copyright infringement allegations. Steele and its aliases use the Media Copyright Group, LLC ("MCG")[15] to "monitor[] and document[] Internet-based piracy of our clients' copyrighted creative works." *AF Holdings LLC v. Does 1-1,140*, No. 11-

---

[13] Prenda's website states "it is our firm's policy to remove any cases from our site after we obtain a judgment or settlement." However, of the 62 listed AF Holdings matters, 10 named Defendants continue to appear on the website despite dismissals dating as far back as September 18, 2012. Exhibit B, p. 5.

[14] *See*, Exhibit C.

[15] MCG and Peter Hansmeier also operate under the alias 6881 Forensics, LLC, a Minnesota corporation. *AF Holdings v. Does 1-1058*, No. 12-cv-00048-BAH, ECF No. 4-1 (D.D.C. Jan. 18, 2012). However, there are no records on file with the state of Minnesota to show that 6881 Forensics exists.

cv-01274-RBW, ECF No. 3-1 ¶ 1 (D.D.C. July 25, 2011) (Declaration of Peter Hansmeier). Peter Hansmeier is MCG's only known employee and coincidently, the brother of Paul Hansmeier.

On the basis of MCG's records, Prenda files a single civil complaint against thousands of individuals and petitions the court to issue subpoenas to Internet Service Providers ("ISPs"), seeking contact information for the alleged infringers. The sole basis for AFH to link Chowdhury to any of its claims, as they admit, therefore, is Mr. Hansmeier's alleged direct observation of alleged infringing acts.. *AF Holdings LLC v. Does 1-1,140*, No. 11-cv-01274-RBW, ECF No. 3-1 ¶¶ 13-15, 18-20 & 21-24 (D.D.C. July 25, 2011); see also, *id.*, ECF No. 4 (D.D.C. Sept. 28, 2011).

Adding to an already byzantine litigation model, John Steele has publicly stated "he and a partner [presumptively, Peter Hansmeier] spent about $250,000 to develop software that tracks illegal BitTorrent sharing from an office in Minneapolis."[16] If we are to take John Steele at his word, then Prenda owns and operates MCG. At no point that counsel is aware of, has this interest in or control over the litigation been disclosed to a court.

   b. **Prenda Law, Inc.: November 2011 to November 2012.**

In the face of stiffening judicial headwinds, John Steele purportedly sold Steele Hansemeier, PLLC to Prenda Law, Inc. in November of 2011. After the switch to Prenda, attorney Paul A. Duffy [17] became the firm's public face, though John Steele and Paul Hansmeier continue to file pleadings and communicate with opposing counsel on behalf of Prenda. *AF Holdings, LLC v. Does 1-1058*, No. 12-cv-0048-BAH, ECF No. 32 (D.D.C. Apr. 20, 2012).

Prenda also files its cases through local counsel, which it recruits through Craigslist or other ads. Local counsel then files in various state and federal jurisdictions where Prenda is not technically on the pleadings, but is actually steering the litigation. *See, e.g.*, ECF No. 7-1 p. 18:12-24.

   c. **Anti-Piracy Law Group: November 2012 to present.**

For reasons not hard to imagine, Prenda has changed names once again. Prenda's website and letters issuing from Prenda's offices in Chicago are now being issued under the letterhead of the "Anti-Piracy Law Group."[18]

---

[16] *Supra* at n.10.

[17] On Prenda's website and in correspondence to subscribers and counsel, Paul Duffy holds himself out being licensed to practice in Massachusetts. A call to the BBO confirmed that Atty. Duffy, as he already knows, has not been licensed in the Commonwealth since 1995.

[18] *See, e.g.*, compare http://wefightpiracy.org/ with http://wefightpiracy.com/

13

### d. Alan Cooper, Prenda's Nom de Plume.

In November of 2012, facts began to evolve regarding AFH's token employee Alan Cooper, which suggests that AFH's counsel has been engaged in systemic fraud, improper fee splitting, and further concealment of the identity of the real parties in interest in these cases. There is indeed an individual named Alan Cooper. However, Mr. Cooper is not AFH's manager, but rather a former caretaker of a property in Minnesota owned by John Steele. *See*, Exhibit E.

