UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| | ) | |
| AF HOLDINGS, LLC, | ) | Civil Action No. 1:12-cv-12105-JLT |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SANDIPAN CHOWDHURY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____) | | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION REQUIRING PLAINTIFF TO POST BOND FOR COSTS**

Plaintiff AF Holdings LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Response to Defendant Sandipan Chowdhury's ("Defendant") Motion Requiring Plaintiff to Post Bond for Costs.

## ARGUMENT

### I.    DEFENDANT HAS FAILED TO ESTABLISH A LEGAL STANDARD

Defendant's Motion begins with a section that, though purportedly the "legal standard" for his requested relief, is in reality nothing more than a hodgepodge of cases in which a bond was ordered for wildly varying reasons. Defendant does not establish, or even *attempt* to establish, the existence of any relevant statute or local rule which could form the basis of his frivolous request for bond. Defendant does cite to *Pasquali v. Hyatt Hotels of P.R.*, in the hope that he can mislead the Court into believing that the *Pasquali* three-factor test is relevant here. (ECF No. 12 at 3.) However, a cursory inspection of the *Pasquali* opinion to which Defendant cites indicates that "The First Circuit has adopted a three factor balancing test to determine

where a non-resident bond should be issued **under Local Rule 65.2**." *Pasquali v. Hyatt Hotels of Puerto Rico,* 680 F. Supp. 2d 386, 387 (D. Puerto Rico 2010.) As indicated by the foregoing citation, the Local Rule in question is that of **the District of Puerto Rico**, and the Court's citation to the First Circuit regarding the three-factor test is limited *only to District of Puerto Rico Local Rule 65.2*. Plaintiff notes for the geographically-challenged Defendant that the instant action is pending in the District of Massachusetts.

It would appear that the Local Rules of the District of Massachusetts do not contain any analogous provision for non-resident bonds, as Defendant does not cite to any such provision in his Motion. Nor does Defendant cite to any other statutory provision that might justify the existence of his Motion. Having established that the three-factor test offered by our geographically-challenged Defendant is patently inapplicable to the instant action, Plaintiff now turns to the aforementioned hodgepodge of cases offered by Defendant in his legal standard section in support of his expected, though ultimately absent, description of the appropriate legal standard.

The first of the hodgepodge of cases Defendant cites in his legal standard section is *Chambers v. Nasco*. (ECF No. 12 at 2.) The undersigned's understanding of *Chambers v. Nasco* was that it is one of the landmark Supreme Court cases with regard to the Court's power to sanction, and that it had nothing at all to do with authorizing the imposition of security. However, prior to levying the characterization of illiteracy upon Defendant's counsel, Plaintiff first reproduces, in full, the pages of the *Chambers* decision which Defendant cites in support of the proposition that "even in the absence of a local rule, courts have imposed security." *Id.*

> [p.46] We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and

narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to [p. 47] exist to fill in the interstices. Even JUSTICE KENNEDY'S dissent so concedes. See post, at 64. Second, while the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders, many of the other mechanisms permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard. Rule 11, for example, imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith.[11] See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U. S. 533, 548-549 (1991).

It is true that the exercise of the inherent power of lower federal courts can be limited by statute and rule, for "[t]hese courts were created by act of Congress." Robinson, 19 Wall., at 511. Nevertheless, "we do not lightly assume that Congress has intended to depart from established principles" such as the scope of a court's inherent power. Weinberger v. Romero-Barcelo, 456 U. S. 305, 313 (1982); see also Link, 370 U. S., at 631-632. In Alyeska we determined that "Congress ha[d] not repudiated the judicially fashioned exceptions" to the American Rule, which were founded in the inherent power of the courts. 421 U. S., at 260. Nothing since then has changed that assessment,[12] and we have thus [p. 48] reaffirmed the scope and the existence of the exceptions since the most recent amendments to § 1927 and Rule 11, the other sanctioning mechanisms invoked by NASCO here. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U. S. 546, 561-562, and n. 6 (1986). As the Court of Appeals recognized, 894 F. 2d, at 702, the amendment to § 1927 allowing an assessment of fees against an attorney says nothing about a court's power to assess fees against a party. Likewise, the Advisory Committee's Notes on the 1983 Amendment to Rule 11, 28 U. S. C. App., p. 575, declare that the Rule "build[s] upon and expand[s] the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation," citing as support this Court's decisions in Roadway Express and Hall.[13] Thus, as the Court of Appeals for the Ninth Circuit has recognized, Rule 11 "does not repeal or modify existing authority of federal courts to deal with abuses . . . under the court's [p.49] inherent power." Zaldivar v. Los Angeles, 780 F. 2d 823, 830 (1986).

