## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| AF HOLDINGS, LLC,                                  ) | Civil Action No. 1:12-cv-12105-JLT |
|                                                                   ) | |
|           Plaintiff/Counterdefendant,       ) | |
| v.                                                               ) | |
|                                                                   ) | |
| SANDIPAN CHOWDHURY,                   ) | |
|                                                                   ) | |
|           Defendant/Counterplaintiff.       ) | |
| _____ ) | |

### COUNTERPLAINTIFF SANDIPAN CHOWDHURY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S COUNSEL'S MOTIONS TO SET ASIDE DEFAULT JUDGMENT

Counterplaintiff Sandipan Chowdhury ("Chowdhury") respectfully submits this response in opposition to the motions (ECF Nos. 36-37, 38-39, & 41) filed by three aliases of Plaintiff AF Holdings, LLC ("Plaintiff" or "AFH"), namely attorneys Paul Hansmeier ("Hansmeier"), John Steele ("Steele"), and Paul Duffy ("Duffy") (collectively, the "Prenda attorneys"), seeking to set aside the Court's Order (ECF No. 34; "Order") granting Chowdhury's motion for default judgment (ECF No. 32; "Chowdhury Motion"). The Prenda attorneys offer no valid procedural grounds and present no cognizable error that would warrant setting the Order aside. The Order should be left undisturbed or affirmed, for the reasons stated in the Order, the Chowdhury Motion, and those further stated herein.

### I. RELEVANT FACTS AND PROCEDURAL HISTORY

AFH initiated this action on November 13, 2012, filing a complaint alleging copyright infringement, civil conspiracy, and negligence. ECF No. 1. Chowdhury answered, denying any liability, and raising counterclaims of abuse of process, copyright misuse, violation of Chapter 93A of the Massachusetts General Laws ("Chapter 93A"), and seeking a declaratory judgment of non-infringement. ECF No. 7 pp. 11-20. Chowdhury's counterclaims alleged, *inter alia*, "Plaintiff is represented by Prenda Law, Inc. (f/k/a Steele Hansmeier PLLC)." *Id.* p. 12. "Plaintiff and its counsel appear to be engaged in widespread fraud." *Id.* p. 13. "Plaintiff may not even exist; and Plaintiff's counsel may truly be the real parties in interest in this case." *Id.* p. 14.

While this action was pending, the Prenda attorneys were sanctioned in a case whose findings of fact about them include that they created and operated shell companies (including AFH) solely to sue people and shield themselves from liability, and stole the identity of Steele's caretaker, forging a copyright assignment in his name to create a non-existent corporate officer for AFH:

1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2. AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals.

4. [S]ettlement funds [from copyright infringement lawsuits] resided in the Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13.

8. The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper … [They] fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.

11. Plaintiffs[1] have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.

Order Issuing Sanctions, *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-08333-ODW-JC ("*Ingenuity 13*"), ECF No. 130 pp. 3-5 (C.D. Cal. entered May 6, 2013) ("*Ingenuity 13* Order"). On May 8, 2013, Chowdhury requested judicial notice of the *Ingenuity 13* Order. ECF No. 15; ECF No. 15-1.

In January 2013, AFH moved to strike the counterclaims in part and to dismiss them entirely. ECF Nos. 8 & 9. Also that month, Chowdhury moved for an order requiring AFH to post a $60,000 bond to guarantee his ability to recover damages, attorney's fees, and costs should he prevail on his counterclaims. ECF No. 11. Daniel Ruggiero ("Ruggiero"), who was then counsel of record for AFH, did not attend the June 17, 2013 hearing on the pending motions. ECF No. 17. Instead, he sent an email to the Court Clerk stating, "I have no objection to the motion for bond. I will be filing a motion to dismiss plaintiffs claim against defendant shortly as well as a motion to withdraw." ECF No. 18.

---

[1] The Ingenuity 13 court used the term "Plaintiffs" to cover the nominal plaintiffs, including AFH, as well as "related entities, individuals, and attorneys that collaborated in the underlying scheme." *Ingenuity 13* Order p. 1 n.1.

The Court denied AFH's motions to strike and dismiss the counterclaims and granted Chowdhury's motion for a bond. ECF No. 20. When AFH failed to timely answer the counterclaims, Chowdhury requested entry of default on July 10, 2013 (ECF No. 21), serving notice on Ruggiero through ECF (as he had with all prior filings). *See also*, *Exhibit A* ("I have made them aware of everything. They also get all of the pleadings etc automatically and I can vouch for you on that.") (Email from Atty. Ruggiero); ECF No. 22 ("With regards to this case, Prenda/AF Holdings, receives copies of all court filings automatically through the ECF system. They have always known the existence of the pending motions and status of the cases.") The Prenda attorneys, through their firm Prenda Law, Inc. ("Prenda"), had retained Ruggiero to work of counsel to Prenda in this action and others. *See*, *Exhibit B* ("I was originally retained by Prenda to represent AF Hidings, LLC") (Ruggiero Affidavit).

Duffy, in another matter, had declared himself "national counsel" for AFH. *See*, ECF No. 29-1 p. 3. On August 13, 2013, Chowdhury's attorney sent an email to Duffy, inquiring as to why the bond had not yet been posted and stating that Chowdhury had moved for default for failure to answer the counterclaims. *See*, *Exhibit C*. Duffy responded with an email claiming that the account was inactive. *See*, *Exhibit D*. That same evening, Ruggiero contacted the undersigned stating "What email address do you have that actually works?" *See*, *Exhibit E*. August 13, 2013, Duffy sent an email to Ruggiero with the subject line "Af," stating, "Please call me before our client sues you for malpractice." *See*, *Exhibits F & B*. The next day, August 14, 2013, Ruggiero moved for leave to withdraw as counsel for AFH, citing the *Ingenuity 13* Order and a host of ethical concerns: "It is impossible for the undersigned to file pleadings on behalf of the Defendant where there is no reasonable basis to conclude that anything that Plaintiff tells counsel is truthful." ECF No. 22 p. 4. Ruggiero also stated, "It is my understanding that Mr. Lutz is the owner of Plaintiff, but to be honest, I have no idea what to believe." *Id.* p. 2. That same day, Duffy emailed Chowdhury's counsel that "neither I nor any firm I have been associated with is counsel in the matters you mention," but then goes on to state service could be made by mail to his business address. *See*, *Exhibit G*.

