## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| ) | |
| AF HOLDINGS, LLC, ) | Civil Action No. 1:12-cv-12105-JLT |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| SANDIPAN CHOWDHURY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## NON PARTY STEELE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY THE OCTOBER 23, 2013 JUDGMENT PENDING APPEAL

Non-party John Steele respectfully files this memorandum in support of his Motion to Stay the October 23, 2013 Judgment Pending Appeal. All of the factors favoring a stay are present here. In addition, Mr. Chowdhury's attorneys used arguably fraudulent means to obtain a default judgment against individuals who never named as parties, were never served with process and were never in default.

Steele submits that the Court was misled by Chowdhury's attorneys ("Booth Sweet"). After the Clerk entered default against AF Holdings, LLC, (Dkt. 27), Booth Sweet moved for an entry of a default judgment (Dkt. 28) against AF Holdings. The Court granted the motion and entered Chowdhury's proposed order for judgment against AF Holdings. (Dkt. 31.) Then the potential fraud occurred. Approximately three weeks after judgment was entered, Booth Sweet took the unusual step of seeking an amendment to the default judgment. (Dkt. 32.) In their motion, which was filed on an *ex parte* basis, Booth Sweet sought an amendment of the judgment to add *five* additional persons. (*Id.* at 2.) None of these individuals were named as

parties, served with process or even in default. (*Id.*) Booth Sweet did not disclose this fact to the Court, even though Mass. R. Prof. Conduct 3.3 requires attorneys seeking ex parte relief to "inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse."

In this stay motion, Steele respectfully asks the Court to prevent a patently obvious abuse of due process from harming five persons, who had judgment entered against them under highly questionable circumstances, until the First Circuit has had an opportunity to resolve these issues.

## BACKGROUND FACTS RELATED TO STEELE

Non party Steele is an Illinois-licensed attorney who retired from the active practice of law and moved to Florida in 2011.[1] Steele has not been to Massachussetts in over 10 years, has never appeared in any case in Massachusetts, as a party or an attorney, has never owned real estate in Massachusetts, and has never had any business dealings of any sort in Massachusetts. Steele could not have waived service in regard to this case since he was never even served with anything in the first place.

Steele has testified repeatedly, and has filed multiple affidavits, that he has no ownership interest in the Plaintiff in this case. Mark Lutz, Plaintiff's manager, as recently as January 28, 2014, has given testimony subject to cross-examination to the same effect. The *only* connection that Booth Sweet have been able to establish between Steele and this case is in an affidavit filed by AF Holdings' former counsel, Daniel Ruggerio. In that affidavit, Ruggerio stated that he spoke "at least once" to Steele and had dinner with Steele and Lutz in in the winter of 2012. (*See* ECF No. 42-2, at ¶¶ 5, 6.) That is it—Ruggerio does even suggest that he discussed this case with Steele at that dinner. (*Id.*) In this case, Steele was never named as a defendant, served with

---

[1] Steele has appeared on a limited basis for a handful of oral arguments since 2011, none of which were in Massachusetts.

process or had default entered against him. Further, Chowdhury's counterclaims do not allege wrongdoing against Steele. (*See* Dkt. 7.)

## FACTS REGARDING THE INSTANT CASE

AF Holdings filed this case on November 13, 2012, against Defendant Sandipan Chowdhury. (Dkt. 1.) The Complaint does not mention John Steele. Defendant answered and counterclaimed against Plaintiff. (Dkt. 7.) None of Defendant's Counterclaims reference Steele. Neither the Complaint nor the Answer were ever served on Steele and none of the parties or their attorneys made Steele aware that this case even existed.

On July 10, 2013, Defendant moved for an entry of default against AF Holdings (Dkt. 21) and that request was granted. (Dkt. 26.) It is undisputed that as of July 10, 2013, Steele had no involvement in this case, nor was any party asking for Steele to be liable for anything. On September 13, 2013, Defendant filed a motion for a default judgment against AF Holdings. (Dkt. 29.) That motion was granted shortly thereafter. (Dkt. 31.) It is undisputed that as of September 13, 2013, Steele had no involvement in this case. On October 17, 2013, Defendant filed a motion that was titled, "Motion For Final Approval Of Form Of Default Judgment." (Dkt. No. 32.)

