**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| AF HOLDINGS, LLC,                          ) | Civil Action No. 1:12-cv-12105-JLT |
|                                            ) | |
| Plaintiff/Counterdefendant,   ) | |
| v.                                         ) | |
|                                            ) | |
| SANDIPAN CHOWDHURY,                         ) | |
|                                            ) | |
| Defendant/Counterplaintiff.   ) | |
| _____ ) | |

**MOTION  REQUIRING APPELLANTS TO POST AN APPEAL BOND FOR COSTS**
**PURSUANT TO FED.R.APP.P. 7**

**I.  INTRODUCTION**

In light of Paul Hansmeier ("Hansmeier"), John Steele ("Steele"), and Paul Duffy's ("Duffy")
(collectively "AF Holdings" or "Appellants") appeal challenging this Court's final ruling and their
continuing recalcitrance to comply with the resulting judgment, Sandipan Chowdhury ("Chowdhury
or "Appellee") hereby moves this Court pursuant to Fed.R.App.P. 7 to order Appellants to post a
bond to ensure payment of costs on appeal in the amount of Thirty Thousand Dollars ($30,000.00)
within ten days where: 1) on October 22, 2013, the Court granted Chowdhury's application for
attorneys' fees and costs, without reduction, in the total amount of $21,393.60; 2) on December 10,
2013, after defaulting, the Court issued a final judgment, entered jointly and severally against AF
Holdings in the amount of $21,393.60, an amount which was trebled under M.G.L. c.93A to
$64,180.80; 3) the fee-shifting portion of the underlying statutes (here, M.G.L. c.93A and 17 U.S.
Code § 505) provides for the recovery of costs which includes attorneys' fees; 4) the appeal is
frivolous in nature; and 5) Chowdhury's counsel estimates that the costs and attorneys' fees
associated with the appeal will reach $30,000.

**II. FACTS**

AF Holdings filed suit against Chowdhury in this Court on November 13, 2012. AF Holdings
alleged that Chowdhury had infringed the copyright of the pornographic motion picture "Sexual
Obsession" by copying and distributing it online. Chowdhury answered on January 4, 2013. He
denied AF Holdings' claims, asserted affirmative defenses including collateral estoppel, and raised
counterclaims seeking a declaratory judgment of non-infringement, and for abuse of process,

copyright misuse and violation of Chapter 93A. Among other relief, Chowdhury sought attorney's fees and trebled damages as provided by Chapter 93A.

On January 30, 2013, Chowdhury moved for an order requiring AF Holdings to post a $60,000 bond to secure Chowdhury's potential recovery. D.E. 11. His supporting memorandum described AF Holdings as "the offshore, and perhaps non-existent, litigation machine that brings suit." D.E. 12 at 1. He explained that AF Holdings "may in fact be an alias of its counsel, Prenda Law" and that "AF's counsel [are] potentially the real party in interest here." *Id.* at 1, 16. Chowdhury further outlined "the many faces of Prenda Law" f/k/a Steele Hansmeier PLLC, describing the corporate structures behind Steele, Hansmeier and Duffy's copyright litigation business model, noting:

> John Steele purportedly sold Steele Hansmeier, PLLC to Prenda Law, Inc. in November of 2011. After the switch to Prenda, attorney Paul A. Duffy became the firm's public face, though John Steele and Paul Hansmeier continue to file pleadings and communicate with opposing counsel on behalf of Prenda.

*Id.* at 12-13; D.E. 12-3; D.E. 42-11 at 5-6 (discussing Steele Hansmeier PLLC name change to Prenda).

On June 17, 2013, instead of appearing at a motion hearing, AF Holdings local counsel, Daniel Ruggiero, sent the Court's clerk an email stating: "I have no objection to the motion for bond. I will be filing a motion to dismiss plaintiffs claims against defendant shortly as well as a motion to withdraw." D.E. 17; 18. The Court denied AF Holdings' motions to strike and dismiss the counterclaims. D.E. 20. The Court allowed Chowdhury's motion requiring AF Holdings to post a $60,000 bond, construed AF Holdings' email as a motion to dismiss its claims against Chowdhury, and dismissed AF Holdings' claims. *Id.*

On July 10, 2013 Chowdhury requested entry of default against AF Holdings for its failure to answer his counterclaims. D.E. 21. AF Holdings did not oppose.

