

Positive
As of: January 16, 2018 8:17 PM Z

Exhibit A

# AF Holdings LLC v. Navasca

United States District Court for the Northern District of California, Eureka Division

September 16, 2013, Decided; September 16, 2013, Filed

Case No. 12-cv-02396-EMC (NJV)

**Reporter**
2013 U.S. Dist. LEXIS 149156 *

AF HOLDINGS LLC, Plaintiff, v. JOE NAVASCA, Defendants.

**Subsequent History:** Adopted by, Sanctions allowed by *AF Holdings LLC v. Navasca, 2013 U.S. Dist. LEXIS 149169 (N.D. Cal., Oct. 16, 2013)*

**Prior History:** [*1] Re: Dkt. No. 93.

*AF Holdings LLC v. Navasca, 2013 U.S. Dist. LEXIS 15617 (N.D. Cal., Feb. 5, 2013)*

## Core Terms

undersigned, attorneys, district court, Principals, sanctions, evidentiary hearing, Holdings, settlement, litigated, recording, entities, Video, cases, recommends, lawsuits, issues, rebut, motion for sanctions, judgment debtor, fees and costs, individuals, downloaded, documents, parties, rights, adult, phone, ego, report and recommendation, copyright infringement

**Counsel:** For AF Holdings LLC, Plaintiff: Paul Duffy, LEAD ATTORNEY, Law Offices of Paul Duffy, Chicago, IL.

For Joe Navasca, Defendant: Morgan E. Pietz, The Pietz Law Firm, Manhattan Beach, CA; Nicholas Ranallo, Attorney at Law, Boulder Creek, CA.

For Putative John Doe in Related Case, Miscellaneous: Morgan E. Pietz, The Pietz Law Firm, Manhattan Beach, CA.

**Judges:** NANDOR J. VADAS, United States Magistrate Judge.

**Opinion by:** NANDOR J. VADAS

## Opinion

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SANCTIONS

The district court referred defendant Joe Navasca's motion for sanctions against attorneys John Steele and Paul Hansmeier to the undersigned for a report and recommendation. Doc. No. 96. Based on the papers filed in this matter, the arguments of the parties, and the evidence produced at the hearing, and for the reasons set forth below, the court recommends denying Navasca's motion for sanctions and issuing an order to show cause why the judgment for attorneys' fees and costs should not be amended to add Steele and Hansmeier as debtors.

### BACKGROUND

Plaintiff AF Holdings LLC ("AF") is an entity that purports to own the copyrights to various adult films. Some of these adult films have been uploaded to BitTorrent, [*2] a file-sharing site, and then reposted and/or downloaded by others. AF has filed hundreds of copyright infringement lawsuits against thousands of John Does whom (AF alleges) illegally downloaded its copyrighted property. Judge Wright, who presided over one of these infringement actions in the Central District of California, made the following findings of fact:

> 1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright infringement lawsuits. They created the entities to shield the Principals from

potential liability and to give an appearance of legitimacy.

2. AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

4. . . . . Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in the Principals' [*3] accounts and not in accounts belonging to AF Holdings or Ingenuity 13. No taxes have been paid on this income.

5. For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. . .

6. The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation — even to the Court . . .

8. The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper . . . The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele. [*4] There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. . .

*Ingenuity 13 v. Doe, 2013 U.S. Dist. LEXIS 64564 at* *2-3 (C.D. Cal. May 6, 2013)* ("*Ingenuity 13*"). As discussed further below, the undersigned adopts Judge Wright's findings. *See infra* at 10-12.

AF filed the case at bar, asserting it was the "exclusive holder of the relevant rights with respect to" an adult video title (the "Video"), "after receiving the rights to this Video pursuant to an assignment agreement, a true and correct copy of which" AF attached to its complaint. Doc. No. 1, ¶¶ 2-3, 19 & Ex. B. The assignment agreement was entered into between Heartbreak Digital LLC (the assignor) and "Alan Cooper," as assignee on behalf of AF. *Id.*, Ex. B. Based on the assignment, AF asserted it had standing to pursue this copyright action. AF obtained early discovery and identified "Jovino Navasca" ("Jovino") as the ISP subscriber [*5] associated with the IP address that AF had determined illegally downloaded the Video. *See* Doc. No. 22 at 8. AF originally sent two letters to Jovino, demanding thousands of dollars as payment to avoid litigation. *Id.* When Jovino refused to settle, AF sent a third settlement letter to Jovino's son, Joe Navasca ("Navasca"). *Id.* When Navasca refused to settle, AF filed the Amended Complaint, identifying Navasca as the alleged infringer. Doc. No. 13. The Amended Complaint restates the allegations that AF "is the exclusive rights holder with respect to BitTorrent-based reproduction and distribution of the Video;" and that Plaintiff received the rights to this Video pursuant to an assignment agreement, a true and correct copy of which" AF attached as Exhibit B to the Amended Complaint. Doc. No. 13, ¶¶ 18-19, Ex. B. Both the original and the Amended Complaint were signed by Brett Gibbs, attorney for AF.

