## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AF Holdings, LLC, | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-12105-IT |
| | ) | |
| Sandipan Chowdhury, | ) | |
| | ) | |
| Defendant/Counterplaintiff. | ) | |
| _____ | ) | |
| | ) | |
| Sandipan Chowdhury, | ) | |
| | ) | |
| Counterplaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| John Steele and Paul Hansmeier, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

_____

### COUNTERPLAINTIFF SANDIPAN CHOWDHURY'S
### MOTION FOR RELIEF FROM JUDGMENT
### PURSUANT TO RULE 60(b)(6) and 60(d)(3) AND MEMORANDUM IN SUPPORT
_____

Defendant Sandipan Chowdhury ("Chowdhury") prevailed over Plaintiff AF Holdings, LLC ("AF") on all its claims, and on Chowdhury's counterclaims [No. 20, 31]. Pursuant to Fed. R. Civ. P. 15 and the Court's January 31, 2019 Memorandum and Order [No. 152], Chowdhury requested leave to file Amended Counterclaims adding as parties Paul R. Hansmeier ("Hansmeier") and John L. Steele ("Steele"), who jointly used AF as a mere alias or alter ego. [No. 155]. Hansmeier opposed the motion for leave to amend, in part because no separate Rule 60 motion for relief had been filed [No. 158].

It is within the Court's discretion to consider that pending motion to amend as also requesting relief from judgment under Rule 60, without the need for a separate motion.

> The form or title of the motion for relief from judgment is not critical. If a plaintiff files a post-judgment motion in the district court that merely seeks leave of court under Rule 15 to amend the complaint, the district court has the discretion, but is not required, to treat the motion as … a Rule 60 motion for relief from judgment.

3 *Moore's Federal Practice* § 15.13[2] at 18-19 (3d ed. 2010). *See also Odishelidze v. Aetna Life & Casualty Co.*, 853 F.2d 21, 24 (1st Cir. 1988) (post-dismissal motion to amend pleadings construed as Rule 60(b) motion "although not designated as such, and although no formal request to amend was included in his motion") (citing *Moore's*); cf. *Quincy V, LLC v. Herman*, 652 F.3d 116, 121 (1st Cir. 2011) ("the district court reasonably construed the motion to enforce as an implicit Rule 60(b) motion to reopen").

Nonetheless, to avoid any uncertainty and to facilitate his pending motion for leave to amend, Chowdhury files the present motion pursuant to Fed. R. Civ. P. 60(b)(6) and 60(d)(3) requesting relief from the judgment against AF.

## FACTUAL AND PROCEDURAL HISTORY

Chowdhury adopts and incorporates herein the statement of facts presented in his motion for leave to amend the counterclaims. [No. 155 at 1-4].

## STANDARD OF REVIEW

### I.    Fed. R. Civ. P. 60(b) standard.

"Rule 60(b) grants federal courts the power to vacate judgments 'whenever such action is appropriate to accomplish justice.' *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 19 (1st Cir. 1992) (internal citation omitted)." *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 41 (1st Cir. 2015). Motions under Rule 60(b) "are committed to the district court's discretion." *Teamsters*, 953 F.2d at 19. That discretion in turn, is exercised in accordance with the equities. *Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995) (equitable considerations play a pivotal role in the Rule 60(b) inquiry).

The First Circuit has identified certain criteria to consider in determining whether relief from judgment is appropriate under Rule 60(b)(6): "(1) timeliness, (2) the existence of exceptional circumstances justifying extraordinary relief, and (3) the absence of unfair prejudice to the opposing party." *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 95 (1st Cir. 2001) (citing *Teamsters*, 953 F. 2d at 19). In addition, the moving party "must give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Id.*

"While the above principles govern Rule 60(b) relief generally, the precise contours of the applicable standard will depend on the particular subsection involved and the nature of the underlying judgment from which relief is sought." *Id.*