Atty. Steele bragged to Mr. Cooper about a copyright scheme and, according to Mr. Cooper "Steele had told me on at least one occasion that if anyone asked about companies that I should call him." *Id*. After this conversation Mr. Cooper became suspicious, searched online, and found that Prenda had been using the name "Alan Cooper" as the supposed principal of AF Holdings and Ingenuity 13 in various federal court filings. Concerned with his potential liability in connection with the scores of AF Holdings and Ingenuity 13 copyright infringement lawsuits pending across the country, Mr. Cooper hired an attorney who asked Prenda to confirm that there was another Alan Cooper who is the true principal of AF Holdings and Ingenuity 13, and that Mr. Cooper's identity was not being misappropriated. *See,* Exhibit F. Mr. Cooper has since taken the initiative, filing his own action against Prenda, et al. *See*, Exhibit F.

On December 26, 2012, the District Court of California determined the allegation of a straw plaintiff had enough merit to warrant discovery as to the identity of Alan Cooper. *Ingenuity 13, LLC v. John Doe*, No. 12-cv-08333-ODW-JC, ECF Nos. 23 & 32 (C.D. Cal. Dec. 18, 2012 & Dec. 26, 2012 respectively).[19] Rather than answer the allegations concerning Alan Cooper, Prenda chose to voluntarily dismiss the matter. *Id.*, ECF No. 43 (Jan. 28, 2013).[20]

Nor is this the first time Prenda has found itself accused of using a non-existent plaintiff to bring suit. Between December 1, 2010 and July 7, 2011 Prenda filed nineteen (19) copyright infringement actions on behalf of MCGIP, LLC. Little is known about MCGIP except that its

---

[19] Prior to dismissing its claims, Prenda's first response was to seek the disqualification of the presiding judge. *Id.*, ECF No. 35 (Dec. 31, 2012), *denied* ECF No. 41 (Jan. 15, 2013).

[20] Prenda's dismissal, cited to the court's recent ruling in an AFH matter, as a basis for its dismissal. The court therein concluded that AFH's inability to identify the plaintiff "stem[ed] from either Plaintiff's lack of diligence, or its impatience in rushing to the courthouse." *AF Holdings v. Doe*, No. 12-cv-06637-ODW-JC, ECF No. 21 (C.D. Cal. Jan. 25, 2013).

registered office was that of Paul Hansmeier's, and that its manager, Allan Mooney,[21] is also a client of Atty. Hansmeier. *Mooney v. Priceline.Com Incorporated et al*, No. 12-cv-02731-DWF-JSM (D. Minn. Oct. 26, 2012). MCGIP did not own the copyrights or otherwise have an exclusive license to any of the allegedly infringed works it filed actions for. One of the films which MCGIP claimed to own, *Girlfriend Lost a Bet/She Lost the Bet,* was not only registered to VPR, Inc.—but Prenda had brought a concurrent proceeding on behalf of VPR for alleged infringement of this same film. *VPR Inc. v. Does 1-1017*, 11-cv-02068-HAB (C.D. Ill. 2011). More so, MCGIP amended its complaint include at least 43 defendants from the *VPR* litigation.

An affidavit filed recently by the named defendant in another proceeding brought by Prenda, gives further credence to such concerns of collusion. Mr. Merkel, the affiant, states that an attorney from AFH's law firm, Prenda, offered to settle an infringement claim by a different plaintiff if Mr. Merkel "would agree to be sued." *See,* Exhibit G. Mr. Merkel states that he did so, and that he retained an attorney in Minnesota who was referred to him by Prenda. *Id.* p. 2.

Taken together: (i) the facts averred by Mr. Cooper; (ii) Prenda's attempts to stonewall on the question of whether there was another Alan Cooper who was the true principal of AF Holdings and Ingenuity 13, or answer any other questions on these matters; (iii) allegations of a previous straw plaintiff in the MCGIP cases and the affidavit of Mr. Merkel; and (v) the facts revealed in the Florida hearing transcript in Prenda's *Sunlust* case wherein Prenda attempted to pass off its paralegal as the corporate representative of the plaintiff,[22] suggest a pattern of deception with respect to who is really behind these lawsuits. To paraphrase a popular meme: "Plaintiff Prenda Law retained Prenda Law as its counsel, who in turn retained Prenda Law to use Prenda Law's forensic software to identify infringers."

### C. Ownership of Attachable Property Within the Forum.

Cases touching on the issue of security for costs invariably focus on plaintiffs domiciled outside of the forum jurisdiction, who are without attachable assets to satisfy a potential award of

---

[21] Mr. Mooney's LinkedIn profile states that he is a self-employed broker for Internet based business acquisitions. Nowhere does his past or present employment include MCGIP.