*Chambers v. Nasco*, 510 U.S. 32, 46-49 (1991). The portions of the opinion cited by Defendant—and, indeed, the entire opinion itself—regard ***the Court's inherent power to sanction***. Defendant's challenges with geography and failure to verify his citations should be duly noted by the Court.

3

Defendant next cites to *Hawes v. Club Ecuestre El Comandante*. (ECF No. 12 at 2.) His citation reveals yet another flaw in his Motion. Defendant cites to *Hawes* to support his proposition that "even in the absence of a local rule, courts have imposed security." *Id.* What Defendant fails to note, however, is that the security provided for in such a situation is merely ***security for costs*** (e.g., filing fees), not security for $50,000 in attorney's fees, or other expenses. Plaintiff now turns to *Hawes* to highlight the aforementioned distinction. The ***language from Hawes which Defendant himself cites*** states: "Even in the absence of a standing local rule, a federal district court has the inherent power to require ***security for costs*** when warranted by the circumstances of the case." *Id.* (Emphasis added.) The language from the *Hawes* opinion cited by Defendant contains the following internal citation: "*See McClure v. Borne Chemical Co., supra* at 835." *Hawes v. Club Ecuestre El Comandante,* 535 F. 2d 140, 143 (1st Cir. 1976.) Turning to *McClure*, the Court asserts that:

> There are certain exceptional cases in which a United States district court has inherent power to require security for costs. But, the distinction between security for costs and security for expenses, must be kept in mind. The former usually involves a relatively small initial outlay on the part of the plaintiff, whereas the latter, including as it does all reasonable litigation expenses, often requires a very large outlay by the plaintiff precedent to his obtaining judgment. ***We have found no case in which a court has required security for expenses, as opposed to security for costs, without express statutory authority. Nor have we found a case which has posited circumstances under which such an undertaking might be required.***

*McClure v. Borne Chemical Company,* 292 F. 2d 824, 835 (3rd Cir. 1961.) The $60,000 which Defendant asked for in his Motion is thus properly characterized as *expense*, and not as *cost*; indeed, given Defendant's counsel's ill-conceived, sloppy Motion, it is debatable whether *anyone* should be paying him for his services at all—much less paying him his "conservative estimate" of $409 per hour. (ECF No. 12 at 18.) Plaintiff notes

that, though Defendant contemplates "between $10,500 and $18,000 in additional costs" (ECF No. 12 at 18), he provides no factual support for this contention. In fact, Defendant does not bother to enumerate *even one example* of what these supposed costs may consist of. Given the care with which Defendant's counsel at least *attempted* to justify his hourly rate (ECF No. 12 at 18-19), it is telling that he made no such attempt with respect to the contemplated "additional costs." Given that the very case law Defendant's counsel cited explicitly bars imposition of security in the instant action for anything *but* the alleged "additional costs," Defendant may have been wise to try as hard (or, indeed, to just try at all) to justify these "additional costs" as he did to justify his inflated, undeserved hourly rate.

Defendant's parade of buffoonery marches forward with a series of citations to cases in which "bonds for *costs* have been granted." (ECF No. 12 at 2.) As previously described, Defendant's Motion provides for no basis for a single penny of costs that he supposedly expects to incur. Defendant offers a brief characterization of each of these cases, and concludes that "most, if not all, of the…circumstances [in the cited cases] are present in the matter before the court." Defendant characterizes *Beverly Hills Design Studio Inc v. Morris* as "a weak case on the merits." As more fully addressed below, Defendant's characterization of the merits of Plaintiff's case as "weak" is based on his assumption that the entire basis upon which Plaintiff filed its Complaint is contained within the Complaint itself. In light of Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Defendant may wish to reconsider his assumption. Fed. R. Civ. Proc. 8(a)(2). However, it is not Plaintiff's responsibility to provide to Defendant any additional basis

for its claims at this time; if Defendant wishes for Plaintiff to do so, he is welcome to file a Motion for Summary Judgment.

Defendant next characterizes *Herbstein v. Bruetman* as containing "a demonstrated failure to properly participate in the litigation." (ECF No. 12 at 2.) Throughout his Motion, Defendant never returns to this assertion; indeed, all of the mischaracterizations of Plaintiff's conduct which Defendant makes throughout his Motion (*See* ECF No. 12 at 8-13), if taken as true, would indicate a certain *overzealousness* on the part of Plaintiff in pursuing the instant action. The truth is somewhere in the middle—Plaintiff has pursued the instant action diligently, but has acted within the bounds of law and procedure.