The Court allowed Ruggierio's motion on August 20, 2013. ECF No. 23. AFH chose not to substitute counsel and proceeded *pro se*. On August 29, 2013 this Court allowed Defendant's motion for entry of default, ECF No. 25, and entry of default was noticed by the Clerk. ECF No. 26.

On September 13, 2013, Chowdhury moved for default judgment on his counterclaims, noting that "AF Holdings has been found to be an alias of Prenda Law, Inc. and its principals—John

Steele, Paul Duffy and Paul Hansmeier." ECF No. 28 p. 1 n.1. The supporting memorandum of law emphasized that default judgment was sought against the "Plaintiff," defined as Prenda and the Prenda attorneys. ECF No. 29 p. 1 n.1 ("AF Holdings has been found to be an alias of Prenda Law, Inc. and its principals—John Steele, Paul Duffy and Paul Hansmeier—collectively referred to herein as 'Plaintiff'"). *See also, id.* p. 3 ("Plaintiff … [i]n reality … is an alias of Prenda Law.") & p. 7 ("WHEREFORE, Defendant respectfully requests that this Court enter a Default Judgment against Plaintiff and its known aliases."). Chowdhury claimed $21,393.60 in damages and requested that the amount be trebled with costs and attorney's fees awarded pursuant to Chapter 93A. *Id.* p. 7.

That same day, September 13, 2013, Chowdhury's counsel emailed the motion for default judgment and memorandum of law to Duffy. *See*, *Exhibit H.* Duffy replied, "I am not counsel in this case. … I decline to accept service by email." *Id.* Duffy's further informed Chowdhury's counsel "I have placed you in my "spam" filter." *Id.* The same day, Chowdhury's counsel served the motion for default judgment and its supporting memorandum of law, exhibits and affidavit on AFH, Prenda, the Prenda attorneys, and Lutz by certified mail. *See*, *Exhibit I* (Affidavit of Jason Sweet).

None of the Prenda attorneys filed an opposition to the motion for default judgment. The Court entered an endorsed order allowing the motion without opposition on September 30, 2013. ECF No. 31.

On October 17, 2013, Chowdhury moved for final approval of the default judgment in a form dismissing AFH's claims with prejudice and granting the relief sought in Chowdhury's counterclaims, with his attorney's fees and costs trebled pursuant to Chapter 93A. ECF No. 32 p. 2. In addition, the motion for final approval requested joint and several liability be imposed against AFH, Prenda, the Prenda attorneys, and Lutz; and requested permission to "take limited discovery for purposes of determining the location and control [of] Plaintiff's assets." *Id.* On October 22, 2013, the Court endorsed an endorsed order allowing the motion, entering joint and several liability against Plaintiff and its aliases. ECF Nos. 33 & 34. The Court mailed the order and final judgment to Plaintiff at the address Plaintiff's counsel provided, but the mail was returned. ECF Nos. 35 & 40.

Steele moved to set aside the default judgment on November 6, 2013. ECF Nos. 36 & 37. Hansmeier did the same on November 7, 2013. ECF Nos. 38 & 39. Duffy did the same through a declaration, rather than a motion, on November 12, 2013. ECF No. 41.

## II. LEGAL STANDARD

"A default judgment may be set aside 'in accordance with Rule 60(b).'" *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 187 (1st Cir. 2004) (quoting Fed. R. Civ. P. 55(c)).

> The Rule 60(b) standard is familiar. Success under that rule requires more than merely casting doubt on the correctness of the underlying judgment. ... Rather, Rule 60(b) relief is "extraordinary in nature" and, thus, "motions invoking that rule should be granted sparingly." … A party seeking relief under Rule 60(b) must demonstrate "at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted."

*Fisher v. Kadant, Inc.*, 589 F.3d 505, 512 (1st Cir. 2009) (citing and quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002).

A movant, "as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 19 (1st Cir. 1992). "Purely conclusory allegations are not sufficient to satisfy" the precondition. *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 95 (1st Cir. 2001) (citing *Teamsters*, 953 F.2d at 21).

"While the above principles govern Rule 60(b) relief generally, the precise contours of the applicable standard will depend on the particular subsection involved and the nature of the underlying judgment from which relief is sought." *Id.* (citing *Teamsters*, 953 F.2d at 20 n.3). Motions under Rule 60(b) "are committed to the district court's discretion." *Teamsters*, 953 F.2d at 19.

"Rule 60(b) … specifies six grounds for relief." *Venegas-Hernandez*, 370 F.3d at 188. The Prenda attorneys rely on three of the Rule's six subsections: Rule 60(b)(1), 60(b)(3), and 60(b)(4). The Rule provides, in pertinent part:

> (b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; …
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; [or]
>
> (4) the judgment is void[.]

Fed. R. Civ. P. 60(b)(1), (3), & (4).[2]

---

[2] In general, Rule 60(b) allows a court to "relieve *a party or its legal representative* from a final judgment, order, or proceeding." An odd argument to be made by those claiming to be a "non-parties."

## III. ARGUMENT

The Prenda attorneys' motions are untimely. They failed to oppose the request for default judgment; they failed to oppose the motion for default judgment—they effectively abandoned the case, appearing only after its completion to contest its results. Their dilatory approach to this lawsuit does not warrant setting aside the judgment in any respect.

The judgment is not void. It was properly entered on an unopposed motion, served on each of the Prenda attorneys, designating them as the parties against whom Chowdhury's counterclaims lay. Their claims to be caught unaware by the judgment, or not subject to it, are not credible. Nor is the honestly obtained default judgment the result of fraud, misrepresentation, or misconduct under Rule 60(b)(3). Finally, the award of damages does not constitute a mistake under Rule 60(b)(1).

Relief under Rule 60(b) would be futile. None of the Prenda attorneys even contend that they have "the right stuff to mount a potentially meritorious … defense" to any of the counterclaims, *Karak*, 288 F.3d at 19, much less show that any potential defense would "give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Teamsters*, 953 F.2d at 19.

Therefore and for the reasons given below, the Prenda attorneys fail to show that the extraordinary relief available under Rule 60(b) should be granted. *Karak*, 288 F.3d at 19.