In this motion, Booth Sweet asked—for the first time—to include Steele and four other non parties on the judgment. This was the first time that Defendant ever asserted John Steele was somehow liable in this matter. This Court can take judicial notice that Booth Sweet did not file a notice of service on Steele for this highly unusual pleading that asked this Court to suddenly hold non-party Steele liable for this closed case in which Steele was not listed as a party. Defendant's request was granted 5 days later, with all five of the non-parties listed in the final judgment having received no notice or having any knowledge of the proceedings. Steele first received

3

notice that this case existed shortly after the entry of the final judgment, when Booth Sweet mailed Steele a copy of the judgment. Defendant's counsel has mailed Steele other correspondence before and after this case, establishing that Defendant's counsel is aware of Steele's mailing address.

## DISCUSSION

The elements of a stay are: (1) likelihood of success on the merits; (2) balance of interests weighing in favor of the movant; and (3) the public interest. The elements are satisfied in the instant matter. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also United States v. Wilkinson*, 626 F.Supp.2d 184, 195 (D. Mass. 2009).

### The first element—likelihood of success on the merits of the appeal

In order to prevail on appeal, Chowdhury will literally have to convince the First Circuit to overrule over seventy years of Supreme Court and First Circuit precedent. not to mention the plain language of the Federal Rules of Civil Procedure. The key problem that Chowdhury faces on appeal is that he did not name Steele as a defendant, serve Steele with process, or allege claims against Steele. Chowdhury's failures to take these basic steps ensure his downfall on appeal.

The crux of Steele's appeal is that the judgment entered against him is void and must be set aside. *See* Fed. R. Civ. P. 60(b)(4). Steele was not designated as a party. In *Hansberry v. Lee*, the Supreme Court made clear "that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party...." 311 U.S. 32, 40 (1942). Any default judgment issued without jurisdiction over a defendant is void. *M & K Welding, Inc. v. Leasing Partners, LLC*, 386 F.3d 361, 364 (1st Cir. 2004). Steele was not served with process. *Shank/Balfour Beatty v. IBEW Local 99*, 497 F.3d 83, 94 (1st Cir. 2007) ("When judgment is entered against an entity never

4

properly served as a party to the case, the judgment is 'void' within the meaning of Rule 60(b)(4)."). *See also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Chowdhury did not allege claims against Steele. *See Marshall v. Baggett*, 616 F.3d 849, 853-54 (8th Cir. 2010) (vacating default judgment where complaint failed to assert a theory for imposing personal liability on a corporate officer). Rule 60(b)(4) leaves no room for discretion: if the judgment is void, the Court must vacate it. *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28 (1st Cir. 1988). *See also* 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2862 (2d ed.) ("Either a judgment is void or it is valid [and] ... when that question is resolved, the court must act accordingly.").

Booth Sweet attempted to circumvent these problems by suggesting that Steele is an "alias" of AF Holdings. Leaving aside the fact that this theory was not asserted in Chowdhury's counterclaims, supported by evidence and is not even a cognizable legal theory—Chowdhury ostensibly meant "alter ego"—this does not cure jurisdictional defects. *See Omni Capital Int'l, Ltd.*, 484 U.S. at 104; *Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1559 (1st Cir. 1989) ("the district court acquires jurisdiction over a defendant only by service of process...."); *Williams v. Jones*, 11 F.3d 247, 254-55 n.11 (1st Cir. 1993) (vacating judgment and remanding for service of process).

Indeed, if Booth Sweet were attempting to connect Steele to AF Holdings, it had a duty to notify Steele of its intent to bring him into this Court's jurisdiction. None of Defendant's motions in this entire case were ever served upon Steele, including the motion asking for this Court to transform a judgment against AF Holdings into a judgment against Steele. Had Steele known that Defendant's counsel was attempting to drag him into this case, he would have appeared in this Court and presented his comprehensive evidence that he has no ownership of AF Holdings

or its counsel. This is exactly why Booth Sweet hid its actions from Steele and the other four non-parties who were similarly denied their Constitutional due process rights.

Lastly, even assuming that Steele was an alter ego of AF Holdings—which he is not— Booth Sweet have to follow Constitutional processes to bring in non parties and hold them responsible for judgments against other people or companies. Even if a proper motion was filed—which it was not—to establish that Steele was an alias of Plaintiff, Booth Sweet would have to show this Court that it gave notice to Steele of such a motion. This Court can take judicial notice that Booth Sweet never filed a pleading asking for Steele to be deemed an alter-ego of Plaintiff. The proper course for such a request by Booth Sweet, if they had chosen to file one, would be for Steele to receive notice of Booth Sweet's attempt to have Steele found to be an alter ego of Plaintiff, Steele would have an opportunity to respond, and appear in front of this court for oral argument if necessary. At such a hearing, Booth Sweet would be required to establish some relationship between Steele and Plaintiff. The simple reason that Booth Sweet hid its efforts in Massachusetts from Steele was because they knew it would lose a motion that Steele actually knew about ahead of time and could respond to. No evidence exists that Steele owns either Plaintiff or Prenda Law.[2] In essence, Defendant's counsel held an ex parte hearing asking for a judgment against a non party who was not even aware that this case existed. It is no wonder Booth Sweet successfully obtained the relief they sought. But unfortunately for Booth Sweet, due process requires that a party against whom a judgment is being entered has an absolute, unmitigated, right to notice. Certainly if a party must be on notice, a non party who does not even know the case exists should be given proper notice. These errors prejudiced Steele