On August 29, 2013, the Court allowed Chowdhury's request to enter default, and the clerk entered a notice of AF Holdings' default. D.E. 25; 26; 27.

On September 13, 2013, Chowdhury filed a motion for default judgment and supporting memorandum. D.E. 29. He sought default against AF Holdings, which he defined as "an alias of Prenda Law, Inc. and its principals—John Steele, Paul Duffy and Paul Hansmeier," *id.* at 1, and as "a straw plaintiff," *id.* at 2. He cited "evidence indicating that Prenda Law not only fabricated the

Plaintiff, but the cause of action as well" by distributing AF Holdings' films online to entrap infringers. *Id.* at 3. Chowdhury requested a judgment for damages in the base amount of $21,393.60, which he had incurred as attorney's fees in the Court action, and requested that the base amount be trebled pursuant to Chapter 93A. *Id.* at 6-7. Chowdhury also filed a supporting affidavit of counsel pursuant to Fed. R. Civ. P. 55(b)(2), itemizing and attesting to the fees incurred. D.E. 29-2.

Chowdhury's counsel emailed the motion and memorandum to Duffy and sent copies to Steele, Hansmeier and Duffy via certified mail; return receipts confirmed delivery to each. D.E. 42-8; 42-9 at 1-11. No opposition was filed.

On September 30, 2013, the Court endorsed Chowdhury's motion for default judgment against AF Holdings as "allowed without opposition." D.E. 31.

On October 17, 2013, Chowdhury moved for final approval of the form of the default judgment jointly and severally against AF Holdings and its aliases Prenda, Steele, Duffy, Hansmeier and Lutz. D.E. 32. The proposed order listed AF Holdings and those aliases collectively as "Plaintiff," and specified that they would be liable for damages in the amount of Chowdhury's incurred fees, $21,393.60, trebled to $64,180.80 pursuant to Chapter 93A, with interest as provided by law. D.E. 33. The Court allowed the motion and entered final judgment in that form on October 22, 2013. D.E. 34.

Appellants filed motions to set aside the default judgment. D.E. 36; 37; 38; 39. On December 3, 2013 the Court denied the motions to set aside the judgment, reasoning:

> Steele and Hansmeier's motions fail to demonstrate that the removal of the default judgment would not be an empty exercise. Regardless of the exact relationship between Steele and Hansmeier, on the one hand, and Plaintiff, on the other, it is clear that Steele and Hansmeier had notice of all filings in this case, including filings that identified Steele and Hansmeier as the controlling owners of Plaintiff. Steele and Hansmeier therefore had ample opportunity to litigate this case before default was entered.

D.E. 43.

Steele, Hansmeier and Duffy filed a joint notice appealing the Court's order denying their motions to set aside the default judgment. What they have not done is 1) comply with this Court's order that they post bond; 2) successfully move to stay the judgment; nor 3) make any attempt to satisfy the judgment against them.

### III. LEGAL STANDARD

Pursuant to App. Rule 7, a district court "may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed.R.App.P. 7. The purpose of such a bond is to "protect the rights of appellees brought into appeals courts" by appellants who pose a substantial risk of non-payment of the costs of the appeal. *Id.*; *Sckolnick v. Harlow*, 820 F.2d 13, 14 n.1 (1st Cir. 1987).