AF filed a Corporate Party Disclosure and Certificate of Interested Entities pursuant to *Civil Local Rule 7.1*, in which it represented that no such interested entities existed. Doc. No. 2.

Navasca answered the complaint, denying the allegations, and also filed a motion to require AF to post [*6] an undertaking under *California Code of Civil Procedure § 1030*. *See* Doc. Nos. 20, 22. Pursuant to *Section 1030*, "[w]hen the plaintiff in an action or special proceeding resides out of state, or is a foreign corporation, the defendant may at any time apply... for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees" the

defendant may be entitled to an order requiring security if "there is a reasonable possibility that the moving defendant will obtain judgment in the action." AF is a foreign corporation, and the district court found there was a reasonable possibility Navasca would obtain judgment. Navasca supported his motion with an affidavit by Alan Cooper filed in another case, who explained how he knew Steele, denied performing any role in or on behalf of AF, and denied ever allowing Steele to use his name or sign documents on his behalf. Doc. No. 22-7 (Ex. G); *see also* Doc. No. 22-6 (Ex. F (letter from Cooper's attorney)); *see also* Doc. No. 84-2 at 19:23-25, 21:6-37:15 (testimony of Alan Cooper in *Ingenuity 13*). Finding that AF's evidence of infringement was "weak," the district court granted the motion and required AF to post a **[*7]** $50,000 bond. Doc. No. 51 at 11. However, the district court stayed its ruling to allow AF to file a motion for reconsideration on the order requiring an undertaking.

Instead of moving for reconsideration or providing the required undertaking, AF moved to dismiss the action, without prejudice. Doc. No. 62. Navasca opposed that motion, asking the district court to dismiss the action with prejudice. Doc. No. 66. Judge Chen dismissed AF's action with prejudice because a dismissal without prejudice would be unfair to Navasca. Doc. No. 76. He found that AF was "seeking to dismiss the case in order to avoid an adverse determination on the merits as well as the effect of other unfavorable, though not necessarily, dispositive rulings of this Court." *Id.* at 5. Judge Chen also reiterated some of the more glaring weaknesses in AF's case, including the "Alan Cooper problem," and AF's vexatious use of discovery motions.

Navasca then moved to recover his attorneys' fees and costs. In his motion for attorneys' fees, Navasca offered evidence that the "Alan Cooper" assignment was forged. AF argued there was no forgery but declined to offer anything but "sheer speculation" to support its position. Doc. **[*8]** No. 100 at 3. The district court found that Navasca "completely prevailed in the instant case"; the case was "frivolous and objectively unreasonable"; AF apparently lacked standing to bring suit and its pre-filing investigation was inadequate; and that AF developed a "business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements." Doc. No. 100. Judge Chen awarded Navasca $19,420 in fees and $3,112 in costs. *Id.* at 9. As of the August 28, 2013 evidentiary hearing, AF had not paid these fees and costs.

Navasca filed the instant motion for sanctions, asking that Steele and Hansmeier be held liable for the full sum awarded by the district court. Navasca served Steele and Hansmeier with courtesy copies of the motion papers by mail and also by email. Doc. No. 93 at 25. The district court referred the matter to the undersigned for a report and recommendation. Doc. No. 96. The undersigned scheduled an evidentiary hearing and issued an order directing the parties to be prepared to address and present evidence regarding certain topics. Doc. No. 103.

## FINDINGS OF FACT

On August 28, 2013, the undersigned held an evidentiary **[*9]** hearing.

Paul Duffy appeared as counsel for AF. Although Duffy informed the court that AF's CEO, Mark Lutz, would appear to testify, Lutz did not appear. Nor did any other witness appear for AF. AF presented limited documentary evidence. Duffy interpreted these documents to suggest that Brett Gibbs (former attorney for AF) was the *eminence grise* behind AF's extortion scheme, and attempted to use the evidence to attack Gibbs' character and rebut his testimony.