**II. Fed. R. Civ. P. 60(d)(3) standard.**

Fed. R. Civ. P. 60(d)(3) states that the provisions of Fed. R. Civ. P. 60 as a whole should not be construed to limit the court's power to "set aside a judgment for fraud on the court." Overturning a judgment under Rule 60(d)(3) requires a showing of fraudulent misconduct that is even more comprehensive or reprehensible than required to demonstrate common law fraud or misconduct under Rule 60(b)(3). *Reintjes*, 71 F.3d at 48. Thus, "[t]his provision requires an unconscionable scheme or the most egregious conduct designed to corrupt the judicial process." *Fontanillas-Lopez v. Morel Bauza Cartagena & Dapena LLC,* 136 F. Supp. 3d 152, 158 (D.P.R. 2015) (internal quotations omitted). Examples of what might constitute fraud on the court include bribery of a judge or some other tactic employed to exert improper influence on the court. *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 133 (1st Cir. 2005). As with Rule 60(b), the evidence must be clear and convincing. *Fontanillas-Lopez*, 136 F. Supp. 3d at 158.

## ARGUMENT

**I. Motion to set aside the judgment under Rule 60(b)(6).**

Rule 60(b)(6) is described by the First Circuit as a "catch-all provision" and "its contours are particularly malleable." *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83 (1st Cir. 2010). It provides relief for "any other reason" not otherwise covered by Rule 60(b)(1)-(5).

In reviewing such motions, the Court must balance the competing policies of the "finality of the judgment" with the need to examine possible flaws in the judgment. *Bouret-Echevarria,* 784 F.3d at 43. Facts should be taken as the moving party alleges, to see whether those facts, if proven, would warrant relief. *Teamsters*, 953 F.2d at 18. ("In the first instance, an inquiring court should assume the truth of fact-specific statements contained in a Rule 60(b)(6) motion.") (citing *United States v. Baus,* 834 F.2d 1114, 1121 (1st Cir. 1987). The motion must not unfairly prejudice the opposing party, and the moving party must establish that a meritorious claim exists so that vacating the judgment would not be an empty exercise. *Teamsters,* 953 F.2d at 19-20. Even then, "there is no ironclad rule requiring an in-depth, multi-factored analysis in every case. Sometimes one factor predominates to such an extent that it inexorably dictates the result." *Bouret-Echevarria,* 784 F.3d at 43.

Meeting a Rule 60(b)(6) standard is not an insurmountable task. On the contrary, "it is well settled that Rule 60(b)(6) allows a district judge to grant relief when equitable considerations so counsel." *Hugel v. McNeil*, 886 F.2d 1, 6 (1st Cir. 1989). As a result, Rule 60(b)(6) relief is not just

hypothetically available. In fact, the Supreme Court as well as courts of this Circuit often affirm vacatur of final judgments applying this standard. See, e.g., *Klapprott*, 335 U.S. at 614-15; *Ungar*, 599 F.3d at 87; *Baus*, 834 F.2d at 1123 (1st Cir. 1987).

Analysis of the facts and circumstances supports granting Chowdhury's request that the Court set aside its judgment and allow Chowdhury to file a First Amended Counterclaims, as set forth below.

### A.  This motion is timely pursuant to Rule 60(b)(6).

Rule 60(b)(6) grant federal courts "broad authority" to vacate final judgments 'upon such terms as are just,' provided that the motion is made within a reasonable time. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988); *Bouret-Echevarria*, 784 F.3d at 42. The court's discretion extends to all aspects of the decision, including whether the motion was brought within a reasonable time as is required by Rule 60(c)(1). *American Metals Service Export Co. v. Ahrens Aircraft, Inc.*, 666 F.2d 718, 720-721 (1st Cir. 1981).