[22] Counsel brings to the Court's attention that Mr. Lutz admits to appearing as a corporate representative for Guava, LLC. *Sunlust Pictures, Inc*, p. 17. Guava has one matter pending in this District against Massachusetts residents, *Guava, LLC v. John Doe*, No. 12-cv-11880-FDS.

costs and fees.[23] It is undisputed that AFH is a foreign corporation. The AFH specifically identifies itself as a "limited liability company organized and existing under the laws of the Federation of Saint Kitts and Nevis." ECF No. 1 ¶2. No other information regarding the AFH, its employees, its principal place of business or what assets, if any, it has within the United States is available. *Beverly Hills Design Studio* at 36 (requiring a bond because the plaintiff did not identify any assets which could satisfy an award of costs).

> "The bond in *Hawes* was not required of nonresidents wishing to engage in commercial expression, but rather of nonresidents wishing to hale Puerto Rico residents into the federal courts of that district, forcing the latter to incur significant litigation-related expenses. Where the resident defendant prevailed, the costs of litigation would ordinarily have been taxed against the nonresident plaintiff. See Fed. R. Civ. P. 54(d)(1). Because of the likelihood that funds would need to be collected from a nonresident plaintiff, the risk of harm from unenforceability was, accordingly, higher in *Hawes*. Conversely, the nature of the restriction was more narrowly tailored, insofar as the rule permitted the district court to waive the bond requirement when it would be so excessive as to preclude a plaintiff's right to sue."

*El Dia, Inc. v. P.R. Dep't of Consumer Affairs*, 413 F.3d 110, 114-115 (1st Cir. 2005).

Some appellate courts have stressed that the financial ability of the party to post a bond must be considered,[24] and, upon considering a plaintiffs income status, have waived the imposition of fees and costs and the requirement of posting a bond. Other courts, however, have taken the exact opposite approach, concluding that the circumstances of a plaintiff's financial shortcomings justify the need for security for costs and fees.[25] There can be no doubt that AFH's counsel, potentially the real party in interest here, has sufficient assets to post bond.

> Doing the math, I suggest Steele has made $15 million settling these suits.
>
> "Maybe a little less. We don't track the amount we've recovered. More than a few million," [John Steele] says, declining to offer exact numbers.

---

[23] *Beverly Hills Design Studio,* 126 F.R.D. at 36 (noting that "cases requiring a security bond generally involve plaintiffs with no reachable assets").

[24] *See, e.g., Aggarwal v. Ponce Sch. of Medicine*, 745 F.2d 723, 728 (1st Cir. 1984) (stating that upon deciding whether to dismiss a suit due to the plaintiffs failure to comply with an order for security, "a plaintiffs ability to post security for costs must weigh in the balance").

[25] *Tri-Ex Enters., Inc. v. Morgan Guar. Trust Co. of N.Y.*, No. 80-3856-WCC, 1985 U.S. Dist. LEXIS 23502, *2 (S.D.N.Y. Jan. 11, 1985) (plaintiff "argue[d], with no small degree of irony, the motion should be denied precisely because it has no funds with which to post a bond. The Court finds little merit in this self-defeating argument").

Kashmir Hill, *How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates'*, Forbes, October 15, 2012.[26]

Even if it is proven that the AFH is not a shell from under which its counsel crawls, it too has demonstrated sufficient assets. Upon information and belief, AFH has filed 213 cases alleging infringement of *Sexual Obsession* against a total of 3,092 John Doe defendants. Of that number, it has named 68 individuals. If one subtracts those 68 from the 3,092 total John Doe defendants, you are left with 3,024 John Doe defendants. Assuming the AFH was able to reach settlements with 30% of those 3,024 John Doe defendants, that would leave 907.20 individuals. Rounding that number to 907 and multiplying it by the AFH's $3,400 settlement demand would mean AFH has collected in the neighborhood of $3,083,800.

Even if we were to limit the pool of John Doe defendants to the 1,140 individuals in the underlying D.C. action where Chowdhury's information was sought, AFH remains flush. Again, taking subtracting 68 of those named would leave us with 321.6 individuals AFH was able to reach settlements with. Rounding that number to 322 and multiplying it by the AFH's $3,400 settlement demand would mean AFH has collected in the neighborhood of $1,162,800.

Chowdhury's concern is that though AFH has demonstrated it has substantial assets, it may be near impossible for him to collect from a foreign AFH without the guarantee of a bond.

**D. The Probable Length and Complexity of the Litigation.**

Chowdhury herein has already incurred significant costs in the underlying D.C. action, and can expect to incur significantly more to establish his innocence in this ill-considered lawsuit, including a forensic search of his computer and the testimony of expert witnesses.