Defendant humorously cites to *Selletti v. Carey*, as well as *Beverly Hills Design Studio*, and characterizes the cases as having "facts tending to show an inability to pay." (ECF No. 12 at 2.) The case, of course, refers to the non-moving Plaintiff's inability to pay. *Selletti v. Carey,* 173 F. 3d 104, 111 (2nd Cir. 1999.) Interestingly, however, Defendant devotes much of page 17 of his Motion to asserting that Plaintiff is "flush" with money and "has demonstrated it has substantial assets." (ECF No. 12 at 17.) Defendant's counsel's greed, in seeking security for attorney's fees that case law does not entitle him to, has apparently blinded him to the basic tenets of logical argument.

Defendant cites *Oilex A.G. v. Mitsui & Co. Inc.*, characterizing it as having "extraordinary discovery costs." (ECF No. 12 at 2.) As usual, Defendant does not indicate anywhere in his motion what types of extraordinary discovery will be involved in this action, what specific discovery activities he intends to engage in, and, most importantly, how much he expects these activities to cost. His bare allegation that

extraordinary discovery costs will exist is, of course, insufficient. Plaintiff concedes that, like the Plaintiff in *Cresswell v. Prudential-Bache Secur* (ECF No. 12 at 2.), Plaintiff in the instant action is a resident of a foreign country; Plaintiff concedes nothing more.

Finally, Defendant cites to *AF Holdings v. Trinh* in support of the proposition that Courts have required plaintiffs to post substantial bonds, including attorney fees, in a copyright case such as this. (ECF No. 12 at 2-3.) What Defendant neglects to mention, however, is that the *Trinh* Court imposed such substantial bond on the basis of California Code of Civil Procedure § 1030. (*See AF Holdings v. Trinh*, No. 3:12-cv-02393-CRB, ECF No. 23 at 2.) As the *Trinh* Court notes, California Code of Civil Procedure § 1030 provides for costs and attorney's fees which may be awarded in the action. Defendant fails to cite any statute or local rule which could form the foundation of the request he has made in his Motion. Indeed, the case law cited by Plaintiff represents the proposition that there exists "no case in which a court has required security for expenses, as opposed to security for costs, without express statutory authority. Nor have we found a case which has posited circumstances under which such an undertaking might be required." (*See supra* at 4.)

Having established that Defendant lacks any legal basis for the relief he seeks, Plaintiff now turns to Defendant's arguments. It is worth noting that the only mention that Defendant makes in his entire Motion with respect to any sort of standard that he might be arguing as having satisfied is in his Conclusion, where he asserts "Chowdhury has a 'reasonable possibility' of obtaining judgment in the instant matter." (ECF No. 12 at 19.) Defendant offers no citation to case law, statute, or local rule indicating that this is an appropriate standard. Given the countless examples of Defendant's counsel's lazy

lawyering already pointed out by Defendant (in just *the first two pages* of Defendant's Motion), it is, of course, not surprising that the "reasonable possibility" standard comes directly from **California Code of Civil Procedure § 1030**. *See* California Code of Civil Procedure § 1030(b) ("The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a ***reasonable possibility*** that the moving defendant will obtain judgment in the action or special proceeding.") (Emphasis added.)

## ARGUMENT

### I.   DEFENDANT HAS NOT PROVEN THAT ITS ALLEGATIONS AGAINST DEFENDANT WERE MADE SOLELY ON THE BASIS OF AN IP ADDRESS

Defendant makes the assumption that Plaintiff's claims against Defendant in the instant action are based solely on the fact that Defendant was the subscriber of the infringing IP address. (*See* ECF No. 12 at 4.) Defendant, however, offers no evidence supporting this assumption. Though Defendant may point to Plaintiff's Complaint, Plaintiff simply has no obligation to detail the evidentiary or investigatory basis of its factual allegations in the body of its Complaint; rather, Federal Rule of Civil Procedure 8(a)(2) simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). One can imagine the burden upon the courts, and upon litigants, if plaintiffs were required to detail the evidentiary basis of their claims within the Complaint itself. Even if one were to argue that such detail *should* be required, the Federal Rules of Civil Procedure currently do not require such detail. As such, if Defendant feels that the evidence presented in this case thus far weighs so heavily in his favor, he is welcome to move for summary judgment. He cannot, however,

establish that Plaintiff's claims were made solely on the basis of an IP address without any evidence supporting such an assertion. Without conceding that Defendant's assertion is correct, Plaintiff's aforementioned contention disposes of pages 4-8 of Defendant's Motion, which are dedicated to proving that an IP address is an insufficient basis to allege copyright infringement.