### A.  The Prenda Attorneys Neither Address Nor Satisfy the Standards for Rule 60(b) Relief.

Within the First Circuit, "it is the invariable rule, … that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Teamsters*, 953 F.2d at 20.

The Prenda attorneys' motions to set aside default judgment fail not only to articulate or meet the proper standard for removing the default judgments, but to show that the removal of the default judgment would not be an empty exercise. The Prenda attorneys make no attempt to support their conclusory statements with affidavits or facts.[3]

> A meritorious defense is one that is "presented and presented in a timely enough fashion to permit the opposing party to question the legal sufficiency of the defense." Factual allegations supporting a meritorious defense must be submitted to the court in a written motion, a proposed answer, or attached affidavits.

*Braunstein v. Sanders (In re Tariq Muhammad)*, No. 09-cv-10136-JNF, 2011 Bankr. LEXIS 3290, *13 (Bankr. D. Mass. Apr. 22, 2011) (internal citations omitted). Even if the Prenda attorneys'

---

[3] Though the Prenda attorneys cite to affidavits, none are provided. *See, e.g.,* ECF No. 37 p. 5.

motions were timely, and even if equitable factors weighed in favor of setting aside the default judgment, the motions would still fail because they have failed to show that they are entitled to relief under any of the cited subsections of Rule 60(b).

As stated above, at a *bare minimum*, Rule 60(b) requires that the motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted. *See, e.g.,* Fed.R.Civ.P. 60(b); *Kayser-Roth Corp.*, 272 F.3d at 95 (citing *Teamsters*, 953 F.2d at 19).

Had the Prenda attorneys bothered to address these factors in their duplicative motions, they would have found them to weigh against vacating the default judgment.

**1. The Motions to Set Aside the Judgment Are not Timely.**

The Prenda attorneys' motions are untimely. "A motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Motions under Rule 60(b)(1), (2), or (3) must be brought within a year, *id.*, but "[i]t is well-established that the one-year limitation period is an outer limit, and that even a motion brought within a year should be rejected if not made within a reasonable time." *In re New England Mutual Life Ins. Co. Sales Practices Litig.*, 204 F.R.D. 6, 11 (D. Mass. 2001) (citing *Berwick Grain Co. v. Illinois Dept. of Agriculture*, 189 F.3d 556, 560 (7th Cir. 1999)). "What constitutes reasonable time … depends on the facts of each case. The relevant considerations include whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." *Id.* (quoting *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660-61 (1st Cir. 1990)). The Prenda attorneys have not claimed that their motions are timely, nor met their burden to show any good reason why they failed to act sooner.

Instead, the Prenda attorneys ignored multiple notices about this case and the default judgment without explanation. They "owned and controlled" their law firm Prenda. *Ingenuity 13* Order p. 4. Through their law firm Prenda, they initiated this action on behalf of the Plaintiff they created, for which they are also "the de facto owners and officers." *Id.* Through Prenda, they retained Ruggiero to serve of counsel to Prenda. *See*, *Exhibit B* ¶¶ 2,7 (Ruggiero Affidavit). They therefore had imputed notice of all Chowdhury's filings implicating them in Plaintiff's misdeeds, through and including Chowdhury's request for entry of default. *Id.*; ECF No. 21; *National Credit Union Admin. Bd. v. Stone*, No. 92-cv-12277, 1994 U.S. Dist. LEXIS 8714, *8 (D. Mass. Apr. 21, 1994)

("knowledge and duties as an attorney are imputed to [] partners as a matter of law"). *See, e.g. United States v. Josleyn*, 206 F.3d 144, 159-60 (D.N.H. 2000).

Chowdhury's filings repeatedly pointed out that Plaintiff AFH is an alias or alter ego of the Prenda attorneys, non-attorney Mark Lutz ("Lutz"), and their law firm, Prenda. *See, e.g.,* ECF No. 12 pp. 12-13 (discussing "The Many Faces of Prenda Law"); ECF No. 12-3 pp. 3-6 ("Glossary of Key Players, Aliases and Interrelatedness"); ECF No. 30 p. 2 (discussing another AFH case holding that "Prenda Law's Principals may be personally liable for the attorney's fees and costs" incurred therein).

Chowdhury's counsel went even further than required to ensure the Prenda attorneys had full notice, emailing the request for entry of default to Duffy. *See*, *Exhibit H.* Duffy denied being involved, but when he received the default request, he promptly emailed Ruggiero to say, "Please call me before our client [i.e., AFH] sues you for malpractice." *See*, *Exhibit F; Exhibit B* ¶ 13. That helped precipitate Ruggiero's withdrawal, but Prenda did not substitute counsel, an unjustified failure that by itself makes the Prenda attorneys' current objections untimely. *See, generally, In re Kiley*, 947 N.E.2d 1, 7-9 (Mass. 2011) ("Where an attorney leaves a law firm and moves to withdraw, and where successor counsel from another law firm does not file an appearance, a judge is entitled to expect that another attorney from the law firm will enter an appearance and continue to represent the client.").

Chowdhury's counsel sent his motion for default judgment and supporting memorandum to Duffy by email, and sent the same—including exhibits—by certified mail to AFH, Prenda, Lutz, and each of the Prenda attorneys. *See*, *Exhibit I.* The motion left no doubt that judgment would be against AFH and its aliases, including the Prenda attorneys. The motion sought default judgment against AFH, whom it noted "has been found to be an alias of Prenda Law, Inc. and its principals—John Steele, Paul Duffy and Paul Hansmeier." ECF No. 28 p. 1 n.1. The memorandum emphasized that judgment would be against the "Plaintiff," defining "Plaintiff" to include Prenda and the Prenda attorneys. ECF No. 29 p. 1 n.1 ("AF Holdings has been found to be an alias of Prenda Law, Inc. and its principals—John Steele, Paul Duffy and Paul Hansmeier—collectively referred to herein as 'Plaintiff'"). *See also, id.* p. 3 ("Plaintiff … [i]n reality … is an alias of Prenda Law.") & p. 7 ("WHEREFORE, Defendant respectfully requests that this Court enter a Default Judgment against Plaintiff and its known aliases …").