---

[2] Steele is aware that Booth Sweet and its associates in other states have stated their belief and the belief of their associated that Steele owns Plaintiff and Prenda Law. But no representative of either Plaintiff or Prenda Law has ever supported Booth Sweet's allegations.

6

because Steele had no way of knowing he risked a default judgment in a case 1500 miles from where he lived. Because of the obvious and gross due process shortcomings, there is an excellent chance that Steele will prevail on appeal.

**The second element—balance of interests**

The second element is also met. First, Booth Sweet's client, Sandipan Chowdhury, is not harmed since this is a judgment awarding attorneys' fees. To the extent that Booth Sweet are disadvantaged by not getting their improperly-gained windfall right away. the doctrine of unclean hands is applicable here. Steele is not aware of any case law that supports the proposition that an attorney who purposefully avoids service upon a person they are seeking a default judgment against should financially benefit from the resulting *ex parte* hearing. If Booth Sweet's behavior is allowed, than any plaintiff in the country can get default judgments against anyone they want on an *ex parte* basis.[3]

Although the beneficiaries of the default judgment would not be prejudiced by a stay, Steele will be greatly harmed if this Court denies this motion. The $64,000 default judgment against Steele was obtained on an *ex parte* basis, after Booth Sweet purposely failed to send a single document in this case to Steele. Furthermore, Booth Sweet has made a regular practice of filing motions against Steele throughout the country using similarly inappropriate tactics as they have in this case.

Steele is also greatly prejudiced because his rights are being violated on an ongoing basis. Assuming for the moment that Steele actually did every bad act that Booth Sweet claims in their recent pleadings before this Court. Even if this Court believes every claim made by Booth Sweet,

---

[3] Steele would also point out to this Court that by Booth Sweet's own filings, Plaintiff regularly settled with infringers they caught for approximately $3000. That Booth Sweet would incur $64,000 in legal fees for a case that they could have settled for $3000 (or less) should enlighten this Court as to the true nature of Booth Sweet's business practices.

none of that matters when determining whether a default judgment is appropriate against a non-party who never received notice of the proceedings against him. No matter how sure the Defendant in this case, his attorney, or even this Court may be that Steele should be held liable for AF Holdings, this Court is still obligated to follow the due process requirements articulated in every Circuit in this nation and allow Steele an opportunity to present a defense.

### The final element—the public interest

The final element regarding the public interest overwhelmingly weighs in favor of granting Steele's Motion. If any attorney in Massachusetts can get a default judgment against any non-party they want simply by withholding service on the non-party, then our legal system becomes that of a banana republic. There would be no incentive for any attorney to notify the person they are seeking a judgment against. Steele cannot stress enough that there is no statute, case law, or precedent (outside of several third-world countries) to support such a ridiculous proposition.

The equitable factors associated with requests for a stay cannot be reduced to a "set of rigid rules," but rather necessitate "individualized judgments in each case." *Hilton*, 481 U.S. at 777. The reason that the Unites States Supreme Court rejected a rigid set of rules regarding a motion to stay is because it knows that oftentimes District Courts judges are in the best position to prevent a miscarriage of justice. This Court is Steele's last realistic chance at protection from an order that raises serious concerns of procedural, and substantive, due process and which would irrevocably harm Steele.

Steele's Motion to Stay is not intended to criticize this Court, but meant solely to protect his due process rights as discussed briefly in this motion and more extensively in his upcoming Appeal. In fact, Steele filed this motion because he believes that this Court, after considering the

8

arguments raised in this motion, will realize that Steele's inclusion in the October 22, 2013

default judgment was obtained in direct violation of the Federal Rules of Civil Procedure, and

clear U.S. Supreme Court case law.

## CONCLUSION

For the reasons set forth herein, the Court should grant Steele's Motion To Stay the

default judgment as it relates to Steele.

February 1, 2014

John Steele
1111 Lincoln Road Suite 400
Miami Beach, FL 33139
johnlsteele33140@gmail.com
786-571-8131