The First Circuit has continued to affirm the broad discretion of it district courts in determining whether to require a bond on appeal and the amount of such bond, if required. *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-cv-12257-PBS, 2012 U.S. Dist. LEXIS 901, *46 (D. Mass. Jan. 4, 2012). In explicating the breadth of discretion afforded to the district courts, the First Circuit has made clear that this discretion is premised on the district court's familiarity with the fairness and adequacy of the judgement, the dispositive issues, the parties, and the history of the case. *Sckolnick*, 820 F.2d at 15; *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir. 1976) ("Even in the absence of a standing local rule, a federal district court has the inherent power to require security for costs when warranted by the circumstances of the case.").

Costs as referenced in App. Rule 7 include but are not limited to those foundational costs taxable under App. Rules 38 and Rule 39 (the former including double costs to the appellee), and may include attorney's fees where relevant. *Int'l Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6, 17 (1st Cir. 2011) The First Circuit has not determined whether "costs on appeal" includes attorneys' fees in all circumstances, but it has held that attorneys' fees may be included when an appeal is either frivolous (*Sckolnick*, 820 F.2d at 15) or if the applicable statute underlying the litigation contains a fee-shifting provision. *Int'l Floor Crafts, Inc.*, 420 Fed. Appx. at 17. See also *Adsani v. Miller*, 139 F. 3d 67, 75-76 (2d Cir. 1998). Both grounds are present here.

### IV. ARGUMENT

**A.      The Frivolity of the Appeal Weighs in Favor of Requiring a Bond.**

Appellants are contesting this Court's denial of motions to vacate a default judgment entered against them on the grounds they were not properly served, designated as parties, or alleged to have committed any wrongdoing. Such an appeal is frivolous. Any distinction between AF Holdings and Steele, Hansmeier and Duffy must be disregarded as a legal fiction and they are precluded from arguing otherwise.

Under the rule, it is a court of appeals that determines whether an appeal is frivolous. Fed.R.App.P. 38. However, for the purposes of calculating the amount of a App. Rule 7 bond, the First Circuit allows the district court substantial discretion in anticipating an award of App. Rule 38 costs. *Sckolnick*, 820 F.2d 13.

> "Furthermore, although the district court did not expressly make a finding that the appeal on the merits was frivolous, we note that defendants' motion below requesting a bond sought "security for the costs, including attorneys' fees, which may be awarded by the United States Court of Appeals for the First Circuit to [defendants] pursuant to Fed.R.App.P. 38 and 39." Thus, the district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility. Without in any way presaging our ultimate disposition of plaintiff's appeal in no. 86-1774, on preliminary examination of the merits of that appeal we cannot say that the district court abused its discretion in judging it to be frivolous. We note, also, that defendants introduced evidence below that plaintiff is a litigious pro se who has filed numerous lawsuits in state court."

*Id.* at 15.[1]

District courts consider the merits of the appeal when evaluating whether to require an appeal bond because this factor "informs the likelihood that the appellant will lose and thus be liable for costs." *Adsani*, 139 F.3d at 79. "A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Id.*

On May 6, 2013 Prenda Law, Steele, Hansmeier and Duffy were sanctioned, "in part, for the creation of a fictitious plaintiff—namely, AF Holdings." On May 8, 2013, Chowdhury requested that the district court take judicial notice of the *Ingenuity 13* sanctions order. *Ingenuity 13 LLC v. Doe*, No. 12-cv-8333, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013), *available at* D.E. 15-1. Among the findings of fact the *Ingenuity 13* court made included:

> Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

> The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. …

---

[1] The *Sckolnick* decision demonstrates, even in the absence of statute authorizing attorney's fees as part of the costs, that the First Circuit interprets App. Rules 7 and 38 to permit a bond which seeks security for a possible sanction in the form of attorney's fees upon appeal.

> The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

*Id.*

On September 16, 2013, a magistrate in *Navasca* adopted the *Ingenuity 13* court's findings about the relationship between AF Holdings, Steele, Hansmeier and Duffy, which the magistrate determined were preclusive. *AF Holdings LLC v. Navasca*, No. 12-cv-2396-EMC, 2013 U.S. Dist. LEXIS 149156 (N.D. Cal. Sept. 16, 2013), *available at* D.E. 42-11.