Nicholas Ranallo appeared as counsel for Navasca, and presented two witnesses: Gibbs and Delvan Neville. Neville was hired by Navasca as an expert in another case. Given the procedural posture of this case, however, Neville was never qualified as an expert witness in this matter. The undersigned accordingly limited Neville's testimony to that of a lay witness. Navasca presented evidence establishing the following facts:

> (1) Paul Hansmeier and John Steele are attorneys, former partners in Steele Hansmeier and "principals" of Prenda Law, Inc. For all material purposes here, Prenda Law, Inc. is a mere continuation of Steele Hansmeier. (Steele Hansmeier formally dissolved and Prenda attorneys entered substitutions of counsel in active **[*10]** cases.) Brett Gibbs testified that Hansmeier and Steele continue to perform the same roles at

Prenda that they had performed at Steele Hansmeier, and that business continued to operate in the same manner. *See also* Defendant's Ex. H (Notice of Firm Name Change filed in another case in this district, which informs the court that "Plaintiff's counsel's law firm has changed names from 'Steele Hansmeier PLLC' to 'Prenda Law Inc.'. . . all other identifying information associated with Plaintiff's counsel, Brett L. Gibbs - i.e. his physical address, email address, and phone number - remains the same"). This is also one of the findings Judge Wright made (*see supra, no. 1*).

(2) Gibbs testified that Steele Hansmeier and Prenda Law originally represented actual producers of adult films in copyright infringement cases. In 2012, Steele told Gibbs that he wanted to become a company that would solely enforce copyright claims for its own intellectual property holdings. Steele told Gibbs that AF and Ingenuity 13 would be owned by "Livewire" and would file their own copyright infringement cases. Gibbs testified that, as time went on, he was instructed to file more cases on behalf of AF and Ingenuity [*11] 13 than any other producer of adult films which Steele and Hansmeier had previously represented. Gibbs further testified that it was "common practice" for AF to file lawsuits and obtain summonses, while it was rare for the other producers he represented.

(3) Gibbs was "Of Counsel" for Prenda Law, Inc., and represented AF in this action until February 26, 2013, when Duffy substituted in as counsel. *See* Doc. No. 64. Gibbs testified that Steele and Hansmeier directed his litigation activities in cases filed by AF, including this one. *See also* Doc. No. 94 (Gibbs Decl.) at ¶ 3. Judge Wright made the same finding (*see supra, no. 8*). Gibbs testified that he conferred weekly with Steele and Hansmeier to discuss active AF cases. Navasca introduced evidence of hundreds of phone calls between Gibbs, Steele and Hansmeier starting in December 2011 and ending in March 2013, supporting this testimony (Defendant's Exs. A & B). Gibbs confirmed that the phone numbers appearing in the exhibits were his and the phone numbers of Steele and Hansmeier. Gibbs also highlighted several phone calls with Hansmeier on November 30, 2012, which coincided with the date of the Case Management Conference held in this [*12] matter (*see* Doc. No. 21), and confirmed that he spoke with Hansmeier about the case. AF attempted to attack Gibbs' testimony by presenting an affidavit he had filed in another case, where Gibbs represented himself as an attorney who worked "Of Counsel" for Prenda; litigated copyright lawsuits for Prenda Law; and advised and educated other attorneys working with Prenda Law, as well as Prenda's clients. Plaintiff's Ex. 1. AF also introduced affidavits filed by other attorneys who represented AF and described Gibbs as their point of contact for AF. Plaintiff's Exs. 2, 4. However, these declarations do not rebut Gibbs' testimony that Steele and Hansmeier alone communicated with their purported client, and that they directed Gibbs' litigation strategy. The declarations actually corroborate Gibbs' testimony: he communicated with local counsel for AF, essentially acting as a go-between for Steele and Hansmeier. AF further attempted to attack Gibbs' testimony by pointing out that Gibbs and Hansmeier were friends from college, and therefore must have spoken on the phone about personal matters. And finally, AF attempted to undercut Gibbs' credibility by offering "evidence" that Gibbs had "cut [*13] a deal" with defendants in various AF cases and thus could not be trusted. The undersigned is not at all persuaded by AF's arguments and finds that Gibbs' testimony is credible, supported by the record, and supported by the evidence admitted during the evidentiary hearing.

(4) AF's standing in this action is based solely on an assignment by Heartbreaker Digital LLC of certain rights in the Video to AF, which was purportedly executed by Alan Cooper on behalf of AF. Doc. No. 1, Ex. B (the "Assignment"). The Assignment is dated December 20, 2011. *Id.*

(5) Navasca introduced into evidence the testimony of Alan Cooper in *Ingenuity 13* (Defendant's Ex. L). Cooper denied acting in any capacity on behalf of AF, or signing the Assignment. *Id.* at 27-29.