Generally, a reasonable time for purposes of Rule 60(b)(6) may be more or less than the one-year period. *Sierra Club v. Secretary of the Army*, 820 F.2d 513, 517 (1st Cir. 1987) (explaining that "reasonableness is a mutable cloud, which is always and never the same"). "What constitutes 'reasonable time' is so dependent on the particular circumstances of each case, however, that this question becomes inseparable from the merits." *Fortin v. Commissioner of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 798 n.11 (1st Cir 1982). The relevant considerations include, whether the parties have been prejudiced by the delay and whether a good reason has been presented for not taking action sooner. *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660-661 (1st Cir 1990).

The motion has been brought promptly upon the Court's January 31, 2019 order, and there has been no undue delay or lack of due diligence. Chowdhury's counterclaims were allowed against AF on September 30, 2013, and ever since that judgment, he has diligently sought to give it substantive effect by having it reach the shell company's *de facto* owners Steele and Hansmeier. The Court approved Chowdhury's motion to reenter the judgment against Steele, Hansmeier, and others on October 22, 2013, and denied their motions to set aside the judgment on December 3, 2013. From that time until the Court's January 31, 2019 order, a motion to amend the counterclaim would not have been proper.

The Court could not have considered a motion to vacate until it set aside the judgment on remand from the First Circuit in 2016. Then, in compliance with the Court's post-remand orders,

Chowdhury filed a proposed amended judgment and pursued a motion to amend the judgment, but Hansmeier's bankruptcy stayed Chowdhury from proceeding against him and Steele through 2017. When the bankruptcy stay lifted on January 3, 2018, Chowdhury, in compliance with the Court's post-remand orders, filed a proposed amended judgment and pursued a motion to amend the judgment. He promptly renewed his efforts to have Steele and Hansmeier designated as parties and serve them with process. He initiated service of a motion to substitute Steele and Hansmeier as counterdefendants within weeks, overcame Steele's evasion of service, and filed the served motion on March 21, 2018. When the Court denied that motion for substitution, it was expressly without prejudice to Chowdhury "seeking leave to file an Amended Counterclaim adding new parties" [No. 152 p. 1]. Consistent with the Court's January 31, 2019 order, his motion now seeks to do exactly that.

### B.   Extraordinary circumstances warrant relief.

It would be a proper exercise of the Court's discretion to set aside its judgment and permit Chowdhury to amend his counterclaims and add Steele and Hansmeier as counterdefendants along with AF. The default judgment entered on Chowdhury's counterclaims on September 30, 2013 against AF still stands. But he cannot collect on the judgment from AF, an empty shell company. To give the judgment any effect, it must be adjudicated against Steele and Hansmeier, who created and controlled AF, employing it as their alter ego. They should be held accountable for AF's actions.

AF, the nominal plaintiff, was alleged in the complaint to be an offshore entity "organized and existing under the laws of the Federation of Saint Kitts and Nevis" [No. 1 p. 2]. Chowdhury's counterclaims noted the "troubling connection between Plaintiff and its counsel … [who] appear to be engaged in widespread fraud," and alleged that "Plaintiff may not even exist" and "Plaintiff's counsel may truly be the real parties in interest in this case" [No. 7 pp. 13-14]. His suspicions have been borne out in court after court and, most recently, were confirmed by Steele and Hansmeier themselves in their plea agreements admitting to federal fraud charges.

The *Ingenuity 13* court found AF to be little more than a shell company, formed by Steele and Hansmeier solely to litigate their copyright infringement claims and shield themselves from potential liability [see No. 22-2 pp. 3-4]. On appeal, the Ninth Circuit confirmed that AF was a shell company set up by Steele and Hansmeier through their law firm Prenda. Memorandum, *Ingenuity 13, LLC v. John Doe*, No. 13-55859 et al. (9th Cir. June 10, 2016) [see No. 82-1 p. 5]. The Ninth Circuit

found no abuse of discretion in the *Ingenuity 13* court's findings that Steele and Hansmeier were "the parties actually responsible for the abusive litigation" and "the leaders and decision-makers behind Prenda Law's national trolling scheme." *Id.* [see No. 82-1 p. 8].