The lodestar method provides "the conventional framework that courts use in fashioning fee awards…" and is calculated by multiplying the number of hours the prevailing party reasonably expends on the litigation by a reasonable hourly rate. *Spooner v. EEN, Inc.*, 644 F.3d 62, 67-68 (1st Cir. 2011). But that does not mean it is the only method. See, *Hensley v. Eckerhart*, 461 U.S. 424, 433, 436-37 (1983) (describing the lodestar method as a "useful starting point" but eschewing any "precise rule or formula," and reaffirming district courts' "discretion in making th[e] equitable judgment" of what fees to award); see also *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)

---

[26] Available at: http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/

(quoting *Hensley*'s rejection of any "precise rule or formula" and again reaffirming the importance of "equitable discretion"). Most recently, the First Circuit employed the *Hensley* method for calculating reasonable recoverable attorney fees in situations like the instant case. Specifically, it applied the *Fogerty* factors of "frivolousness, motivation, objective unreasonableness[,]…and…compensation and deterrence" *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 669 F.3d 59, 63-64 (1st Cir. 2012) (citing *Fogerty*, 510 U.S. at 534 n.19).

Although necessarily an estimate in this context, defense counsel can expect to expend between 100 and 150 hours on the instant litigation, through the summary judgment stage. Moreover, $409/hour represents a conservative estimate of the reasonable rate to which defense counsel is entitled.

1. **Reasonable Hourly Rate**

The hourly rate for 2012 charged by Booth Sweet LLP is $409.00 per hour. The American Intellectual Property Association's (AIPLA) bi-annual survey is frequently used to determine reasonable hourly rates for attorneys of varying levels of experience. AIPLA's 2007 economic survey sets the average hourly billing rate for an attorney with 4-7 years experience in intellectual property litigation at $409.00 for the Boston area. As a point of comparison, Major, Lindsey & Africa's more timely 2012 compensation survey sets the same rate at or around $687.00. Given the complexity of the matter and the totality of the circumstances involved in the litigation, the rates charged by Booth Sweet LLP are reasonable, as evidenced by the facts that those rates are a) towards the *lower* end of what other firms with experience handling this type of case would have charged for litigation of this type, and b) well within the range of reasonable rates for the Boston market in which counsel of record base their practice. A copy of the relevant charts is annexed as Exhibit H.

2. **Hours Reasonably Expected**

At the present time, it is only possible to give a rough estimate of the number of hours that can be expected in the instant litigation, but counsel has attempted to produce such an estimate. As such, counsel has done several calculations in an effort to identify the range of potential fees that could be incurred, using average hourly rate of $409 and estimating the "hours expected" at 100 and 150. The result is a low-end range of $40,900 ($409 x 100 hrs.) and a high-end range of $61,350 ($409 x 150 hrs.). In addition, counsel has estimated that Chowdhury could incur between $10,500 and $18,000 in additional costs during the course of this litigation. When added to the numbers

above, this creates a range of $50,900 – $79,350. It is thus possible, if not likely, that the actual amount of recoverable fees and costs in this matter could exceed $60,000.[27] Defendant in this matter is content to rely on the lower-end of the estimate for present purposes, and therefore requests that this Court order AFH to post an undertaking in the amount of $60,000 to cover anticipated costs and fees in the instant matter.

### III. CONCLUSION

AFH's pleadings on their face show, beyond a doubt, that it cannot prove any set of facts that would entitle it to relief for copyright infringement against Chowdhury. AFH's failure to complete a sufficient factual investigation before filing this matter, in conjunction with Chowdhury's denials and AFH and its counsels' conduct and questionable tactics, lead to the conclusion that Chowdhury has a "reasonable possibility" of obtaining judgment in the instant matter. Moreover, AFH's failure to even attempt such an investigation is likely to lead to liability for costs and attorney fees under the Copyright Act, and security for attorney fees and costs is therefore appropriate. Nobody has forced AFH to file this suit when it did, based on the objectively weak evidence that it has chosen to proceed with. There is no reason to allow AFH to escape all responsibility for its actions and decisions in this case. As such, Chowdhury respectfully requests the court to order Plaintiff, AF Holdings, to post an undertaking in the amount of $60,000.

Dated: January 30, 2013

Respectfully,

/s/ Jason Sweet

_____
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

---

[27] Chowdhury reserves the right to request additional security, should it prove necessary.

**CERTIFICATE OF SERVICE**

  I hereby certify that on January 30, 2013, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

                        /s/ Jason E. Sweet


**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

  I, Jason Sweet, hereby certify that on January 29, 2013, I spoke with counsel for Plaintiff AF Holdings, LLC in a good faith attempt to resolve or narrow the issues raised in this motion, but was unable to do so.

                        /s/ Jason E. Sweet