## II. PLAINTIFF'S ASSIGNMENT *DOES* GRANT THE RIGHTS TO ACCRUED CLAIMS

Defendant's argument in this regard boils down to the following question of law: does the assignment agreement by which Plaintiff received the underlying copyright, which granted to Plaintiff, *inter alia*, "all proprietary rights therein, including, without limitation, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights, and all claims and causes of action of respect to any of the foregoing, whether now known or hereafter to become known," (ECF No. 12 at 9) grant to Plaintiff the right so sue for accrued infringements on the basis of the underlying copyright? It appears that Defendant would not be satisfied unless the assignment agreement contained the words "expressly" and "accrued." However, Defendant has cited no case law indicating that those words must have been included. "Whether now known or hereafter to become known" is sufficient, as a matter of law, to transfer the right to sue on the basis of accrued claims. Defendant cites *Infodek* (ECF No. 12 at 9), where assignor had intended to "transfer any and all accrued damages," as supporting his position. *Id.* However, the assignment of "all claims and causes of action…whether now known or hereafter to become known" is much more clearly a transfer of accrued causes of action. Though Defendant asserts that the "assignment is merely a right to sue" (ECF No. 12 at 10), the plain language of the assignment, ***as cited by Defendant***, clearly contradicts that

assertion. (*See* ECF No. 12 at 9) ("Assignor hereby irrevocably assign, conveys and otherwise transfers to Assignee…all rights, title and interest worldwide…and all proprietary rights therein, including, without limitation, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights…")

Though Defendant did not even establish a legal threshold he must meet in his security motion, this argument would not, for the reasons described above, satisfy *any* legal threshold.

## III.   THE PURPOSE OF THIS LITIGATION IS TO ENFORCE A COPYRIGHT

Defendant perhaps discovered, by this point in his Motion, that his arguments have no merit. That may explain why he begins a baseless, inappropriate tirade against Plaintiff. Defendant asserts that this suit is Plaintiff's latest effort to "pressure a settlement from an ISP subscriber—whether by law or sheer litigation cost—for infringements, regardless of guilt." (ECF No. 12 at 10.) The first example proffered by Defendant is that Plaintiff "plac[ed] knowing financial and logistical burdens on Chowdhury" when it filed suit against Mr. Chowdhury's IP address, among many other IP addresses, in the District of Columbia. (ECF No. 12 at 11.) That suit, however, was perfectly legitimate, and the D.C. Court would have had jurisdiction over Chowdhury based on the fact that he participated with individuals in D.C. to share Plaintiff's copyrighted work. The fact that he may not have known that people in D.C. were part of his illegal activities is irrelevant. Finally, and most importantly, the instant suit is filed in the District of Massachusetts, and, as such, no personal jurisdiction issues are present here.

Defendant next goes on to assert that Plaintiff sends out "scarlet letter[s] to further settlements"; that Plaintiff has had different law firms represent it in its history; and that there are undisclosed financial interests at play. (ECF No. 12 at 11-13.) Defendant declines to even argue how settlement letters sent on Plaintiff's behalf, or the fact that Plaintiff has had different law firms represent it in its history tend to prove Defendant's innocence of the actions alleged; indeed, it seems that Defendant hopes his insinuations of misconduct will do his arguing for him. Furthermore, Defendant offers nothing further than hunch and rumor to support his assertion that there are undisclosed financial interests in the instant action. *Id.*

Defendant next goes on to describe certain occurrences regarding one Alan Cooper. Defendant once again offers hunch and rumor to support his accusations. (ECF No. 12 at 14-15.) Though Mr. Cooper has indeed filed a lawsuit, the fact of having filed a lawsuit does not indicate that the facts alleged in the lawsuit are true; if that were the case, Plaintiff would already have had its $150,000 statutory judgment against Mr. Chowdhury for copyright infringement in hand.

## CONCLUSION

Defendant herein has thoroughly failed to even establish an applicable legal standard by which to measure his outlandish claim of being entitled to Plaintiff's posting of $60,000 before it can continue with the instant litigation. The arguments supporting his claim are, as described above, deeply flawed, but even if they were not, Defendant has still failed to meet that minimum threshold of providing an applicable statutory or procedural basis for the security requested in the first place. Defendant's Motion should thus be denied.

Respectfully submitted,


AF Holdings, LLC,

DATED: February 12, 2013


By:   /s/ Daniel G. Ruggiero

Daniel G. Ruggiero, Esq.
P.O. Box 291
Canton, MA 02021
Telephone: (339) 237-0343
Fax: (339) 707-2808

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 12, 2013, all individuals of record who are deemed to have consented to electronic service are being served true and correct copy of the foregoing documents, and all attachments and related documents, using the Court's ECF system.

/s/ Daniel G. Ruggiero