None of that roused an opposition from AFH, Prenda, or the Prenda attorneys. The Court entered the default judgment without opposition. ECF No. 31. That was hardly a well-kept secret. *See, e.g.,* Victoria Slind-Flor, *Boston Court Enters Default Judgment Against Adult-Film Company*, Bloomberg.com (Oct. 3, 2013).[4] But with judgment against them pending, Prenda didn't even give the Court a valid mailing address where it could be sent. ECF Nos. 35 & 40.

Of course, the Prenda attorneys knew well that they were the true parties in interest; they had created their sham plaintiff "to shield [themselves] from potential liability." *Ingenuity 13* Order p. 4. When the default judgment against the Prenda attorneys was on its way, they did not timely oppose it. This Court should not endorse such irresponsible and untimely conduct, especially from attorneys.

> "The Court further concludes that, once all of the ill-gotten gains are fully disgorged from AF Holdings, it would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully untangle the relationship between Hansmeier, Steele, Duffy, Dugas, Lutz, and Prenda Law, on the one hand—and the Plaintiff, AF Holdings, LLC., on the other. Such investigation can more effectively be conducted by federal and state law enforcement at the direction of the United States Attorney, the Minnesota Attorney General, and the Boards of Professional Responsibility in the jurisdictions where the attorneys involved in this apparent scheme are licensed to practice law."

*AF Holdings v. John Doe*, No. 12-cv-01445, ECF No. 67 p. 9 (D. Minn. Nov. 6, 2013) (Attached as *Exhibit J*).

Setting aside the default judgment would seriously prejudice Chowdhury. Chowdhury and his counsel have spent considerable time, effort, and expense enforcing the default judgment. Only now, after a year of litigation and with a default judgment entered, are the Prenda attorneys seeking to defend themselves.

**2. The Prenda Attorneys Present No Meritorious Defense.**

This is not a instance of exceptional circumstances; instead, it is a case of the Prenda attorneys willfully putting their proverbial "heads in the sand" to avoid their obligation to defend themselves in properly asserted counterclaims. None have alleged any exceptional circumstances warranting relief in this case and, indeed, it was their conduct that led to the default judgment. Nor do the Prenda attorneys argue that they never had notice of this case, the notice of default or the entry of default judgment. It appears that they simply made a decision not to defend themselves.

---

[4] Available at http://www.bloomberg.com/news/2013-10-03/farney-daniels-time-warner-intellectual-property.html.

In order to set aside a judgment, "a movant need not establish that it possesses an ironclad claim or defense which will guarantee success at trial" but it "must at least establish that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake." *Teamsters*, 953 F.2d at 21.

### a.   Plaintiff is an Alias of the Prenda Attorneys and as such Service was not Required.

A person is not, of course, bound by a judgment as to which he did not have a full and fair opportunity to litigate the underlying claim. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 95 (1980); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 (1971); *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940). That principle does not apply, however, in the case of non-parties who "assume control over litigation in which they have a direct financial or proprietary interest." *Montana v. United States*, 440 U.S. 147, 154 (1979).

Informed in part by the *Ingenuity 13* Order, other federal courts have taken a closer look at cases brought by the Prenda attorneys and have adopted the *Ingenuity 13* Order's findings of an "alter ego relationship." A recent ruling not only incorporated *Ingenuity 13* Order's factual findings but made an additional eleven independent findings. *AF Holdings LLC v. Navasca*, No. 12-cv-02396-EMC, ECF No. 116 pp. 5-9 (N.D. Cal. 2013) (Attached as *Exhibit K*). In pertinent part, the additional findings included:

1. … For all material purposes here, Prenda Law, Inc. is a mere continuation of Steele Hansmeier. … Brett Gibbs testified that Hansmeier and Steele continue to perform the same roles at Prenda that they had performed at Steele Hansmeier, and that business continued to operate in the same manner.

2. Gibbs testified that Steele Hansmeier and Prenda Law originally represented actual producers of adult films in copyright infringement cases. In 2012, Steele told Gibbs that he wanted to become a company that would solely enforce copyright claims for its own intellectual property holdings. Steele told Gibbs that AF and Ingenuity 13 would be owned by "Livewire" and would file their own copyright infringement cases. Gibbs testified that, as time went on, he was instructed to file more cases on behalf of AF and Ingenuity 13 than any other producer of adult films which Steele and Hansmeier had previously represented. Gibbs further testified that it was "common practice" for AF to file lawsuits and obtain summonses, while it was rare for the other producers he represented.

3. Gibbs was "Of Counsel" for Prenda Law, Inc., and represented AF in this action until February 26, 2013, when Duffy substituted in as counsel. *See* Doc. No. 64. Gibbs testified that Steele and Hansmeier directed his litigation activities in cases filed by AF, including this one. *See also* Doc. No. 94 (Gibbs Decl.) at ¶ 3. … Gibbs testified that he conferred weekly with Steele and Hansmeier to discuss active AF cases. Navasca introduced evidence of hundreds of phone calls between Gibbs, Steele and Hansmeier starting in December 2011 and ending in March 2013, supporting this

testimony (Defendant's Exs. A & B). Gibbs confirmed that the phone numbers appearing in the exhibits were his and the phone numbers of Steele and Hansmeier. Gibbs also highlighted several phone calls with Hansmeier on November 30, 2012, which coincided with the date of the Case Management Conference held in this matter (*see* Doc. No. 21), and confirmed that he spoke with Hansmeier about the case. …

7. Navasca introduced evidence of two audio recordings, which were played during the hearing. The first was a recording produced by GoDaddy.com, which registered the domain name for dangerousxxx.com. *See* Defendant's Ex. D. The caller identifies himself in the recording as "Alan Cooper" and asks the customer service representative for help in resetting the password to his account; he eventually asks the customer service representative to send the password reset information to johnlsteele@gmail.com, an address on the account.[5] Gibbs testified that the voice of the caller is in fact that of Steele, whom he knows personally and whose voice he recognizes. Gibbs testified he had used that email address from his Prenda Law firm account to contact Steele. In the second recording, the caller identifies himself as "Mark Lutz," but once again, Gibbs testified that the caller was in fact Steele. Defendant's Ex. E. …

8. Based on Alan Cooper's testimony, which the undersigned admitted into evidence, and on the evidence that Steele impersonated Cooper in the GoDaddy recording, the undersigned finds that Steele impersonated Cooper to further the copyright litigation scheme. …

*Id. See also, Id.*, ECF No. 120  p. 5 (adopting the magistrate judge's findings and noting "collateral estoppel bar[s] the Plaintiff and its aliases from relitigating … findings on these issues.") (Attached as *Exhibit L*).