> Issue preclusion bars AF, Steele, and Hansmeier from re-litigating the findings of fact Judge Wright made in *Ingenuity 13* regarding their alter ego relationship, their conduct, and their business model. …
>
> [The magistrate] gave AF the opportunity to be heard and clarify that it was not a shell company created solely to shield Steele and Hansmeier from liability … [but] AF chose not to present any witness at the evidentiary hearing, continuing its campaign of obfuscation.
>
> … Judge Wright's findings (which AF, Steele and Hansmeier are precluded from re-litigating) establish that Steele and Hansmeier are the alter egos of AF … They share a unity of interest and ownership; they acted as attorneys for AF behind the scenes and dictated all litigation decisions; AF was undercapitalized (indeed, it had no assets as the settlement proceeds never left Steele and Hansmeier"s accounts); they kept all litigation proceeds AF "earned"; and AF was a mere shell created to shield Hansmeier and Steele from liability.
>
> … AF is an empty shell created by Steele and Hansmeier.

In *AF Holdings, LLC v. Does 1-1058*, the first Prenda Law-related case to reach a federal appeals court, that relationship was discussed at length. *AF Holdings, LLC v. Does 1-1058*, No. 12–7135, 2014 U.S. App. LEXIS 9690, *5 (D.C. Cir. May 27, 2014) (calling the case "a quintessential example of Prenda Law's modus operandi"); *see generally id.* at *2-5. Attached as Exhibit A. "A full understanding of this case requires knowing something about the lawyer and 'law firm' that initiated it." *Id.* at *2 (noting that AF Holdings was represented by Paul Duffy). The opinion describes Prenda Law as "a 'porno-trolling collective'" in which "Duffy and the other principals of Prenda Law … 'formed … AF Holdings,' acquired 'several copyrights to pornographic movies,' then initiated massive 'John Doe' copyright infringement lawsuits." *Id.* at *3.

Having already found that Appellants had notice of all filings in the case, denied Appellants' motions for reconsideration, including filings that identified them as AF Holdings' controlling owners, there is no validly appealable issue. They recognize that Chowdhury and the district court

6

identified them as AF Holdings' controlling owners, App. Br. 18-19, but they failed to rebut or refute the issue and have therefore waived it.[2] Duffy, Steele and Hansmeier each received more than sufficient notice of the case against them.[3] There is no question that the judgment was properly entered against them. Accordingly, Appellants appeal bears every indicia of frivolousness and should be required to post a bond in the amount of $30,000.

**B.    Both the Copyright Act and Chapter 93A Allow for an Appeal Bond Independently of Any Frivolity.**

In the First Circuit, the fee-shifting provisions of any statutes in the litigation can serve as a separate basis for requiring a bond for attorney's fees.

> "[W]e need not evaluate the district court's finding of frivolity because *we affirm the issuance of the bond on an alternative ground*. See *P.R. Ports Auth. v. Umpierre-Solares*, 456 F.3d 220, 224 (1st Cir. 2006) ("We may affirm a district court decision on any ground supported by the record."). In doing so, we endorse the majority view that a Rule 7 bond may include appellate attorneys' fees if the applicable statute underlying the litigation contains a fee shifting provision that accounts for such fees in its definition of recoverable costs and the appellee is eligible to recover them."

*Int'l Floor Crafts, Inc.*, 420 Fed. Appx. at 17 (emphasis added). "Rule 39 does not define the entire universe of costs covered by Rule 7. In particular, attorney's fees, where provided for, may also be included in fashioning a bond." *Capizzi v. States Res. Corp.*, 2005 U.S. Dist. LEXIS 7338, *3 (D. Mass. Apr. 26, 2005); *Int'l Floor Crafts, Inc.*, 420 Fed. Appx. at 17 (referring to cost-shifting provision of the Racketeer Influenced and Corrupt Organizations Act). See also *Farmington Dowel Prods. Co. v. Forster Mfg. Co.*, 421 F.2d 61, 91 (1st Cir. 1970) (noting that Clayton Act allows a plaintiff to recover appellate fees if he sustains on appeal a district court judgment of a violation).