(6) Gibbs testified that when the "Alan Cooper" issue first arose in November 2012, he asked Hansmeier for an explanation. He testified that Hansmeier reassured him, and told him the brouhaha was just "conspiracy theories." *See also*

Doc. No. 94, ¶ 6. Gibbs testified that Hansmeier also stated that "even if there was an issue" with [*14] Alan Cooper, it was not a problem because the assignee of the copyright did not need to sign to make the assignment effective.

(7) Navasca introduced evidence of two audio recordings, which were played during the hearing. The first was a recording produced by GoDaddy.com, which registered the domain name for dangerousxxx.com. *See* Defendant's Ex. D. The caller identifies himself in the recording as "Alan Cooper" and asks the customer service representative for help in resetting the password to his account; he eventually asks the customer service representative to send the password reset information to johnlsteele@gmail.com, an address on the account. Gibbs testified that the voice of the caller is in fact that of Steele, whom he knows personally and whose voice he recognizes. Gibbs testified he had used that email address from his Prenda Law firm account to contact Steele. In the second recording, the caller identifies himself as "Mark Lutz," but once again, Gibbs testified that the caller was in fact Steele. Defendant's Ex. E. AF objected to the introduction of the audio recordings and to Gibbs' testimony thereon, but the undersigned found Gibbs laid a sufficient foundation and could [*15] testify as a lay witness that he recognized the voice as that of Steele. The copies of the audio recordings were also authenticated by GoDaddy (Defendant's Ex. C (certificate of authenticity)).

(8) Based on Alan Cooper's testimony, which the undersigned admitted into evidence, and on the evidence that Steele impersonated Cooper in the GoDaddy recording, the undersigned finds that Steele impersonated Cooper to further the copyright litigation scheme. Judge Wright also found that Steele and/or Hansmeier stole the identity of Alan Cooper (*see supra, no. 9*).

(9) In its Corporate Party Disclosure, AF represented there were no persons or entities that had a financial interest in the matter being litigated. Doc. No. 2. But AF is in fact wholly owned by Salt Marsh, a St. Kitts and Nevis trust. Doc. No. 80. At the hearing, Duffy represented (but did not testify) that Lutz was the sole managing member of Salt Marsh, and that the trust had undefined beneficiaries (Lutz's non-existing children). Duffy surmised that AF did not disclose any interested parties because the trust was not a company or individual for purposes of corporate disclosures. Judge Wright found that the Principals are de facto [*16] owners and officers of AF Holdings (*see supra, no. 2*).

(10) Gibbs signed ADR disclosures in this case on behalf of Salt Marsh after being told by Hansmeier that Salt Marsh was AF's client and had reviewed the documents. Gibbs testified that he asked Hansmeier whether Salt Marsh was a real person, and that Hansmeier assured him Salt Marsh was. *See also* Doc. No. 94, ¶ 5.

(11) AF served its *Rule 26* disclosure in this case on December 3, 2012. AF identified Lutz as an individual having "knowledge of the assignment agreement attached as an exhibit to the complaint, distribution, and infringement of Plaintiff's works." Doc. No. 93-4. Lutz has been variously identified as the corporate representative and CEO of AF. No one else appears to work for AF.

**DISCUSSION**

**A. AF failed to rebut any of the evidence Navasca presented to this Court, and failed to oppose the majority of Navasca's arguments.**

Even after the excoriating decision Judge Wright issued in *Ingenuity 13*, and the troublesome findings Judge Chen made in his order awarding attorneys' fees to Navasca, AF chose not to oppose the majority of the arguments in Navasca's motion for sanctions. Instead, AF introduced immaterial issues in its opposition, [*17] attacked its former counsel Gibbs, and attacked Navasca's counsel. *See* Doc. No. 98. AF addressed the "Salt Marsh" issue and the working relationship between AF's former counsel Gibbs and its CEO/manager/sole employee Lutz. *See* Doc. No. 98 at 4-10. However, AF failed to oppose Navasca's arguments that Steele and/or Hansmeier (1) manufactured Cooper's involvement in AF and forged his signature; (2) were in cahoots with the computer forensic experts who identified the alleged illegal downloaders that AF then sued; and (3) themselves

uploaded the Video to Pirate Bay to induce others to download the Video. AF failed to offer any evidence to rebut Navasca's evidence establishing these points. AF's counsel attacked the affidavit of Delvan Neville, who explains how he determined that John Steele or someone with access to Steele's GoDaddy account uploaded the copyrighted works that form the basis of AF's lawsuits to BitTorrent swarms in order to induce infringement. Doc. No. 98 at 10-11. But AF did not actually rebut the evidence Neville presents. Instead of grappling with these admittedly difficult accusations, AF "respectfully request[ed] that to the extent the Court deems one or more to [*18] be relevant in any respect, that it identify those matters and allow Plaintiff opportunity to respond and present evidence to contradict them." Doc. No. 98 at 10. AF's counsel is apparently not familiar with the rules of federal procedure, or with basic principles of motion practice.