More recently, Steele and Hansmeier have admitted the central elements of their scheme in plea agreements admitting to the federal fraud charges against them [see No. 133-33, 141-1]. In a March 6, 2017 plea agreement, Steele agreed to plead guilty to charges of conspiracy to commit wire fraud and mail fraud, and conspiracy to commit money laundering. Plea Agreement and Sentencing Stipulations, *United States v. John L. Steele*, Crim. No. 16-334 (D. Minn. Mar. 6, 2017) [No. 133-33 p. 1]. He admits that from 2011 through 2014, they had "executed a scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements by deceiving state and federal courts throughout the country." *Id.* p. 2. Steele admits that he and Hansmeier had caused their clients' pornographic movies to be uploaded to file-sharing websites "in order to entice people to download the movies … Thereafter, despite colluding in the purported infringement of their clients' copyrights, Steele and Hansmeier caused lawsuits to be filed disingenuously alleging that the individuals who purportedly downloaded the movie did so 'without authorization' …" *Id.* p. 4. One of the movies they caused to be uploaded, to ensnare downloaders into "fraudulent copyright infringement lawsuits," was *Sexual Obsession*—the same movie their alter ego AF accused Chowdhury of infringing in this action. *Id.* pp. 4-5.

Steele also admits that "in order to distance themselves from the copyright infringement lawsuits and any potential fallout, [he and Hansmeier] caused Prenda Law to be created … [and] often exerted *de facto* control over Prenda Law, including the primary direction of its employees and dispensation of its finances," though Duffy "nominally owned" Prenda. *Id.* pp. 6-7. He admits that they disguised their control over AF and represented to multiple courts that AF was owned by a trust managed by Lutz, their paralegal, though they knew he "was nothing more than a figurehead who agreed to pose as the owner of AF Holdings in order to help Steele and Hansmeier obscure their ownership and control over the company." *Id.* pp. 7-8. Steele further admits that they caused Lutz to sign a declaration, later filed in another AF copyright lawsuit, falsely and misleadingly declaring that Lutz had formed AF and was its only manager, and that Steele and Hansmeier had not directed, managed, or had an ownership interest in AF, and served only as its attorney—though "[i]n fact, Steele and Hansmeier created AF Holdings and were at all relevant times the *de facto* owners of and controlled AF Holdings." *Id.* p. 16.

Hansmeier, in an August 17, 2018 plea agreement, agreed to plead guilty to the same charges. *United States v. Paul R. Hansmeier*, Crim. No. 16-334 (D. Minn. Aug. 17, 2018) [No. 141-1 p. 1]. Like Steele, he admits that "in order to distance themselves from the copyright infringement lawsuits and any potential fallout, [he and Steele] caused Prenda Law to be created … [and] exerted *de facto* control over Prenda Law, including the primary direction of its employees and dispensation of its finances," though Duffy "nominally owned" Prenda. *Id.* pp. 3-4. Hansmeier further admits that he and Steele "created various entities they surreptitiously controlled, including AF Holdings, LLC," which they used in lawsuits they filed against individuals who had downloaded the movies they had uploaded to file-sharing websites. *Id.* p. 4.

Thus, based on their own admissions, Steele and Hansmeier are the proper parties to hold liable for Chowdhury's counterclaims. They created AF, surreptitiously controlled AF, and were AF's *de facto* owners and officers. They caused *Sexual Obsession* to be uploaded to file-sharing websites so they could then cause fraudulent lawsuits to be filed against alleged downloaders, including this action. They received substantially all of AF's assets, as found in *Navasca*. Chowdhury's counterclaims sought relief from AF's abuse of process, copyright misuse, and unfair and deceptive conduct, all of which was Steele and Hansmeier's handiwork. They were the driving force behind all of AF's litigation, including its action against Chowdhury, which gave rise to his counterclaims. They should be held accountable for the misdeeds they perpetrated under AF's name.