A default judgment, therefore, may be entered against AFH, along with its alter egos and aliases. *Transamerica Corp. v. Moniker Online Servs., LLC*, No. 09-cv-60973, 2010 U.S. Dist. LEXIS 48016, *18 (S.D. Fla. April 7, 2010). Once a default judgment is entered, the Court may apply it not only to the party named in the caption but to its aliases. *Gucci Am., Inc. v. Myreplicahandbag.com*, No. 07-cv-2438, 2008 U.S. Dist. LEXIS 49480, *17 (S.D.N.Y. Jan. 25, 2008) (making joint and several liability applicable to defaulting defendants' alias at inquest following default judgment); *Legal Additions LLC v. Kowalski*, No. 08-cv-2754, 2011 U.S. Dist. LEXIS 67342, *7-9 (N.D. Cal.  June 23, 2011) (judgments may be amended to add a non-party alter ego or where otherwise amending to insert the real name of the judgment debtor would not raise due process concerns); *Estate of Witty v. Primus Telecoms Grp., Inc.*, No. 02-cv-1933, 2006 U.S. Dist.

---

[5] "Furthermore, the physical address for the customer was 4532 E Villa Theresa Dr. – an address that is linked to Mr. Steele's sister and "Anthony Saltmarsh." Docket No. 55 (Ranallo Decl. ¶¶ 11-12 & Exs. B-C). Mr. Steele and Mr. Hansmeier did not provide any evidence explaining these circumstances." *Exhibit L* pp. 9, 10-15.

LEXIS 47898, *8 (D.N.J. 2006) (allowing amendment of the complaint after default judgment to add aliases of the defaulting party to the caption).

Indeed, the Supreme Court notes that

[o]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own … is as much bound … as he would be if he had been a party to the record.

*Id. See also, Alman v. Danin*, 801 F.2d 1, 5 (1st Cir. 1986); *General Foods v. Massachusetts Dep't. of Public Health*, 648 F.2d 784, 789 (1st Cir. 1981) (judgment will bind a non-party if he had the "power to determine what evidence and arguments should be offered in the litigation"); *Explosives Corp. v. Garlam Enters. Corp.*, 817 F.2d 894, 906 (1st Cir. 1987) ("a nonparty who controls the litigation is bound by the judgment"); *Data Gen. Corp. v. Grumman Data Sys. Corp.*, 886 F.Supp. 927, 931 (D. Mass. 1994).

The truthfulness of these and similar statements is further supported by two documents which Prenda sent to their former counsel, Brett Gibbs in early 2013: "*Prenda Law Profit and Loss Detail*, January through December 2012" and "Prenda Law Balance Sheet Detail." *See*, Exhibits M and N. The receipt and disbursements shown in these spreadsheets directly contradict the oft-repeated statements of the Prenda attorneys that they have no financial interest in its litigation.

According to the *Prenda Law Profit and Loss Detail*, in 2012 alone, Prenda made payments to Hansmeier, Steele, Under the Bridge Consulting[6] and other associated entities—equal to almost 70% of Prenda's total revenue. Hansmeier received $645,821.29 ($185,321.28 directly and $460,500.00 through Under the Bridge). Steele received $660,915.94 ($200,415.94 directly and $460,500.00 through Under the Bridge). This does not include tens of thousands of dollars in additional payments to or on behalf of Steele and Hansmeier for travel and entertainment, meals, credit card charges, and miscellaneous reimbursements, or payments to Steele's wife, Kerry Eckenrode Steele.[7] It also does not include payments totaling $37,069.56 to Duffy or Duffy Law Group, also classified as "Payments to Old Owners."

---

[6] A month before Gibbs left Prenda Law, Hansmeier told Gibbs in a telephone conversation that Hansmeier and Steele each owned 50% of a side-business called Under the Bridge Consulting. *Ingenuity 13*, ECF No. 240-2 ¶ 18 (Attached as *Exhibit O*). *See also*, Gibbs motion testifying to his experiences with Prenda, attached as *Exhibit P*.

[7] When convenient, Kerry Steele has also served as notary for Plaintiff's affidavits. *See, AF Holdings LLC v. John Doe*, No. 11-cv-24473-JAL, ECF No. 21 (S.D. Fla. April 16, 2012) (wherein Mark Lutz, AFH's purported owner, identifies himself as a paralegal with Prenda Law).

What is most important to note, is neither the *Profit and Loss Detail* nor the *Balance Sheet Detail* show any payments to AFH. This only adds credence that AFH is not an independent entity, but rather an alter ego of the Prenda attorneys.

### b. The Prenda Attorneys Had Ample Notice of the Pending Default Judgment.

This is not a situation in which there could be any due process constraints on the exercise of jurisdiction. First, a plaintiff who commences an action in a state that would not otherwise be able to obtain jurisdiction over the plaintiff's person consents to jurisdiction there for any counterclaim. *Henry v. Sheffield*, 749 F.Supp.2d 3, 14 (1st Cir. 2010) (citing *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) (forum has judicial jurisdiction over plaintiff on original claim as well as on counterclaim)).

In the instant case, AFH and the Prenda attorneys are alter-egos, and the pleadings and judgment reflect this conclusion. Courts may exercise jurisdiction over an individual or corporation in privity or that is the alter ego of an individual or corporation over which the court has jurisdiction. The general rule adopted by this Circuit is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity." *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981) (citation omitted). In this situation the two are considered the same person, and the jurisdictional contacts of one are attributed to the other for purposes of the due process analysis.[8] It is therefore anomalous to vacate the motion for default judgment on the basis of improper service.

> "Any sort of participation by the defendant (or the defendant's alter ego) in the action is constitutionally sufficient as a jurisdictional basis."