---

[2] As the First Circuit has previously explained, "few principles are more a part of the warp and woof of appellate practice than the principle that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Casillas-Diaz v. Palau*, 463 F.3d 77, 83 (1st Cir. 2006) citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). "[I]f a party does not put enough stock in an argument to flesh it out, a reviewing court should normally dismiss the argument out of hand[;] [t]o do otherwise would be unfair both to the adverse party and to the court itself." *Casillas-Diaz*, 463 F.3d at 84.

[3] See, e.g., *Lightspeed Media Corp. v. Smith*, No. 12-cv-889, 2013 U.S. Dist. LEXIS 168615, *8-11 (S.D. Ill. Nov. 27, 2013) ("Service on Duffy was effective for all of Plaintiff's counsel, past and present, including Steele and Hansmeier."). Attached as Exhibit B.

In the case at hand, both the Copyright Act[4] and M.G.L. c. 93A[5] were at issue in the underlying litigation, both include fee-shifting provisions and both were decided in favor of Chowdhury.

**C.      An Appellate Bond is Required to Deter Further Non-Payment.**

Beyond the risks associated with the nonresident status of the Appellants, specific facts of their vexatious and recalcitrant conduct in this dispute and others speak urgently of the need for an appeal bond. Appellants blithely make a routine of defying court orders for payment, not only in non-payment of the previous resident-bond order or judgment of this Court, but in related proceedings in other courts this same year, to the point of contempt. See, e.g. *Lightspeed Media Corp. v. Smith*, No. No. 12-cv-889, 2014 U.S. Dist. LEXIS 38114, *4-8 (S.D. Ill. Mar. 24, 2014) (Steele, Duffy, and Hansmeier found in contempt for failure to pay attorney's fees and costs). Attached as Exhibit C.

This risk of nonpayment has been characterized as perhaps the most important factor given Rule 7's focus on protecting the appellee. *Capizzi,* 2005 U.S. Dist. LEXIS 7338, at *3. Thus, courts require bonds where there are substantial reasons to believe that the appellants would not pay the applicable costs should their appeals prove unsuccessful. Courts have found sufficient reason where: 1) the appellant failed to pay the judgment or post a supersedeas bond (*Hochen v. Bobst Group, Inc.*, No. 96-11214-RBC, 2000 U.S. Dist. LEXIS 21765, *4 (D. Mass. Oct. 25, 2000) (citing *Trustmark Ins. Co. v. Gallucci*, 193 F.3d 558 (1st Cir. 1999)); 2) where appellant has argued that he had insufficient funds to pay the judgment; 3) where appellant has refused to comply with court orders to pay costs (*In re Summit Corp.*, 891 F.2d 1 (1st Cir. 1989)); and 4) where specific facts established a substantial likelihood of nonpayment. *El Dia, Inc. v. P.R. Dep't of Consumer Affairs,* 413 F.3d 110, 114-115 (1st Cir. 2005); *Adsani*, 139 F.3d at 70.

The imposition of an appeal bond here is all the more necessary to ensure Appellants' payment of costs on appeal and to preclude further collection actions and attendant costs by the Appellee.

---

[4] *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998) ("The Copyright Act, at 17 U.S.C.S. § 505, allows attorney's fees to be [included in a Rule 7 bond ] as part of costs."); see also *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

[5] "If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action." M.G.L. c. 93A § 11.

A.      **The Probable Length and Complexity of the Litigation.**

Chowdhury has already incurred significant costs in the initial D.C. action undertaken to discover his identity; in the action before this Court to establish his innocence; in collection efforts to enforce his judgment against the Appellants; and can expect to incur significantly more in the pending appeal. The Appellants have continually been unsuccessful in their prior actions and appeals and have evidenced a lack of good faith in the claims that they have brought against Chowdhury. See, e.g. *AF Holdings, LLC*, 2014 U.S. App. LEXIS 9690 at *13. ("[W]e think it quite obvious that AF Holdings could not possibly have had a good faith belief that it could successfully sue the overwhelming majority of the 1,058 John Doe defendants in this district.").