During the evidentiary hearing, AF was similarly unwilling or unable to rebut any of the evidence Navasca offered. It failed to present a single witness to rebut the evidence set forth above. It also failed to present a witness to address the issues the undersigned had ordered AF should be prepared to address at the hearing (*see* Doc. No. 103). In violation of the court's order, AF did not present any witness to address these topics. AF did attempt to submit a declaration from John Steele on the day of the evidentiary hearing (Doc. No. 104-9), and another by Mark Lutz the following week (Doc. No. 108), but the undersigned denied AF's *ex parte* motions to do so (Doc. No. 109). [1]

**B. The court adopts Judge Wright's findings concerning the relationship between AF, Steele, and Hansmeier.**

Issue preclusion bars AF, Steele and Hansmeier from re-litigating the findings of fact Judge Wright made in *Ingenuity 13* regarding their alter ego relationship, their conduct, and their business model. *See generally* Syverson v. IBM, 461 F.3d 1147, 1153-54 (9th Cir. 2006) (setting forth standard for application of non-mutual offensive collateral estoppel under federal law). A party is precluded from re-litigating issues when (1) there was a full and fair opportunity to litigate the identical issue in the previous case; (2) the issue was actually litigated; (3) the issue was decided in a final judgment; and (4) the person against whom issue preclusion is being asserted in the present action was a party or in privity with a party in the previous action. *Id.* (internal citations omitted). AF only contests whether Steele and Hansmeier had a full opportunity to be [*20] heard. *See* Doc. No. 106 at 9-14 (AF also contests whether the issue was "necessarily" decided, but that is not a factor in this analysis. AF also asks the court to adopt a different test based on out-of-circuit authority (*id.*), but the undersigned will follow Ninth Circuit law on this issue.) Navasca has established that all four elements are satisfied with respect to Judge Wright's findings listed above.

First, AF, Steele and Hansmeier all had a full and fair opportunity to litigate these very issues in *Ingenuity 13*. AF was one of the plaintiffs in that action. Judge Wright initially ordered only Gibbs to appear and "explain why he ignored the Court's discovery-stay Order, filed complaints without reasonable investigation, and defrauded the Court by asserting a copyright assignment secured with a stolen identity." Ingenuity 13, 2013 U.S. Dist. LEXIS 64564 at *3. During the course of that hearing, Wright determined he needed answers from others involved in the "porno-trolling collective" and ordered numerous people, including Alan Cooper, Steele and Hansmeier to appear. *Id.* Steele and Hansmeier retained counsel to appear on their behalf at the March 11, 2013 evidentiary hearing, and [*21] upon finding that the Steele and Hansmeier had ignored his order, Judge Wright did not let their attorney speak on the record. *See* Doc. No. 84-2 (March 11, 2013 Tr.) at 5-7. Alan Cooper appeared and testified. *Id.* at 21-38 (the undersigned admitted Cooper's testimony into evidence as Defendant's Ex. L). Judge Wright then issued a second order requiring Steele and Hansmeier to appear. Doc. No. 93-17 (Ex. Q), at Ex. C. Judge Wright set forth several topics he intended to address at the hearing, including the relationship between Steele, Hansmeier, and AF, and the financial interest Steele and Hansmeier might have in the litigation. *Id.* Hansmeier and Steele

---

[1] AF filed an *ex parte* application to offer an affidavit by Lutz, under seal. *See* Doc. No. 108. The undersigned denied the application. Doc. No. 109. Lutz filed a second *ex parte* application to submit an affidavit *in camera* to explain [*19] why he failed to appear at the August 28, 2013 hearing, which the undersigned denied. *See* Docs. Nos. 111 & 112. If the district court adopts this report and recommendation, it may give Lutz an opportunity to address this issue.

appeared on April 2, 2013, but declined to answer any of Judge Wright's questions, instead asserting their *Fifth Amendment* rights against self-incrimination. Doc. No. 106 at 6. Thus, Judge Wright did give AF, Steele, and Hansmeier a full and fair opportunity to be heard. AF now complains that Steel and Hansmeier did not have the opportunity to cross-examine Cooper because Judge Wright did not let their attorney do so on March 11, 2013. *Id.* Any prejudice they might have suffered as a result was caused by their own gamesmanship and failure **[*22]** to appear at the hearing in violation of Judge Wright's order.