Most importantly, the judgment cannot be finally satisfied unless and until it is litigated and entered against Steele and Hansmeier in their own names. While the judgment was pending appeal in the First Circuit, Hansmeier filed for bankruptcy, and the judgment against him attached as a lien on his property. Hansmeier voluntarily consented—indeed, petitioned the bankruptcy court—to settle Chowdhury's judgment lien by a payment from the sale of his condominium in 2015 [see No. 146 pp. 10-11]. He has sought to claw it back ever since in the bankruptcy court, though his voluntary payment and affirmations of the settlement forecloses any such relief. See *Hansmeier v. Chowdhury*, No. 19-mc-91090-IT (D. Mass. March 8, 2019). Amending the counterclaim would finally give Chowdhury an opportunity to settle the issue decisively and show that it is proper to Hansmeier and Steele personally liable for the misbehavior of their alter ego AF.

**C.  Plaintiff can show a meritorious claim.**

When ruling on a Rule 60(b)(6) motion, the facts should be taken as the moving party alleges, to see whether those facts, if proven, would warrant relief. *Teamsters*, 953 F.2d at 18; *Cotto v. United States*, 993 F.2d 274, 280 (1st Cir. 1993).

Chowdhury states valid claims for relief that survived AF's motion to dismiss and motion to strike [No. 8, 9, 10, 13, 20] and have already been adjudicated against AF [No. 28, 31]. Permitting Chowdhury to at last litigate the counterclaims against Steele and Hansmeier, who surreptitiously controlled AF throughout this fraudulent litigation, would be anything but futile. They have largely admitted the elements of Chowdhury's claims.

Hansmeier admits in his plea agreement that he and Steele "caused P.H.[1] to upload their clients' pornographic movies to BitTorrent file-sharing websites, including a website named the Pirate Bay in order to entice people to download the movies and make it easier to catch those who attempted to obtain the movies" [No. 141-1 p. 3]. Steele admits the same, and specifically, that they caused "P.H." to upload *Sexual Obsession* to the Pirate Bay on or about April 1, 2011 [No. 133-33 p. 4]. The Complaint alleged that Chowdhury accessed and downloaded the movie via BitTorrent, as "detected" by AF's "investigators" on May 26, 2011 [No. 1 ¶¶ 1, 8-17, 20-24, 29]—after the same investigator had seeded it online. As Steele admits, AF's copyright infringement allegations were "false and misleading because [Steele and Hansmeier] had implicitly authorized the downloading activity by placing the movie on the file-sharing website" [No. 133-33 p. 4].

So Chowdhury's first counterclaim for a declaratory judgment of non-infringement is sound. Inducing downloaders through an online honeypot is entrapment, not infringement. The second counterclaim of abuse of process is also well founded. Steele and Hansmeier, through Prenda, caused Chowdhury to be sued and served process for an ulterior purpose: to extract settlement based on fraudulent claims of pornographic copyright infringement. Steele and Hansmeier smeared Chowdhury's reputation through Prenda's website, posting the complaint online and calling him an "infringer/hacker" [No. 12-2, 12 p. 12]. Their extortive tactics put Chowdhury to significant expense

---

[1] The "P.H." discussed in the plea agreements is Hansmeier's brother Peter. His declaration, in the prior AF case that led to this lawsuit, discussing how files are seeded and shared on BitTorrent and how he identified BitTorrent downloaders, was the basis on which AF obtained Chowdhury's identifying information. Decl. of Peter Hansmeier in Support of Mot. for Leave to Take Discovery Prior to Rule 26(f) Conference, *AF Holdings, LLC v. Does 1-1,140*, No. 11-cv-01274 (D.D.C. filed July 25, 2011) [see No. 7 p. 10, No. 10 p. 4, No. 12-1].

defending against the frivolous claims, which is compensable as damages for abuse of process. The same facts warrant a finding of copyright misuse under Chowdhury's third counterclaim, and holding Steele and Hansmeier liable for unfair and deceptive conduct in violation of Chapter 93A under his fourth counterclaim.