J. Moore & J. Lucas, *Moore's Federal Practice* ¶108.53[3], p. 108-97 (3rd ed. 2012).

Secondly, there is no dispute that AFH was on notice or properly served with the motion for default judgment in this matter. *See*, *Exhibit A*; ECF No. 22. The standard for notice which complies with the due process clause is "notice reasonably calculated, under all the circumstances, to apprise

---

[8] *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process."); *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586-588 (5th Cir. 2010) (alter egos are considered same person and contacts of one are attributed to other); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981) (fiduciary shield doctrine may not be applied when individual acted for personal gain, or when corporation is mere shell for its owner); *Stuart v. Spademan*, 772 F.2d 1185, 1197-1198 (5th Cir. 1985) (fiduciary shield doctrine not applied when corporation is facade or alter ego of defendant); *Perry v. Delaney*, 5 F.Supp.2d 617, 621 (C.D. Ill. 1998) (fiduciary shield doctrine is discretionary in nature and should not be applied when (1) defendant is alter ego of corporation, (2) defendant owns most of corporation's stock, (3) defendant's discretionary actions cause harm in forum state, or (4) defendant acted to serve own personal interests); *YKK USA, Inc. v. Baron*, 976 F.Supp. 743, 747-748 (N.D. Ill. 1997) (fiduciary shield doctrine did not apply because corporation was merely alter ego of individual defendant); *Torchmark Corp. v. Rice*, 945 F.Supp. 172, 176 (E.D. Ark. 1996) (when corporation is merely alter ego of individual, jurisdiction of individual of individual may be predicated on jurisdiction over corporation).

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mard v. Town of Amherst,* 350 F.3d 184, 189 (1st Cir. 2003) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Reasonably calculated" means likelihood, not certainty. *Whiting v. United States*, 231 F.3d 70, 76 (1st Cir. 2000) (citing *Mullane,* 339 U.S. at 317-319). Mailing a timely notice by certified mail to a party's last known address is sufficient to satisfy due process. *Id. See also, Exhibit I.*

The Prenda attorneys, as AFH's alter-egos, were on notice of all aspects of litigation they initiated. They held ultimate and complete control over the litigation strategy the non-existent Plaintiff pursued. *See*, *Exhibits B and O*. As the alter-egos of AFH, the Prenda attorneys had an economic stake in the outcome of the trial and were, of course, in a position to know about everything that occurred. Given, moreover, the non-existence of AFH, the Prenda attorneys had good reason to anticipate that they might be held personally accountable for AFH's defaults. Hence, they had every reason to consider their own interests when devising AFH's defense. On these facts alone, the Court should reject the Prenda attorneys' assertion that their due process rights were violated by their being held responsible for the judgment against AFH.

## B.  The Prenda Attorneys Fail to State a Defense Under Fed.R.Civ.P. 60(b)(1).

The Prenda attorneys implicate Rule 60(b)(1) as a basis for relief. This rule provides that a district court may grant relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Prenda attorney's do not focus on their own inadvertence or neglect but, rather, allege that this rule applies because *the Court made a mistake*. This alleged mistake has two closely related aspects: the Court (i) erred in determining Defendant's damages to be a sum certain, and (ii) neglected to hold an evidentiary hearing before entering final judgment.

As an initial matter, this Circuit has held that an error of law cannot be regarded as a "mistake" within the purview of Rule 60(b)(1). *See, Fisher v. Kadant, Inc.*, 589 F.3d 505, 513 (1st Cir. Mass. 2009) (citing *Silk v. Sandoval*, 435 F.2d 1266, 1267 (1st Cir. 1971); *Venegas-Hernandez v. Sonolux Records,* 370 F.3d 183, 189 (1st Cir. 2004) ("such a solution is foreclosed by circuit precedent in these circumstances") (cited by the Prenda attorneys in their memos for relief—*see, e.g.* ECF No. 37 p. 9).

Secondly, this case does not involve a claim of mistake, inadvertence, surprise, or excusable neglect. It is the antithesis of such a case: the Prenda attorneys freely admit that the default judgment resulted from their deliberate strategic choice. ECF Nos. 37, 39 & 41 p. 5 *omnibus* ("[insert Prenda attorney name here] had no standing to object to the motion."). This makes no sense.[9] If the Prenda attorneys had no standing to oppose the notice of default, how can they now have standing to vacate the resulting judgment? Willfulness (that is, the making of a deliberate strategic choice as the Prenda attorneys have done) is not a ground for relief under Rule 60(b)(1) and, in fact, is directly antagonistic to a claim premised on any of the grounds specified in that subsection.

### 1. The Prenda Attorneys Failed to Defend, and Were Properly Defaulted.

Pursuant to Rule 55(b), a plaintiff "must apply to the court for a default judgment" where the amount of damages claimed is not a sum certain. When necessary to effectuate judgment, "the court may conduct hearings or make referrals" for numerous purposes, including "determin[ing] the amount of damages." Fed.R.Civ.P. 55(b). Entry of default, however, "'constitutes an admission of all facts well-pleaded in the complaint'" and precludes a defaulting defendant from contesting liability. *See, Benitez-Ruiz v. Hospital Buen Pastor*, No. 03-cv-1330, 2009 U.S. Dist. LEXIS 60080, *4 (D.P.R. July 14, 2009) (quoting *Metropolitan Life Ins. Co. v. Colon Rivera*, 204 F.Supp.2d 273, 274-75 (D.P.R. 2002)); *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) ("[I]t is precisely the right to contest liability that a party gives up when it declines to participate in the judicial process.").

Once default has been entered against a defendant and liability has been established, the only remaining issue for the court is the determination of damages. *See, e.g., Smith v. Wade*, 461 U.S. 30, 52 (1983) ("Once liability is found, the [factfinder] is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss."). At this stage, "the trial judge … has considerable latitude in determining the amount of damages." *Lang-Correa v. Diaz-Carlo*, 672 F.Supp.2d 265, 269-270 (D.P.R. 2009); *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993) (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 321 (2d Cir. 1986)).

---

[9] Even if the Prenda attorneys only received the motion for default, it states on the first page: "As noted in the supporting memorandum, AF Holdings has been found to be an alias of Prenda Law, Inc. and its principals—John Steele, Paul Duffy and Paul Hansmeier." ECF No. 28. This is a contention Chowdhury has maintained throughout the litigation. *Supra*, pp. 1-4.