The lodestar method provides "the conventional framework that courts use in fashioning fee awards …" and is calculated by multiplying the number of hours the prevailing party reasonably expends on the litigation by a reasonable hourly rate. *Spooner v. EEN, Inc.*, 644 F.3d 62, 67-68 (1st Cir. 2011). But that does not mean it is the only method. See, *Hensley v. Eckerhart*, 461 U.S. 424, 433, 436-37 (1983) (describing the lodestar method as a "useful starting point" but eschewing any "precise rule or formula," and reaffirming district courts' "discretion in making th[e] equitable judgment" of what fees to award); see also *Fogerty*, 510 U.S. at 534 (quoting *Hensley*'s rejection of any "precise rule or formula" and again reaffirming the importance of "equitable discretion"). Most recently, the First Circuit employed the *Hensley* method for calculating reasonable recoverable attorney fees in situations like the instant case. Specifically, it applied the *Fogerty* factors of "frivolousness, motivation, objective unreasonableness[,] … and … compensation and deterrence" *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 669 F.3d 59, 63-64 (1st Cir. 2012) (citing *Fogerty*, 510 U.S. at 534 n.19). See also *Greene v. Ablon*, No. 09-10937-DJC, 2013 U.S. Dist. LEXIS 127766, *26-28 (D. Mass. Aug. 28, 2013) (citing *T-Peg, Inc.*).

Although necessarily an estimate in this context, the Appellee can reasonably be expected to incur in excess of $30,000 in costs and fees in defending against the appeal.

1.      **Reasonable Hourly Rate.**

The hourly rate charged Chowdhury by Booth Sweet LLP when this matter began in 2012 is $409.00 per hour. The American Intellectual Property Association's (AIPLA) bi-annual survey is frequently used to determine reasonable hourly rates for attorneys of varying levels of experience. AIPLA's 2007 economic survey sets the average hourly billing rate for an attorney with 4-7 years

experience in intellectual property litigation at $409.00 for the Boston area. As a point of comparison, Major, Lindsey & Africa's 2012 compensation survey sets the same rate at or around $687.00. Given the complexity of the matter and the totality of the circumstances involved in the litigation, the rates charged by Booth Sweet LLP are reasonable, as evidenced by the facts that those rates are a) towards the *lower* end of what other firms with experience handling this type of case would have charged for litigation of this type, and b) well within the range of reasonable rates for the Boston market in which counsel of record base their practice.

2.     **Hours Reasonably Expected.**

At the present time, it is only possible to give a rough estimate of the number of hours that can be expected in the instant litigation, but counsel has attempted to produce such an estimate. As such, counsel has done several calculations in an effort to identify the range of potential fees that could be incurred, using average hourly rate of $409 and estimating the "hours expected" at 75 and 125. The result is a low-end range of $30,675 ($409 x 75 hrs.) and a high-end range of $51,125 ($409 x 125 hrs.)—exclusive of costs. It is thus possible, if not likely, that the actual amount of recoverable fees and costs in this matter could exceed $50,000. Defendant in this matter is content to rely on the lower-end of the estimate for present purposes, and therefore requests that this Court order Appellants to post an undertaking in the amount of $30,000 to cover anticipated costs and fees in defending the appeal.

## V. CONCLUSION

The litigation conduct of the Appellants has been, at a minimum, undertaken for delay and accompanied by repeated failures to meet their financial obligations and obey court order. Chowdhury, for the reasons stated above, respectfully requests an App. Rule 7 bond for reasonable attorney's fees in the amount of $30,000.

Dated: June 19, 2014

Respectfully,

Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883

Email: jsweet@boothsweet.com


**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2014, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

/s/ Jason E. Sweet