Second, the relationship between AF, Steele and Hansmeier, their conduct, and their business model were all issues that were actually litigated. Indeed, Judge Wright adopted into his findings a chart describing the relationship between these individuals and other associated with Prenda Law. *2013 U.S. Dist. LEXIS 64564 at *13*. Judge Wright specifically ordered Steele and Hansmeier to appear and testify because Gibbs represented that these individuals had controlled his litigation activities, and Judge Wright wanted to determine whether they were "culpable" for Gibbs' conduct. *Id. at *3*. Wright's sanctions order was based on his finding that Hansmeier and Steele were culpable, and thus the nature of their control over Gibbs' action was necessary to his award of sanctions.

Third, the sanctions order, which was based on Judge Wright finding that Steele and Hansmeier controlled Gibbs' conduct and were responsible for various frauds on the court, was a final judgment on the merits, which Steele and Hansmeier are appealing to the Ninth Circuit. AF does not contest this.

Finally, AF was a party in the action, and AF, Steele and Hansmeier **[*23]** all were parties in the sanctions proceedings in *Ingenuity 13*. In addition, based on the findings above, Steele and Hansmeier also were in privity with AF in *Ingenuity 13* and here.

Issue preclusion is appropriate here, and the undersigned therefore adopts the findings made by Judge Wright in *Ingenuity 13* regarding the relationships between AF, Gibbs, Steele and Hansmeier.

**C. The undersigned gave AF the opportunity to be heard and clarify that it was not a shell company created solely to shield Steele and Hansmeier from liability.**

"'Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an *injustice* to a third person.' [Citations.] The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1149 (9th Cir. 2004)* (emphasis in original) (quoting *Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 31 Cal. Rptr. 2d 433 (Cal. App. 1994)* listing examples of the "critical facts" needed to establish that it would be inequitable to respect separate corporate identities "as inadequate capitalization, **[*24]** commingling of assets, [or] disregard of corporate formalities")).

The undersigned ordered AF to be prepared to discuss a number of issues at the evidentiary hearing (Doc. No. 103), including:

> (1) the name of its owner and any entity or person having a financial interest in the outcome of this case, beyond Salt Marsh;
> (2) "the exact mechanisms by which the money goes" to AF Holdings from the law firms that represent it;
> (3) account for the funds AF has received from persons it has sued or threatened to sue for copyright violation based on allegedly illegal downloading of its adult titles.

The answers to these questions would allow the court to determine whether piercing the corporate veil of AF was appropriate. AF chose not to present any witness at the evidentiary hearing, continuing its campaign of obfuscation.

**D. Steele and Hansmeier can be held personally liable for the attorneys' fees and costs.**

Navasca contends that sanctions are appropriate under both the court's inherent power and *28 U.S.C. § 1927*. The undersigned finds that neither of these applies here, but instead recommends that the judgment be amended pursuant to *Federal Rule of Civil Procedure 69(a)* and *California Code of Civil Procedure § 187* **[*25]** to add Steele and Hansmeier as judgment debtors on the award

for attorneys fees and costs.

**1. The district court's inherent power.**

> Under the Court's inherent authority, parties and their lawyers may be sanctioned for improper conduct. Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). This inherent power extends to a full range of litigation abuses, the litigant must have engaged in bad faith or willful disobedience of a court's order. Id. at 992. Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court. See Chambers v. NASCO, Inc., 501 U.S. 32, 54, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

Ingenuity 13, 2013 U.S. Dist. LEXIS 64564, at *4-*5. Navasca has established that Steele and/or Hansmeier forged Cooper's signature on the Assignment and continued to misrepresent Cooper's involvement in AF's business activities even after the matter was raised before Judge Chen. Navasca produced the testimony of Cooper, who denies that he executed the Assignment or played any role at AF. Instead of providing any explanation for the "Alan Cooper" problem or offering any evidence to rebut Navasca's accusation, AF maintained numerous times that the "Alan Cooper" issue [*26] was manufactured by Navasca's counsel. Navasca subsequently produced a recording establishing that Steele on at least one occasion represented to a customer sales representative that he was Cooper (Defendant's Ex. D). Navasca has established that Steele and Hansmeier directed Gibbs' litigation conduct, which included filing a number of documents in this matter that Steele and/or Hansmeier knew were forged or contained misrepresentations. The undersigned finds that there is ample evidence before the court that Steele and Hansmeier engaged in bad faith conduct, and perpetrated fraud upon the court.