### D. There is no unfair prejudice to the Defendants.

Hansmeier and Steele will not be unfairly prejudiced by the proposed amendment. They have been fully aware since Chowdhury answered the complaint that they could be considered liable for AF's misdeeds. His counterclaim alleged that "Plaintiff may not even exist; and Plaintiff's counsel may truly be the real parties in interest in this case" [No. 7 p. 14]. When their local counsel engaged through Prenda withdrew from the case, he explained that "Prenda/AF" had been kept apprised of the counterclaims, motions, and status of the case at all material times [No. 22 pp. 1-2; *see* No. 42-1, 42-2, 42-5]. As the Court found six years ago, "[I]t is clear that Steele and Hansmeier had notice of all filings in this case, including filings that identified Steele and Hansmeier as the controlling owners of Plaintiff. Steele and Hansmeier therefore had ample opportunity to litigate this case before default was entered." [No. 43]. Now that Steele and Hansmeier have admitted that they were behind AF's settlement shakedown and fraudulent litigation scheme, Chowdhury should be allowed to hold them accountable for it.

### II. Motion to set aside the judgment under Rule 60(d)(3).

Rule 60(d)(3) provides that Rule 60 "does not limit a court's power to … set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "Fraud on the court" is defined in terms of its effect on the judicial process, not in terms of the content of a particular misrepresentation or concealment. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). There must be a severity of fraud that extends beyond the particular litigants and infects the judicial process itself. See *United States v. Beggerly*, 524 U.S. 38, 46 (1998); see also *Roger Edwards, LLC v. Fiddes & Son, Ltd.*, 427 F.3d 129, 133 (1st Cir. 2005) (requiring egregious misconduct that corrupts the judicial process itself).

A plaintiff must demonstrate, by clear and convincing evidence, "that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115,

1118 (1st Cir. 1989). The First Circuit's formulation of the standard allows for situations where a scheme to deceive the court exists, but is ultimately unsuccessful. *See United States v. 6 Fox St.*, 480 F.3d 38, 47 (1st Cir. 2007) (characterizing as fraud upon the court an unconscionable scheme, involving an officer of the court, "calculated" to deceive the court). For example, in *Aoude*, the First Circuit deemed as "near-classic" fraud on the court a situation where the plaintiff's scheme to defraud was exposed during discovery. 892 F.2d 1115, 1116-18. In response to the plaintiff's argument that his conduct did not interfere with the district court's ability to render an impartial decision, the *Aoude* court explained that "[t]he failure of a party's corrupt plan does not immunize the defrauder from the consequences of his misconduct." *Id*. at 1120.

One of the distinguishing facts in the leading *Hazel-Atlas* case permitting the exercise of the equitable power to set aside judgment was the participation of a lawyer for one of the parties in the creation as well as the presentation of the fraudulent evidence relied on by the Patent Office and the Third Circuit. *Hazel-Atlas*, 322 U.S. at 240-244. Following *Hazel-Atlas*, courts have stated that the participation of an officer of the court in the fraud is either an essential element of fraud on the court contributing to the subversion of the adjudication process, or one element, if not an essential one, that can support a finding of fraud on the court. When the First Circuit adopted the "officer of the court" requirement, it focused specifically on the role of counsel to the party-plaintiff in the underlying litigation, describing the fraud as "'a deliberately planned and carefully executed scheme' by an attorney 'to defraud not only the Patent Office but the Circuit Court of Appeals.'" *Geo. P. Reintjes*, 71 F.3d at 47 (quoting *Hazel-Atlas*, 322 U.S. at 245-246).

Steele and Hansmeier were attorneys who specifically designed this copyright infringement suit and others to deceive courts into believing that genuine third-party plaintiffs were suffering actual damages as a result of unauthorized, uninvited, large-scale infringement of pornographic movies by copyright pirates. Rather, Steele and Hansmeier surreptitiously authorized seeding the movies online, and were the hidden plaintiffs, investigators, and attorneys behind the scheme, using the federal courts as their unwitting tool.