Fed. R. Civ. P. 55(b)(2), which governs the matter of a damages hearing for a default judgment, says only that the district court "may conduct such hearings … as it deems necessary and proper …" *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985). A hearing unnecessary where "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983)); *Katahdin Paper Co. v. U&R Sys.*, 231 F.R.D. 110, 113 (D. Me. 2005) ("damages "must be established by proof unless the damages involve a 'sum certain' or are for 'liquidated damages.'").

A court may enter default judgment without a hearing if it "has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." *Elektra Entm't Group, Inc. v. Carter*, 618 F.Supp.2d 89, 95 (D. Me. 2009) (citing *Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc.,* 285 F.3d 111, 114 (1st Cir. 2002)).

The Prenda attorneys belated contention that "Chowdhury … avoid[ed] his burden to prove that he suffered quantifiable damages and the specific amount" falls on deaf ears. *See, e.g.,* ECF No. 37 p. 6. Chowdhury not only alleges a counterclaim under Chapter 93A—which contains a provision for the award of attorney's fees—but Chowdhury counsel submitted his invoices and an affidavit, justifying the claim for attorney's fees and expenses. ECF No. 29-2. *See, e.g.,* Fed.R.Civ.P. 55(b)(1). The Prenda attorneys are not entitled to relief from judgment on grounds that their right to due process was violated because they had not participated in a hearing on the amount of damages, since they made no serious effort to have court hold such a hearing at which they could participate. That the Prenda attorneys now dispute the validity and amount of the judgment against them with such vigor makes it all the more difficult to understand how they allowed the default to occur in the first place. One can only conclude the Prenda attorneys simply have a lack of regard for the rules and procedures of the Court—and they have given no reason to dispute this conclusion.

**2. Chowdhury is Entitled to an Award of Multiple Damages.**

When a defendant fails to answer in response to a complaint seeking multiple damages pursuant to Chapter 93A, the default will establish liability but leave open the question of relief. *See, e.g., Castanouribe v. McBride*, 2001 Mass. App. Div. 172, 173 (2001); *Multi Tech., Inc. v. Mitchell Mgmt. Sys., Inc.*, 518 N.E.2d 854, 856-57 (Mass. App. Ct. 1988). A default judgment does not bind

the Court to the damages claimed in a complaint. *Jensen v. Jordan*, 1994 Mass. App. Div. 82, 82-83 (1994); *Plasko v. Orser*, 364 N.E.2d 1220, 1222-23 (Mass. 1977).

Chapter 93A permits the award of multiple damages if a factfinder determines that a "willful or knowing violation occurred." *Anderson v. Comcast Corp.*, 500 F.3d 66, 74 (1st Cir. 2007) (internal quotations omitted). A subjectively culpable state of mind is required to establish a willful or knowing violation. *See, Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821-22 (Mass. 1991). Whether an act warrants the award of double or treble damages must be based upon the specific facts of each case. *Noyes v. Quincy Mut. Fire Ins. Co.*, 389 N.E.2d 1046, 1048 (Mass. App. Ct. 1979). To succeed on such a claim requires proof of a significant level of "rascality," typically involving "immoral, unethical, oppressive or unscrupulous" behavior—the Prenda attorneys have met this standard in spades.[10] *Damon v. Sun Co., Inc.*, 87 F.3d 1467, 1484 (1st Cir. 1996) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975)); *Haddad Motor Group, Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.*, 603 F.3d 1, 6 (1st Cir. 2010). The Prenda attorneys neither answered the complaint nor complied with the Court's Order requiring bond. Instead, as they can only now concede, the decision to stonewall was a deliberate stratagem driven by their unwillingness to recognize the authority of the federal courts. That stratagem did not work.

The Prenda attorneys oppose treble damages under Chapter 93A based on *Multi Tech v. Mitchell Mgmt. Sys.*, 25 Mass. App. Ct. 333, 336 (1988). However, that case was decided before 1989 when Chapter 93A's damages provisions were amended to add the clause:

> "For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence."

"Multiple damages are [therefore] "the appropriate punishment" for forcing plaintiffs to litigate clearly valid claims." *In'l Fidelity Ins. Co. v. Wilson*, 443 N.E.2d 1308, 1318 (Mass. 1983) (quoting *Heller v. Silverbranch Constr. Corp.*, 382 N.E.2d 1065, 1071 (Mass. 1978) (the Prenda attorneys "forced [Chowdhury] to litigate … when it not only had reason to know but had actual knowledge of

---

[10] At a minimum, Prenda has been ordered to pay $81,319.72 in sanctions in *Ingenuity13 v. Doe*, No. 12-cv-08333-ODW, ECF No. 130 (C.D. Cal. May 6, 2013); $9,425 in *AF Holdings LLC v. Trinh*, No. 12-cv-02393, ECF No. 45 (N.D. Cal. Feb. 25, 2013); $22,531 in *AF Holdings LLC v. Navasca*, No. 12-cv-02396-EMC, ECF No. 100 (N.D. Cal. July 22, 2013); $63,367.02 in *Guava v. Merkel*, No. 27-cv-12-20976 (4th Dist., Hennepin Cty., Minn. Aug. 30, 2013); $72,367.00 in *Lightspeed Media v. Smith, AT&T, Comcast*, et al, No. 12-cv-00889-GPM-SCW, ECF No. 65 (S.D. Ill. Oct. 30, 2013); $2,585.60 in *LW Systems v. Hubbard*, 13-L-15 (St. Clair County, Ill. Nov. 13, 2013). Together with $64,180.80 in the present matter the grand total of Prenda-related fines—which Prenda has refused to pay—is $315,776.14.

the unlawfulness of [their] acts. Such conduct is precisely the type that §9(3) was designed to deter, and the judge's award of multiple damages was the appropriate punishment.")). The same is true for counterplaintiffs.