However, it does not appear that the district court presently has personal jurisdiction over Steele and Hansmeier for purposes of imposing sanctions on them. Judge Wright did not specifically address the basis for personal jurisdiction over Hansmeier and Steele, but the undersigned notes that Judge Wright issued orders to show cause requiring these individuals to appear and ordered Gibbs to serve Steele and Hansmeier with a copy of his second order to show cause. See Doc. No. 93-17 (Ex. Q), at Ex. C. Steele and Hansmeier did eventually appear before Judge Wright. Although Hansmeier was deposed [*27] as the Fed. R. Civ. P. 30(b)(6) deponent for AF, neither Steele nor Hansmeier has appeared before the court in this matter. Navasca served Hansmeier and Steele with courtesy copies of his motion for sanctions by mail to addresses in Florida and Minnesota (and by email), but he did not subpoena Hansmeier and Steele to require their presence at the evidentiary hearing. Navasca has provided no authority that would allow the undersigned to find that the district court has personal jurisdiction over these two non-parties, who are not the attorneys of record for AF in this case, are not admitted to practice before this court, and who were served by mail with the motion for sanctions. For this reason, the undersigned recommends that the district court deny Navasca's motion to award sanctions under the court's inherent power. [2]

**2. 28 U.S.C. § 1927.**

Section 1927 empowers [*28] courts to sanction "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." From the moment Steele and/or Hansmeier forged Alan Cooper's signature on the Assignment, to the numerous times AF's attorneys (Gibbs and Duffy) represented to the court that the signature was not a forgery, and to AF's repeated failures to present any evidence to refute the testimony and declaration of Alan Cooper, AF's attorneys have "unreasonably and vexatiously" multiplied the proceedings in this case. But neither Steele nor Hansmeier have appeared in this action as attorneys.

Finding no authority directly on point, the undersigned asked Navasca to provide authority for the proposition that these individuals nonetheless could be held liable

---

[2] The undersigned finds that Navasca has established the substantive merits of his motion for sanctions under the district court's inherent power. The recommendation to deny sanctions is based solely on the finding that the district court lacks personal jurisdiction over Steele and Hansmeier due to insufficient service of process.

under *Section 1927*. Doc. No. 103. Navasca cited *In re Kinney, 51 B.R. 840 (Bankr. C.D. Cal. 1985)*, for the proposition that an attorney who is not of record can be sanctioned pursuant to *Section 1927*. [*29] *In re Kinney* is inapposite for several reasons. *In re Kinney* "principally involve[d] one attorney, one family, one piece of real property, one transfer, but ten *ad seriatim* [bankruptcy] case filings." The creditor filed an action to validate the foreclosure sale of the property and sought sanctions against the debtor and his attorney. The attorney had been the attorney of record for most of the bankruptcies at issue. The court awarded sanctions in the creditor's action to validate the foreclosure against the attorney who had been the attorney in the bankruptcy actions. The sanctions were based on all the bankruptcies, even those for which she was not attorney of record, because the court found that that the attorney had advised the parties in connection with those bankruptcies, too. Although Navasca has established that Steele and Hansmeier were the ringleaders of a similarly abusive scheme, they are not attorneys of record in any related case before the district court.

The undersigned recommends denying Navasca's motion for sanction under *28 U.S.C. § 1927*.

### 3. The judgment can be amended to add Hansmeier and Steele as debtors.

The district court may amend its award for attorneys' fees [*30] and cost to add Hansmeier and Steele as additional judgment debtors. *In re Levander, 180 F.3d 1114, 1120-21 (9th Cir. 1999)* is directly on point. In *Levander*, a bankruptcy court applied *California Code of Civil Procedure § 187* to amend an award for attorneys' fees to add an additional judgment debtor who was the alter ego to the original debtor. *Id.* [3] The district court reversed the decision for lack of jurisdiction. The Ninth Circuit reversed the district court, with directions to affirm the bankruptcy court. Finding the amendment proper, the Ninth Circuit noted that an amendment pursuant to Section 187 "is merely inserting the correct name of the real defendant" and therefore, adding a party after the judgment is entered does not present due process concerns. *Id. at 1122*.

A Section 187 amendment requires "(1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Id. at 1121*; *see also Katzir, 394 F.3d at 1149-50* (due process [*31] requires that "[a] prior judgment against a corporation can be made individually binding on a person associated with the corporation only if the individual to be charged . . . had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved") (internal citations and quotations omitted). Section 187 is "an equitable procedure that binds new individual defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." *Katzir, 394 F.3d at 1148* (internal citations and quotations omitted); *see also Greenspan v. LADT, LLC, 191 Cal. App. 4th 486, 508, 121 Cal. Rptr. 3d 118 (2010)* ("In light of the requirements that the proposed judgment debtors have had control of the underlying litigation and have been virtually represented, it is something of a misnomer to say that section 187 provides a method by which to bind new ... defendants to the judgment. More accurately, the statute properly designates the real defendants. Simply put, section 187 recognizes the inherent authority of a court to make its records speak [*32] the truth") (internal citations and quotations omitted).