1) Steele and Hansmeier, have admitted that AF Holdings was one of several sham entities they formed and wholly owned, operated and controlled for the sole purpose of litigating fraudulent copyright-infringement lawsuits, to shield themselves from potential liability, and give an appearance of legitimacy;

2)   As part of that scheme Steele and Hansmeier, caused AF Holdings' counsel in this case, Prenda Law to be created and exerted *de facto* control over it;

3)   As part of that scheme they formed and wholly owned, operated and controlled Media Copyright Group, the tech company used to identify alleged infringers;

4)   Steele and Hansmeier, have admitted that they caused the very movies they sued others for downloading to be uploaded to BitTorrent websites; and that they concealed from the courts their complicity in the copyright infringement they pretended to be attempting to rectify to procure authority from courts to serve subpoenas on ISPs for subscriber information;

5)   Steele and Hansmeier, though AF Holdings, sought to improperly coerce alleged infringers into settling under extortionate threats of financially burdensome lawsuits and fraudulent threats of remedies that are prohibited as a matter of law. They pursued statutory damages and attorney's fees under the Copyright Act, without disclosing that those remedies were categorically prohibited by the date of the alleged infringement; that any such claim of infringement was categorically prohibited by the terms of AF Holdings' copyright assignment; and that an IP address alone is not sufficient to support a claim of infringement against the Internet subscriber whose router was assigned that IP address;

6)   Steele and Hansmeier, not AF Holdings, were the beneficiaries of any settlements collected on behalf of AF Holdings; and

7)   Steele and Hansmeier, resorted to perjury and suborning perjury to escape blame and retain the proceeds of the scheme. They swore out false declarations, gave false testimony in depositions and at court hearings, and caused others to do the same. Even in this matter, Steele and Hansmeier repeatedly perjured themselves to in an effort to further defraud the Court and escape liability. [See e.g. No. 53 at 5 ("Chowdhury points to a set of documents that purport to be the partial financial records of a law firm called Prenda Law that Mr. Steele has never had any ownership or control of."); *Appellants*

*Reply Brief,* No. 7 at 14 ("The lynchpin of Chowdhury's Response is his delusional belief that Duffy, Steele and Hansmeier are AF Holdings' alter egos.")].

*See e.g.* No. 133-32, -33, -34; No. 141-1; No. 144-1; and Exhibit A.

There is no doubt that Steele and Hansmeier sought to compromise the integrity of this Court. While they eventually abandoned their scheme, they must face the consequences of their alleged misconduct nonetheless. Rule 60(d)(3)'s requirement of "an unconscionable scheme or the most egregious conduct designed to corrupt the judicial process" has been satisfied here, and then some. *Irving v. Town of Camden*, No. 12-1850, 2013 U.S. App. LEXIS 26004 *1 (1st Cir. 2013) (quoting *Roger Edwards,* 427 F.3d at 133).

## CONCLUSION

Plaintiff requests the following relief. The Court's Judgment dated October 22, 2013 [No. 34] be set aside or amended under Rule 60(b)(6) or alternatively Rule 60(d)(3). Further, Plaintiff requests its Motion for Leave to Amend the Counterclaims [No. 155] be granted.

Dated: March 29, 2019                                    Respectfully submitted,

/s/ Jason Sweet
Jason E. Sweet (BBO# 668596)
jsweet@boothsweet.com
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

Counsel states that he has complied with Rule 7.1. Undersigned reached out to Paul Hansmeier via email on March 29, 2019 regarding the motion but did not receive a response prior to filing. Undersigned was not able to confer with John Steele prior to filing this motion as a street address is the only contact information available for Mr. Steele.

/s/ Jason Sweet

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. AF Holdings' counsel withdrew in 2013 without replacement, and mail sent to its last known address has been returned as undeliverable since 2013. Notice will be delivered via mail to:

Paul R. Hansmeier          John Steele
9272 Cortland Alcove       18871 N. 69th Ave.
Woodbury, MN 55125         Glendale, AZ 85308

/s/ Jason Sweet