Similarly, Chapter 93A, §§ 9 & 11, "reflect the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct." *Klairmont v. Gainsboro Rest., Inc*., 987 N.E.2d 1247, 1261 (Mass. 2013); *Haddad v. Gonzalez*, 576 N.E.2d 658, 666 (Mass. 1991) ("It is established that deterrence is an important goal of the multiple damages provisions of c. 93A"). A plaintiff seeking to recover against a number of defendants under the multiple damages provisions of Chapter 93A, § 11, is not restricted to a single award of multiple damages, but may recover from each defendant individually. *Id.,* 387 Mass. at 853-859. "If a violation of Chapter 93A § 11, forces another to incur attorney's fees, those fees are a loss of money or property and may be recovered as Chapter 93A damages." *Columbia Chiropractic Group v. Trust Ins. Co.*, 712 N.E.2d 93, 96 (Mass. 1999) (citing *Jet Line Servs., Inc. v. American Employers Ins. Co.*, 537 N.E.2d 107, 115 (Mass. 1989). Because Chowdhury's litigation expenses were actual damages (a "loss of money") caused by the Prenda attorney's Chapter 93A violation, those expenses are recoverable, and, because their violation was willful and knowing, the Court was warranted in trebling them. *See*, *Columbia Chiropractic* at 96. *Accord, Bruce Campbell & Associates, Inc. v. Carpinato Corp.*, 52 Mass. App. Ct. 1112, *2 fn. 4 (2001) (unpublished); *Federal Ins. Co. v. HPSC, Inc.*, No. 02-cv-11822, 2005 U.S. Dist. LEXIS 19713, *12-14 (D. Mass. 2005); *In re: Hart,* 246 B.R. 709, 736 fn. 27 (Bkrtcy. D. Mass. 2000).

**C.  Fed.R.Civ.P. 60(b)(3) does not Justify Setting aside Default Judgment in this Litigation.**

The Prenda attorneys argue that their instant motions should be allowed pursuant to Rule 60 (b)(3). That rule authorizes a district court to absolve a party from a final judgment upon a showing that the adverse party has committed "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct." *See, e.g., Karak*, 288 F.3d at 21. Assuming the motions are timely pursuant to Rule 60(c)(1), which Chowdhury maintains they are not, there are two prerequisites to obtaining relief under Rule 60(b)(3). First, the moving party must demonstrate misconduct—such as fraud or misrepresentation—by clear and convincing evidence. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988). Second, the moving party must "show that the misconduct foreclosed full and fair preparation or presentation of [its] case." *Id*. The moving party must carry the devoir of persuasion as to each of these prerequisites. *See, Karak*, 288 F.3d at 21.

The Prenda attorneys have made no clear and convincing showing that any misconduct occurred on the part of Chowdhury. In fact, the Prenda attorneys' bare allegations that Chowdhury committed fraud are hardly clear and convincing, and in any case do not represent solid, factually based evidence exhibiting fraud. Perhaps hoping to avoid the Court's awareness of their falsehoods, the Prenda attorneys mention an Illinois case where they also face sanctions, but give no citation. The case is *Lightspeed Media v. Smith, AT&T, Comcast, et al,* No. 12-cv-00889-GPM-SCW (S.D. Ill. 2012), wherein Chowdhury's counsel represented Defendant Smith.[11] The *Lightspeed* court "agree[d] with Defendant" and granted his motion for fees. *Lightspeed,* ECF No. 65 (filed Oct. 30, 2013). On November 13, 2013, a hearing was held as to the amount and the court found the Prenda attorneys jointly and severally liable for their misconduct, and granted Chowdhury's counsel its requested fees, amounting to $74,426.60, in full.

The Prenda attorneys' contention regarding "similar misconduct" in Connecticut" is similarly false. The case is *AF Holdings, LLC v. Olivas,* No. 12-cv-01401-JBA (D. Conn. 2012). In *Olivas,* AF Holdings raised the same claims against a defendant represented by Chowdhury's counsel, who has also counterclaimed and moved for entry of default on his counterclaims. In the *Olivas* case, which roughly parallels the *Chowdhury* proceedings, the Prenda attorneys are obviously aware of the pending entry of default, but the docket shows that only Steele alone, and only recently, has taken steps to oppose it. *Olivas,* ECF No. 38 (filed Nov. 14, 2013).

Even if this Court found fraudulent misconduct on the part of Chowdhury, which Chowdhury denies, such misconduct did not "foreclose full and fair" presentment of the current case. To meet the second requirement for application of Rule 60(b)(3), the asserted misconduct "must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed [to judgment]." *Anderson,* 862 F.2d at 924 (emphasis in original). The Prenda attorneys had at their fingertips the "evidence" that would have laid bare what they now assert to be the true facts. As in *Karak,* their pursuit of the truth was not "hampered by anything except [their] own reluctance to undertake an assiduous investigation." *Id.* at 22. *See also, Ojeda-Toro v. Rivera-Mendez,* 853 F.2d 25,

---

[11] Wherein, Hansmeier falsely contends that, "[a]fter that [default] judgment was granted [in *Chowdhury*], Booth and Sweet fraudulently moved the Court to amend the judgment to just add Hansmeier and others as judgment debtors." *Lightspeed,* ECF No. 65 p. 6 n. 5. As the Court is aware, that is false; there was no fraud, there were no "amendments," and there was no surprise.

29 (1st Cir. 1988) (explaining "that a party may not prevail on a Rule 60(b)(3) motion on the basis of fraud where he or she has access to disputed information … at the time of the alleged misconduct").

The Prenda attorneys' own willful, inexcusable ignorance of this matter is the only reason they are in their current position. They cannot, with unclean hands, expect this Court to equitably resolve this matter in their favor. "When a party is capable of fully and fairly preparing and presenting their case notwithstanding the adverse party's arguable misconduct, the trial court is free to deny relief under Rule 60(b)(3)." *Karak,* 288 F.3d at 21-22. *See also, Diaz v. Methodist Hosp.*, 46 F.3d 492, 497 (5th Cir.1995). Nothing Chowdhury did interfered with the Prenda attorneys' ability to choose to defend this matter brought against them. Nevertheless, the Prenda attorneys consciously chose not to respond in any meaningful way. As Rule 60(b)(3) is designed to afford protection against judgments that are unfairly obtained rather than against judgments that are factually suspect, the Prenda attorneys are not entitled to set aside the default judgment entered against them. *In re M/ V Peacock*, 809 F.2d 1403, 1405 (9th Cir.1987); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

## V. CONCLUSION

"Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies." *Ingenuity 13* Order, pp. 3-5.

This case does not require us to further delve into these distractions.

Dated: November 25, 2013          Respectfully,

/s/ Jason E. Sweet _____

Jason E. Sweet (BBO# 668596)
Email: jsweet@boothsweet.com
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Counsel for Sandipan Chowdhury*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2013, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

/s/ Jason E. Sweet _____

Jason E. Sweet