Creditors need not establish that all the formal requirements of the alter ego doctrine apply when proceeding under Section 187, only that the "equitable principles regarding alter ego" are present and that the added judgment debtor "fit[s] within the theory underlying amendment of a judgment based on alter ego liability." *Levander, 180 F.3d at 1121-22* (following *Carr v. Barnabey's Hotel Corp., 23 Cal. App. 4th 14, 28 Cal. Rptr. 2d 127 (1994)*).

Navasca has established by a preponderance of the evidence that the requirements of Section 187 apply:

First, he established that Steele and Hansmeier controlled the underlying litigation: they created AF for the purpose of filing this type of lawsuit; they hired Gibbs, directed his litigation decisions, and kept in weekly contact with him regarding AF's litigation; they reassured him when he raised questions regarding the

---

[3] Federal courts may use state procedures of the state in which they sit to enforce a judgment. *Fed. R. Civ. P. 69(a)*.

validity of the Assignment and the Alan Cooper problem; they told him Salt Marsh was a real person, leading him to file documents signed on behalf of Salt Marsh; they were the only ones to work with the "client." *See supra* at 5-9.

Second, Judge Wright's findings (which AF, Steele and Hansmeier **[*33]** are precluded from re-litigating) establish that Steele and Hansmeier are the alter egos of AF (*see supra, nos. 1-2, 4, 8*). They share a unity of interest and ownership; they acted as attorneys for AF behind the scenes and dictated all litigation decisions; AF was undercapitalized (indeed, it had no assets as the settlement proceeds never left Steele and Hansmeier's accounts); they kept all litigation proceeds AF "earned"; and AF was a mere shell created to shield Hansmeier and Steele from liability. *See Bank of Montreal v. S.K. Foods LLC, 476 B.R. 588, 597-98 (N.D. Cal. 2012)* (listing these as relevant factors courts consider when examining alter ego liability).

The evidence adduced at the August 28, 2013 evidentiary hearing confirms Judge Wright's findings. AF's failure to refute that evidence with any of its own also speaks volumes. Although the undersigned ordered AF to be prepared to explain at the hearing the money trail and provide an accounting of the funds it received from copyright infringement actions or settlements, AF failed to present a witness who could do so or documents that might shed light on these issues. During the evidentiary hearing, Duffy represented to the undersigned **[*34]** (but did not testify) that it was his belief that the settlement or litigation proceeds were held in IOLTA trust accounts by AF's attorneys (including Prenda Law, formerly known as Steele Hansmeier). Duffy also represented as a "fact" to this court that a settlement check in another matter was written to Prenda Law. *See* Doc. No. 106 at 7. However, no witness testified regarding whether any of the funds ever left Prenda's trust account(s). Thus, there is no evidence before the undersigned that any settlement or litigation proceeds ever reached AF.

Even if the district court were to find that these factors were not sufficient to establish alter ego liability, adding Steele and Hansmeier as judgment debtors "fits within the theory" underlying Section 187. *See Levander, 180 F.3d at 1121-22*. An injustice would result if Navasca was prevented from collecting the award of fees and costs because AF is an empty shell created by Steele and Hansmeier.

The undersigned thus finds that Navasca has established that Steele and Hansmeier should be added as debtors to the district court's judgment for attorneys' fees and costs against AF. The undersigned accordingly recommends that the district court **[*35]** issue an order to show cause why Steele and Hansmeier should not be added as judgment debtors pursuant to *Federal Rule of Civil Procedure 69(a)* and *California Code of Civil Procedure § 187* based on the above findings of fact.

## CONCLUSION

Because the district court appears to lack personal jurisdiction over Steele and Hansmeier, the undersigned cannot recommend that sanctions be imposed against these individuals. However, the undersigned recommends that the district court issue an order to show cause why Steele and Hansmeier should not be added as judgment debtors to the award for attorneys' fees and costs, as described above.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. *See 28 U.S.C. § 636(b)(1)(B) & (C)*; *Fed. R. Civ. P. 72(b)*; *N.D. Civil L.R. 72-3*. Failure to file objections within the specified time may waive the right to appeal the court's order.

Dated: September 16, 2013

/s/ Nandor J. Vadas

NANDOR J. VADAS

United States Magistrate Judge

**End of Document**